IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 1 5 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ELLENA PATRICIA ARIZPE, Individually and | § | |
| MONZERAT SUAREZ, Individually | § | |
| *Plaintiffs,* | § | |
| vs. | § | CIVIL ACTION NO.: B-04-037 |
| | § | JURY |
| FORD MOTOR COMPANY | § | |
| *Defendant.* | § | |

---

## FORD MOTOR COMPANY'S BRIEF IN SUPPORT OF ITS PREVIOUSLY FILED MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

---

Ford Motor Company ("Ford"), respectfully moves to dismiss this action based on the doctrine of *forum non conveniens*. Ford filed its Motion to Dismiss under the doctrine of *forum non conveniens* as part of defendant's state court answer on February 13, 2004. Ford now files this brief in support of the previously filed motion. Ford also files, contemporaneously with this brief, a choice-of-law motion and brief for the application of Mexican law. Ford's choice-of-law briefing is incorporated herein by reference.

The plaintiffs are residents and citizens of Mexico. They are seeking damages as a result of a vehicle accident in the town of Saltillo in the Mexican State of Coahuila. Their efforts to utilize the resources of this Court, sitting in the Southern District of Texas, Brownsville Division, to resolve their claims are contrary to established principles of law. Dismissal is the appropriate remedy.

## I.      INTRODUCTION

The present case involves a single vehicle accident that occurred in Mexico on January 18, 2002. This case has no connection to Texas. *See* Plaintiffs' Original Petition. Plaintiffs admit that they are residents of Mexico. *See id.* at page 1. The accident was investigated by Mexican

authorities. *See* Accident Report attached hereto as **Exhibit "1"**. The product that allegedly failed

has no connection to Texas. *See* Declaration of Roger Chen, attached hereto as **Exhibit "2"**. (The

2001 Ford Explorer involved in the accident was not designed or manufactured in Texas.)

It simply makes no sense for this case to remain in Texas. What is more, permitting this

case to remain in Texas raises serious public policy concerns. First, Texas has no interest in

litigating disputes arising in a foreign country, involving foreign plaintiffs and products with no

connection to the forum state. Second, all of the fact witnesses to the events surrounding this

accident reside in Mexico, and are beyond the compulsory powers of this Court. Third, every

potential third-party defendant or otherwise responsible third party are similarly beyond the

compulsory power of this Court. Fourth, allowing foreign plaintiffs with foreign matters to avail

themselves of American courts will invite forum shopping with a vengeance, further clog U.S.

courts, and force those courts and jurors to expend valuable resources for a case from which there

is no personal or legal connection to plaintiffs' chosen forum.

The Fifth Circuit agrees. Recently, that Court dismissed a similar case involving foreign

plaintiffs and foreign matters. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665 (5th Cir.

2003) (affirming the district court's decision to dismiss a lawsuit brought by Mexican plaintiffs for

an accident that occurred in Mexico). Likewise, a number of federal district courts, including sister

courts in this division, have followed the holding of *Vasquez*, and declined to open the floodgates

to litigation involving foreign plaintiffs and foreign matters. *See Morales v. Ford Motor Company*,

2004 WL 825641 (S.D. Tex. March 31, 2004) ___ F.Supp.2d ___ opinion attached hereto as

**Exhibit "3"**; *see also Gonzalez v. Ford Motor Company*, No. P-02-CA-016 (W.D. Tex. September

23, 2003) opinion attached hereto as **Exhibit "4"**; *Guedez v. Ford Motor Company,* No. P-03-CA-

032 (W.D. Tex. September 23, 2003) opinion attached hereto as **Exhibit "5"**; *Rodriguez v. Ford*

2

*Motor Company*, No. P-03-CA-057 (W.D. Tex. September 23, 2003), opinion attached hereto as **Exhibit "6"**; *Hange v. Ford Motor Co.*, No. P-02-CV43, slip op. (W.D. Tex. Sep. 23, 2003) opinion attached hereto as **Exhibit "7"**; *Zamudio v. Michelin North American, Inc.*, No. 4:02-CV-0929-A (N.D. Texas August 2003), opinion attached hereto as **Exhibit "8"**; *Taylor v. Daimler Chrysler Corp.*, 196 F.Supp.2d 428 (E.D. Tex. 2001); *Seguros Comercial Ans. S.A. de C.V. v. Am. President Lines Ltd.*, 933 F.Supp. 1301 (S.D. Tex. 1996); and *Torreblanca de Aguilar v. Boeing Co.*, 806 F.Supp. 139, 145 (E.D. Tex. 1992).

The matter at bar warrants the same result.

## II.     ARGUMENT AND AUTHORITIES

**A.     The *forum non conveniens* doctrine permits the Court to dismiss this case so it may be filed in Mexico where the accidents occurred, where the plaintiffs reside, and where all accident-specific evidence is located.**

Federal courts have discretion to dismiss civil actions, such as this one, under the common-law doctrine of *foreign non conveniens*. *See Quackenbush v. Allstate Ins.*, 517 U.S. 706, 721, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).   A Court, sitting in diversity, applies the federal *foreign non conveniens* law.  *See Seguros Commercial America S.A. de C.V. v. American President Lines, Ltd.*, 105 F.3d 198, 199 (5th Cir. 1996).

In evaluating a motion to dismiss for *forum non conveniens*, this Court must first consider whether an adequate alternative forum is available to hear the case.  *See Vasquez,* 325 F.3d at 671. This requirement has two parts; the alternative forum must be both "available" and "adequate":

> An alternative forum is considered available if the entire case and all parties can come within its jurisdiction.
>
> *****

> An alternative forum is adequate if "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court."

*Id.* at 672 (citations omitted).

Once this Court finds that the alternative forum is both available and adequate, it must then weigh various private and public interest factors to determine whether that forum is the most appropriate. The "private interest" factors to be considered are:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of [the] premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839 (1947).  The "public interest" factors include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct 252 (1981) n. 6. (citing *Gulf Oil Corp.*, 330 U.S. at 509.)

**B.    Mexico is an "available" alternative forum.**

"An alternative forum is considered available if all parties can come within its jurisdiction." *Vasquez*, 305 F.3d at 671.  "A defendant's submission to the jurisdiction of an alternative forum renders that forum available for purposes of *forum non conveniens* analysis." *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983).  Here, Ford makes itself available to the courts of Mexico.  *See* Consent to Jurisdiction Clause *infra* at Page 9.  Mexico, therefore, is an "available" forum.

Nevertheless, even if Ford did not make itself available to the courts of Mexico, that country would still have jurisdiction over this defendant. As Professor Serna de la Garza explains, the laws of Coahuila, Mexico would apply, and the courts of that state would have jurisdiction over this case, because the accident occurred in Coahuila. *See* Declaration of Professor Jose M. Serna de la Garza, attached hereto as **Exhibit "9"**. Additionally, a Mexican court in Coahuila would have jurisdiction over a non-resident defendant such as Ford. *See id.* at pages 12-13.

**C.    Mexico is an "adequate" alternative forum.**

"An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly." *Vasquez*, 325 F.3d at 671. Mexico is an "adequate" forum because it provides a personal injury cause of action to the plaintiffs in this case. *See Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002), *cert. denied*, 538 U.S. 1012, 123 S.Ct. 1928, 155 L.Ed.2d 848 (2003). A foreign forum is "adequate" so long as, "the remedy provided by the alternative forum is [not] so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft*, 454 U.S. at 254-55.

That Mexico does not recognize strict products liability in the same capacity as the United States is of no consequence. As held by the Supreme Court:

> The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the forum non conveniens inquiry.
>
> *****
>
> Although the relatives of the decedents may not be able to rely on a strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly.

*Piper Aircraft*, 454 U.S. at 261 and 265, n.22.

Likewise, that Mexico may not afford plaintiffs exactly the same benefits that they would receive in an American court fails to demonstrate inadequacy. *See id.* Indeed, the court in *Neo Sack, Ltd v. Vinmar Impex*, held "it would be the height of presumption [for the U.S.] to insist on the 'parochial concept that all disputes must be resolved under our laws and in our courts' and that

5

anything short of American justice is inadequate." *Neo Sack, Ltd. v. Vinmar Impex, Inc.*, 810 F. Supp. 829, 834 (S.D. Tex. 1993)(internal citation omitted).

Recently, the Fifth Circuit addressed this issue in *Gonzalez*, where a Mexican plaintiff brought an automotive products liability action, in this very Court, claiming that a defective air bag killed plaintiff's wife. *See Gonzalez*, 301 F.3d at 379. The accident occurred in Mexico and was witnessed by Mexican citizens. *See id.* Chrysler moved for dismissal under the *forum non conveniens* doctrine. The plaintiffs objected, arguing that Mexico did not provide an adequate forum because: (1) Mexican tort law does not provide for a strict liability theory of recovery, and (2) Mexican law caps the maximum award of damages. *See id.* at 380-81. This Court disagreed with the plaintiffs and ultimately dismissed the case. The Fifth Circuit affirmed, and, citing *Piper Aircraft*, "quickly dismissed" plaintiffs' contentions. *See id.* at 384. (In *Piper Aircraft*, the United States Supreme Court held that Scotland's failure to recognize strict liability did not, as a result, render Scotland an inadequate alternative forum.) As to the second argument, the Fifth Circuit noted that:

> we find troublesome and lacking in guiding principle the fact that the adequacy determination could hinge on constantly varying and arbitrary differences underlying the 'economic viability' of a lawsuit

and that,

> the adequacy inquiry under Piper Aircraft does not include an evaluation of whether it makes economic sense for Gonzalez to file this lawsuit in Mexico.

*Id.* at 383.

The same is true here for Mexico. In sum, Mexico is an adequate alternative forum.

**D.    The private interest factors weigh heavily in favor of Mexico**

The next step in the *forum non conveniens* analysis is to consider the following private interest factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory

process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) the possibility of view of [the] premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *See Gulf Oil Corp*, 330 U.S. at 508.

All of these factors weigh in favor of dismissal of this case. First, since the accident that is the subject of the present litigation occurred in Mexico, that country's system has better access to sources of proof. The accident investigation occurred in that country and the majority of the witnesses with knowledge of relevant facts, and all of the eyewitnesses to the accident, reside in Mexico. Furthermore, it is safe to assume that all of the witnesses speak only Spanish, and the relevant reports are written in Spanish. The Mexican courts are certainly more capable of handling the presentation of proof that will be in their native tongue. In addition, Ford will be unable to compel many key witnesses who reside outside United States jurisdiction. *See* FED. R. CIV. P. 45 (limiting subpoena power to area within the state in which the court sits). Even those witnesses, if any, who are willing to submit to examination in United States courts can only be presented at a tremendous cost to the parties. Lastly, the accident site is in Mexico, and so a view of the premises will be more readily available to a Mexican court. Because of the numerous practical problems involved in litigating this case in Texas--a state where no part of the underlying action occurred-- the private interest factors balance heavily in favor of dismissal.

It is expected that plaintiffs will maintain that Texas is an appropriate forum because the vehicle was designed in the United States. Of course, plaintiffs will be unable to allege that the vehicle, or any component part(s), were designed in Texas. Regardless, the fact that the vehicle was designed in the United States is of no consequence to this Court's *forum non conveniens* analysis.

7

The linchpin of plaintiff's argument--that the alleged wrongful acts was the original
design of the vehicle and tires--reaches back too far in the accident's causal chain.
Identifying the situs of the wrongful conduct at an American designer's drawing
board ignores the production, sale, and alleged failure of the product, which all
occurred in Mexico. If accepted, plaintiffs' argument would curtail the rights of
foreign governments to regulate their internal economies and threaten to engulf
American courts with foreign claims.

*Gonzalez*, 325 F.3d at 674.

In any event, defendant hereby agrees to cooperate with the courts of Mexico in plaintiffs

efforts to obtain relevant evidence.[1] However, it is impossible for the plaintiffs to provide the same

easy access to relevant sources of proof, since a United States court cannot compel the production

of documents or persons not in either parties' control. *See Lueck v. Sundstrand Corp.*, 236 F.3d

1137, 1146-47 (9th Cir. 2001).

In sum, access to sources of proof will be easier if this case is tried in Mexico, where the

accident occurred, and all of the plaintiffs and all accident-specific witnesses reside.

**E.    The public interest factors also weigh heavily in favor of Mexico**

Although this court need not consider the public interest factors because the private interest

factors alone weigh heavily in favor of dismissal, the public interest factors strongly favor

dismissal of this case as well. *See Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-*

*Unterweser, A.G.*, 955 F.2d 368, 376 (5th Cir. 1992). The public interest factors the court must

weigh are:

the local interest in having localized controversies decided at home; the interest in
having the trial of a diversity case in a forum that is at home with the law that must
govern the action; the avoidance of unnecessary problems in conflict of laws; or in
the application of foreign law; and the unfairness of burdening citizens in an
unrelated forum with jury duty.

*Piper Aircraft*, 454 U.S. at 241, n.6.

---

[1] Discovery obtained in the United States can be used in a Mexican court. *See* **Exhibit "9"** at §VI, page 13.

Again, all of these factors weigh in favor of dismissal of the matter at bar. First, there is no reason to burden Texas courts, or for that matter any American court, with such controversies when an adequate alternative forum exists. This is exactly what the Supreme Court was concerned with when it stated the doctrine of *forum non conveniens* should work to decrease "[t]he flow of litigation into the United States" and to decongest "already crowded courts." *Piper Aircraft*, 454 U.S. at 252.

Second, the local interest in Mexico far outweighs any local interest in the United States, and specifically any local interest in the Brownsville Division. The action in question occurred in the foreign jurisdiction. Ford strains to find any basis to support the notion that the communities which comprise the Brownsville Division have any interest in the outcome of this litigation.

Third, this case is more properly tried in the jurisdiction whose substantive law should be applied. Certainly a Mexican court is better equipped to apply Mexican law than a court in the United States is. Allowing Mexico to adjudicate this claim will give the necessary deference to the courts of that country, as well as avoid the unnecessary conflict of law problems that will arise by trying the case in the United States.

Fourth, and most importantly to the public policy interests of Texans, it is altogether unreasonable to burden Texas residents with the duty of adjudicating the claims of Mexican residents and citizens when those claims have no connection whatsoever with Texas.

This Mexican accident claim was brought by foreign citizens and residents. They have chosen to litigate, not in the courts of their home country where the accidents occurred and where all of the evidence regarding this specific case is located, but in a Court in the United States sitting in a division with absolutely no connection to the accident giving rise to the lawsuit. Therefore,

plaintiffs' choice of forum is accorded substantially less deference than that of a domestic plaintiff litigating in his or her home forum. *See Piper Aircraft*, 454 U.S. at 256.

### III.   CONSENT TO JURISDICTION

Defendant hereby consents to the jurisdiction of all the Mexican courts. Defendant further agrees to abide by any judgment entered into by a Mexican court.

### IV.   CONCLUSION AND PRAYER

As was the case in *Gonzalez v. Chrysler Corp.* decided by this Court, Mexico is an available and adequate forum, and all of the public and private interest factors weigh heavily in favor of Mexico as the appropriate forum to adjudicate this Mexican accident claim. Defendant, Ford Motor Company, respectfully requests this Court to dismiss this action on the grounds of *forum non conveniens*.

Respectfully submitted

By: _____

Evan N. Kramer
Attorney in Charge
SDTX No.: 12346
Texas Bar No.: 11704650

OF COUNSEL:
William R. Moye
SDTX No.: 34007
Texas Bar No.:  24027553
BROWN McCARROLL, L.L.P.
1111 Bagby, 47th Floor
Houston, Texas 77002
(713) 529-3110; Fax:  (713) 525-6295

COUNSEL FOR DEFENDANT
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Ford Motor Company's Brief to Support Motion to Dismiss for *Forum Non Conveniens* has been forwarded by U.S. Certified Mail, Return Receipt Requested, to all known counsel of record as shown below on this _11_ day of _JUNE_____, 2004.

WILLIAM R. MOYE

Juan Gonzalez
THE LAW OFFICES OF MARK A. CANTU
The Atrium
1300 N. 10th Street, Suite 400
McAllen, TX  78501

2

BRANCH OFFICE...CITY POLICE DEPARTMENT

DEPARTMENT...CONTROL OF ACCIDENTS

GENERAL COMMITTEE...THE ONLY ONE

NOTE No. ...S/N[2]

CASE RECORDS...D.P.P.M.[3]

IN THE MATTER OF: ACCIDENT REPORT No. **0285**

SALTILLO, COAH. January 18 of the year 2002

C. Lic. Ivan (the 1st. letter not clear) ermea Perez

CHIEF OF CITY POLICE

HAND DELIVERED.

**BACKGROUND**:   We allowed ourselves to inform you, the authorities in the Art. 112 - 115 and 134 of the Traffic Regulation DECREED on July 15, 1991 by the R. CITY HALL OF SALTILLO, that it was at approximately 9:00 p.m. on this day, on the BLVD. CUAHUTEMOC FTE. RESIDENCIAL SAN MIGUEL, it was heard about A COLLISION AGAINST A STATIONARY OBJECT AND A ROLL OVER, of the following vehicle:

- A vehicle, make Ford, Guayin type, model 2001, red, license plate No. EWK-3153 (2001) the people are from the State of Coahuila, property of the (Not clear) HENG CLASICAS A. DE C.V., with domicile at Calle Michoacan No. 208-1, Colonia (Housing development) Republica Ote.   And it was driven by the C. **ELENA ARIZPE ORTEGA**, her other personal information is unknown because she was injured and transferred to receive medical treatment.

**INVESTIGATIONS AND MAIN CAUSES**: From the investigations and main causes that were conducted at the scene of the events it is determined that in this **COLLISION**

---

[2] S/N stands for "Sin Número" which means "Without Number"
[3] D.P.P.M. stands for "Direccion de Policia Preventiva Municipal" which means " City Police Department"

EXHIBIT
1

**AGAINST A STATIONARY OBJECT AND ROLL OVER**, the following factors intervene: The subject vehicle was traveling from South to North on the Blvd. Coahutemoc on a tangent to level and heading towards Los Rodriguez, the driver was going at an excessive speed (According to the magnitude of the impact), what caused him, when reaching De Residencial San Miguel, to loose the control of the vehicle which headed to the left until it struck, with its left front angle, on an ornament tree (a palm tree) property that belongs to the city and which is inside the central median strip that is on the road aforementioned, upon impact the subject vehicle turned over on its right side and then it turned over on its roof, due to what was just described it was written the violation traffic ticket No. 140068 for the driver the C. ELENA ARIZPE ORTEGA, for **DRIVING AT AN EXCESSIVE SPEED AND FOR CAUSING THE ACCIDENT,** in violation of the subsections 13 and 15 of the Article 202 of the TRAFFIC REGULATION, the vehicle described was put in the Pension Lobo and to the disposition of the C. AGENT OF THE PUBLIC DEPARTMENT OF THE SIXTH GROUP FOR MATTERS PERTAINING TO ROADS, STREETS AND HIGHWAYS, in this Position and of this Department.

**VICTIMS**: The C. ELENA ARIZPE ORTEGA, was injured, and the other personal information is unknown, she was transferred in an ambulance of the Cruz Roja (Red Cross) to the Hospital Mugerza for medical treatment.

**MATERIAL DAMAGES**:  They are estimated in an amount of approximately $100,000.00 for the subject vehicle, the damages to the Palm tree are going to be appraised later by an authorized staff member of the City Management Department.

**JUDICIAL VENUE**: No other authority took part of the accident at the scene of the events and for the leading legal purposes the REPORT of the events starts before the C. AGENT OF THE PUBLIC DEPARTMENT OF THE SIXTH GROUP FOR

MATTERS PERTAINING TO ROADS, STREETS AND HIGHWAYS IN SALTILLO, COAHUILA.

<u>ADDITIONAL</u>:   It is attached an illustrative sketch, an inventory No. 3039, the vehicle was put in the Pension Lobo (Illegible) of the tow truck (Note: There is what appears to be half of an official stamp) and (cut off sentence).

RESPECTFULLY: It follows an illegible signature and it also says: DFL. Of Public Safety and Road, Street and Highway Administration.   C. ABRAHAM CIBRIAN GARCIA.

NOTE:  There is a rounded official stamp or seal which legend is not clear.

RESPECTFULLY: It follows an illegible signature and it also says: DFL. Of Public Safety and Road, Street and Highway Administration.   C. JESUS RAMIRO BRISEÑO.

APPROVED BY: THE DUTY 1ST. OFFICER RESP.     It follows an illegible signature.  C. HECTOR MONTALVO MARROQUIN.



## ILLUSTRATIVE SKETCH
## OF THE REPORT ACCIDENT NO.  0285


# SKETCH

1.  THE ORIGINAL PATH OF THE SUBJECT VEHICLE.
2.  PLACE OF THE COLLISION AGAINST THE PALM TREE.
3.  PLACE OF THE ROLL OVER, THE PLACE WHERE THE VEHICLE OF REFERENCE CAME TO A REST, AND THE FINAL POSITION OF IT.

JANUARY 18, 2002.  SALTILLO,COAH.

NOTE:  There is a rounded official stamp or seal which legend is not clear.

RESPECTFULLY: It follows an illegible signature and it also says: DFL.  Of Public Safety and Road, Street and Highway Administration.    C. ABRAHAM CIBRIAN GARCIA.

RESPECTFULLY: It follows an illegible signature and it also says: DFL.  Of Public Safety and Road, Street and Highway Administration.    C. JESUS RAMIRO BRISEÑO.

APPROVED BY: THE DUTY 1ST. OFFICER RESP.    It follows an illegible signature.  C. HECTOR MONTALVO MARROQUIN.

FROM : EMBOTELLADORA EL CA   N          PHONE NO. : 12 77 99          MAR. 13 2002 06:38PM P2

DEPENDENCIA.... DIRECCION DE POLICIA
PREVENTIVA MUNICIPAL.
SECCION...... CONTROL DE ACCIDENTES.
MESA......... UNICA.
OFICIO Nₒ.... S/N.
EXPEDIENTE... D.P.P.M.

ASUNTO:- PARTE DE ACCIDENTE Nₒ. 0285

Saltillo, Coah., a 18 de Enero del 2002.

C. LIC. IVAN BERMEA PEREZ.
DIRECTOR DE LA POLICIA PREVENTIVA
MUNICIPAL.
P R E S E N T E.

ANTECEDENTES.- Nos permitimos informar a usted, facultados en los art. 112, 115 y 134 del Reglamento de Tránsito DECRETADO el día 15 de Julio de 1991, por el R. AYUNTAMIENTO DE SALTILLO, que siendo aproximadamente las 21°00 horas del día de hoy, en el BLVD. CUAHUTEMOC FTE. RESIDENCIAL SAN MIGUEL, se tomó conocimiento de un CHOQUE CONTRA OBJETO FIJO Y VOLCADURA, por el siguiente vehículo:-

.- Automóvil marca Ford, tipo guayín, modelo 2001, color rojo, con placas de circulación Nₒ. EWK-3153  2001) particulares del estado de Coahuila propiedad del C. HENG CLASICOS.A. DE C.V., con domicilio en calle Michoacán No. 208-1 Col. República Ote. y conducido por la C. ELENA ARIZPE ORTEGA, ignorandose demás generales por haber resultado lesionada - siendo trasladada a recibir atención médica.

INVESTIGACIONES Y CAUSAS DETERMINANTES.- De las investigaciones y causas determinantes practicadas en el lugar de los hechos se concluye que en este - CHOQUE CONTRA OBJETO FIJO Y VOLCADURA, intervinieron los siguientes factores TRANSITABA EL VEHICULO DE REFERENCIA DE SUR A NORTE SOBRE EL BLVD. CUAHUTEMOC EN TANGENTE A NIVEL Y CON DIRECCION A LOS RODRIGUEZ MANEJANDO SU CONDUCTOR CON VELOCIDAD INMODERADA (SEGUN MAGNITUD DEL IMPACTO), CAUSA QUE ORIGINO QUE AL LLEGAR A LA ALTURA DE RESIDENCIAL SAN MIGUEL PERDIERA EL CONTROL DE LA DIRECCION HACIA SU IZQUIERDA HASTA IMPACTARSE CON SU ANGULO DELANTERO IZQUIERDO CONTRA UN ARBOL DE ORNATO (PALMETA) PROPIEDAD DEL MUNCIPIO QUE SE LOCALIZA SOBRE EL CAMELLON CENTRAL DE LA VIA MENCIONADA, AL IMPACTO EL VEHICULO DE REFERENCIA SE VUELCA SOBRE SU COSTADO DERECHO PARA POSTERIORMENTE VOLCARSE SOBRE SU TOLDO, por lo anteriormente expuesto se formuló folio de infracción Nₒ. 140068 al conductor la C. ELENA ARIZPE ORTEGA, por EXCESO DE VELOCIDAD Y PROVOCAR ACCIDENTE, con violacion a los incisos 13 y 15 del - art. 202 del REGLAMENTO DE TRANSITO, quedando el vehículo descrito depositado en Pensión Embo y a disposición del C. AGENTE DEL MINISTERIO PUBLICO DE SEXTO GRUPO PARA ASUNTOS VIALES en esta Plaza y de ésta Dirección.

VICTIMAS.- Resultó lesionado la C. ELENA ARIZPE ORTEGA, ignorandose demas - generales, quién fue trasladada por una ambulancia de la Cruz Roja el Hospital Muguerza para su atención médica.

DAÑOS MATERIALES.- Se estiman en  a cantidad de aproximadamente $100,000.00 para el vehículo de referencia y los daños a la palmera serán valuados en su oportunidad por personal autorizado de Presidencia Municipal.

COMPETENCIA JUDICIAL.- De este accidente no tomó conocimiento ninguna otra autoridad en el lugar de los hechos y para los efectos legales conducentes procede DENUNCIAR los mismos ante el C. AGENTE DEL MINISTERIO PUBLICO DEL SEXTO GRUPO PARA ASUNTOS VIALES EN SALTILLO, COAHUILA.

COMPLEMENTARIAS.- Se anexa croquis ilustrativo, un inventario No. 3039, vehículo depositado en pensión Embo servicio de grúa y



RESPETUOSAMENTE.
OFL. DE SEG. PUB. Y VIALIDAD.

RESPETUOSAMENTE.
OFL. DE SEG. PUB. Y VIALIDAD.

C. ABRAHAM CIBRIAN GARCIA.

JESUS RAMIREZ BRISEÑO.

Vo. Bo.
1er. OFICIAL RESP. DEL TURNO.

C. HECTOR MONTALVO MARROQUIN.

---

CROQUIS ILUSTRATIVO DEL

PARTE DE ACCIDENTE NO. 0285





1.- TRAYECTORIA ORIGINAL DEL VEH. DE
    REFERENCIA.
2.- LUGAR DEL CHOQUE CONTRA LA PALMERA.
3.- LUGAR DE LA VOLCADURA Y POSICION ==
    FINAL DEL VEH. DE REFERENCIA.

Saltillo, Coah., a 18 de Enero del 2002.

C. ABRAHAM CIBRI.  GARCIA.                   C.     RAMIREZ BRISEÑO.
                                             OFL. NUM.    034

                    UNIDAD NO. 30120

                    Vo.  Bo.
            1er. OFICIAL RESP. DEL TURNO.

            C. HECTOR MONTALVO MARROQUIN.

FROM : EMBOTELLADORA EL CA    N          PHONE NO. : 12 77 99                    MAR. 13 2002 06:38PM P2

DEPENDENCIA.... DIRECCION DE POLICIA
PREVENTIVA MUNICIPAL.
SECCION...... CONTROL DE ACCIDENTES.
MESA........ . UNICA.
OFICIO No..... S/N.
EXPEDIENTE:.... D.P.P.M.

ASUNTO:- PARTE DE ACCIDENTE No. 0285

Saltillo, Coah., a 18 de Enero del 2002.

C. LIC. IVAN GERMEA PEREZ.
DIRECTOR DE LA POLICIA PREVENTIVA
MUNICIPAL.
P R E S E N T E.

ANTECEDENTES.- Nos permitimos informar a  sted, facultados en los art. 112, -
115 y 134 del Reglamento de Tránsito DECRETADO el día 15 de Julio de 1991,-
por el R. AYUNTAMIENTO DE SALTILLO, que siendo aproximadamente las 21°00 ho
ras del día de hoy, en el BLVD. CUAHUTEMOC FTE. RESIDENCIAL SAN MIGUEL, se
tomó conocimiento de un CHOQUE CONTRA OBJETO FIJO Y VOLCADURA, por el si -
guiente vehículo:-

   .- Automóvil marca Ford, tipo guayín, modelo 2001, color rojo, con placas
   de circulación No. EWK-3153  2001 particulares del estado de Coahuila
   propiedad del S. HENG CLASICOS.A. DE C.V., con domicilio en calle Mi-
   choacán No. 208-1 Col. República Ote. y conducido por la C. ELENA ARIZ
   PE ORTEGA, ignorándose demás generales por haber resultado lesionada -
   siendo trasladada arecibir atención médica.

INVESTIGACIONES Y CAUSAS DETERMINANTES.- De las investiaciones y causas de-
terminantes practicadas en el lugar de los hechos se concluye que en este -
CHOQUE CONTRA OBJETO FIJO Y VOLCADURA, intervinieron los siguientes factores
TRANSITABA EL VEHICULO DE REFERENCIA DE SUR A NORTE SOBRE EL BLVD. CUAHUTE-
MOC EN TANGENTE A NIVEL Y CON DIRECCION A LOS RODRIGUEZ MANEJANDO SU CONDUC
TOR CON VELOCIDAD INMODERADA (SEGUN MAGNITUD DEL IMPACTO), CAUSA QUE ORIGI-
NO QUE AL LLEGAR A LA ALTURA DE RESIDENCIAL SAN MIGUEL PERDIERA EL CONTROL
DE LA DIRECCION HACIA SU IZQUIERDA HASTA IMPACTARSE CON SU ANGULO DELANTERO
IZQUIERDO CONTRA UN ARBOL DE ORNATO (PALMETA) PROPIEDAD DEL MUNICIPIO QUE SE
LOCALIZA SOBRE EL CAMELLON CENTRAL DE LA VIA MENCIONADA, AL IMPACTO EL VE-
HICULO DE REFERENCIA SE VUELA SOBRE SU COSTADO DERECHO PARA POSTERIORMENTE
VOLCARSE SOBRE SU TOLDO, por lo anteriormente expuesto se formuló folio de-
infracción No. 140068 al conductor la C. ELENA ARIZPE ORTEGA, por EXCESO DE
VELOCIDAD Y PROVOCAR ACCIDENTE, con violación a los incisos 13 y 15 del ---
art. 202 del REGLAMENTO DE TRANSITO, quedando el vehículo descrito deposi -
tado en Pensión Lobo y a disposición del C. AGENTE DEL MINISTERIO PUBLICO DE
SEXTO GRUPO PARA ASUNTOS VIALES en esta Plaza y de ésta Dirección.

VICTIMAS.- Resultó lesionada la C. ELENA ARIZPE ORTEGA, ignorándose demas -
generales, quién fue trasladada por una ambulancia de la Cruz Roja el Hospi
tal Muguerza para su atención médica.

DAÑOS MATERIALES.- Se estiman en  a cantidad de aproximadamente $100,000.00
para el vehículo de referencia y los daños a lapalmera serán valuados en su
oportunidad por personal autorizado de residencia Municipal.

COMPETENCIA JUDICIAL.- De este accidente no tomó conocimiento ninguna otra
autoridad en el lugar de los hechos y para los efectos legales conducentes
procede DENUNCIAR los mismos ante el C. AGENTE DEL MINISTERIO PUBLICO DEL =
SEXTO GRUPO PARA ASUNTOS VIALES EN SALTILLO, COAHUILA.

COMPLEMENTARIAS.- Se anexa cróquis ilustrativo, un inventario No. 3039, ve
hículo depositado en  ensión            orúa y



RESPETUOSAMENTE.                           RESPETUOSAMENTE.
OFL. DE SEG. PUB. Y VIALIDAD.      OFL. DE SEG. PUB. Y VIALIDAD.

C. ABRAHAM CIBRIAN GARCIA.        JESUS RAMIREZ BRISEÑO.

Vo. Bo.
1er. OFICIAL RESP.DEL TURNO.

C.HEBRUS MONTELVO MARROQUIN.



CROQUIS ILUSTRATIVO DEL

PARTE DE ACCIDENTE NO. 0285

1.- TRAYECTORIA ORIGINAL DEL VEH. DE
    REFERENCIA.
2.- LUGAR DEL CHOQUE CONTRA LA PALMERA.
3.- LUGAR DE LA VOLCADURA Y POSICION ==
    FINAL DEL VEH. DE REFERENCIA.

Saltillo, Coah., a 18 de Enero del 2002.

RESPETUOSAMENTE.                    RESPETUOSAMENTE.
OFL. DE SEG. PUB. Y VIALIDAD       OFL. DE SEG. PUB. Y VIALIDAD.

UNIDAD NO. 30120

OFL. NUM. 034    RAMIREZ BRISEÑO.

Vo. Bo.
1er. OFICIAL RESP. DEL TURNO.

C. HECTOR MONTALVO MARROQUIN.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ELLENA PATRICIA ARIZPE, Individually and | § | |
| MONZERAT SUAREZ, Individually | § | |
| Plaintiffs | § | |
| vs. | § | CIVIL ACTION NO.: B-04-037 |
| | § | JURY |
| FORD MOTOR COMPANY | § | |
| Defendant | § | |

## DECLARATION OF ROGER CHEN

My name is Roger Chen. I am over the age of 18 years, of sound mind, have never been convicted of a felony, and am fully competent to make this declaration. I have personal knowledge of the facts stated herein, which are true and correct.

I am a Design Analysis Engineer for defendant, Ford Motor Company, in the above-styled cause of action. I am familiar with the vehicle made the basis of this suit bearing VIN 1FMYU22X4WUD23039 (the "vehicle"). Based on the corresponding VIN the vehicle was not manufactured or designed in Texas.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June _8th_, 2004 before a duly authorized officer of the State of Michigan.

_Roger J Chen_
ROGER CHEN

_SUBSCRIBED AND SWORN TO BEFORE
ME THIS 8th DAY OF JUNE, 2004._

_Dorothy A. Mehall_

DOROTHY A. MEHALL
Notary Public, Wayne County, Michigan
My Commission Expires April 5, 2005

**EXHIBIT
2**

ARIZPE Mfg Affidavit Specific.DOC



2004 WL 825641                                                                                    Page 1
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

Only the Westlaw citation is currently available.


United States District Court,
S.D. Texas,
Brownsville Division.

Jorge Enrique Pineda MORALES et al., Plaintiffs,
v.
FORD MOTOR CO., Defendant.

No. CIV.A. B-03-061.

March 31, 2004.

**Background:** Venezuelan plaintiffs brought products liability action against American automobile manufacturer. After removal to federal court, manufacturer moved to dismiss.

**Holdings:** The District Court, Hanen, J., held that:
(1) courts of Venezuela were available alternative forum, and
(2) dismissal on forum non conveniens grounds was warranted.

Motion granted.


**[1] Federal Courts** 45

170Bk45 Most Cited Cases

Provided that applicable circumstances exist, federal courts may dismiss any given case on forum non conveniens grounds, even though jurisdiction and proper venue are established, but only when there is alternative forum abroad.

**[2] Federal Courts** 417
170Bk417 Most Cited Cases

Even in diversity action, federal court applies federal law of forum non conveniens rather than any state-law counterpart.

**[3] Federal Courts** 45
170Bk45 Most Cited Cases

For purposes of forum non conveniens analysis, alternative forum is available if it has ability to assert jurisdiction over entire case and all parties.

**[4] Federal Courts** 45
170Bk45 Most Cited Cases

For purposes of forum non conveniens analysis, courts of Venezuela were available alternative forum in Venezuelan plaintiffs' products liability action against American manufacturer, even if Venezuelan court would not assert jurisdiction over dispute unless both parties willingly submitted to its jurisdiction, and plaintiffs did not wish to adjudicate their claims in Venezuela, where manufacturer was willing to submit to jurisdiction of Venezuelan courts.

**[5] Federal Courts** 45
170Bk45 Most Cited Cases

Dismissal on forum non conveniens grounds was warranted in Venezuelan plaintiffs' design-oriented products liability action against American automobile manufacturer, despite plaintiffs' contentions that documentary evidence relating to design was located in United States, and that political and judicial situation in Venezuela was such that Venezuelan courts were less convenient, where action arose out of single-vehicle accident in Venezuela, vehicle's sole occupant and owner was Venezuelan resident who received medical treatment only in Venezuela, vehicle was manufactured and sold in Venezuela, accident was investigated by Venezuelan authorities, plaintiffs failed to provide any expert opinion regarding current state of Venezuelan judiciary, and Venezuelan law was likely to govern plaintiffs' claims.

**[6] Federal Courts** 44
170Bk44 Most Cited Cases

Where case involves foreign plaintiffs attempting to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



EXHIBIT
3

2004 WL 825641
— F.Supp.2d —
(Cite as: 2004 WL 825641 (S.D.Tex.))

litigate accident that occurred on foreign soil in United States courts, plaintiffs' choice of forum deserves less deference.

Mr. Mark A. Cantu, Mr. Juan Antonio Gonzalez, Office of Mark Cantu, McAllen, for Petitioner.

Mr. Jaime Arturo Saenz, Rodriguez, Colvin, Chaney, Saenz, L.L.P., Brownsville, Mr. Ronald D. Wamsted, Brown, McCarroll and Oaks Hartline, Austin, for Respondents.

## MEMORANDUM OPINION

HANEN, District J.

*1 The Defendant removed this suit from the 107th Judicial District Court, Cameron County, Texas, to this court on March 21, 2003. *Docket No. 1.* Subsequently, the Defendant filed a "Motion to Dismiss on *Forum Non Conveniens* Grounds." *Docket No. 13.* The parties have presented arguments concerning the said motion over an extended period of time in multiple filings. *See Docket Nos. 19, 21, 34, 42.* For the reasons elaborated below, the court GRANTS the Defendant's motion and DISMISSES this case subject to the conditions enumerated in the conclusion of this memorandum opinion.

## I. FORUM NON CONVENIENS DOCTRINE

[1][2] "[F]ederal courts have discretion to dismiss ... actions, in certain narrow circumstances, under the common-law doctrine of *forum non conveniens.*" *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 721, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); *see also Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ("The doctrine leaves much to the discretion of the court to which the plaintiff resorts ..."). Provided that the applicable circumstances exist, federal courts may dismiss any given case even though "jurisdiction and proper venue are established," but only when there is an alternative forum abroad. *Am. Dredging Co. v. Miller,* 510 U.S. 443, 448- 49 & n. 2, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). In general, "the central focus of the *forum non conveniens* inquiry is convenience" and "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court and where the plaintiff is unable to offer

any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). More particularly, federal courts consider *forum non conveniens* motions under the analytical framework established in *Gulf Oil Corp.* and its progeny. [FN1]

The Fifth Circuit Court of Appeals has essentially distilled the *Gulf Oil Corp.* standard into a tripartite test. *Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824, 835 (5th Cir.1993), *cert. denied,* 508 U.S. 973, 113 S.Ct. 2963, 125 L.Ed.2d 663 (1993). In order to obtain dismissal on the ground of *forum non conveniens,* a defendant must first demonstrate "the existence of an available and adequate alternative forum." *Vasquez v. Bridgestone/Firestone, Inc.,* 325 F.3d 665, 671 (5th Cir.2003). If the existence of such a forum has been demonstrated, the court must then proceed to examine a host of. "private interest factors." *Gonzalez v. Chrysler Corp.,* 301 F.3d 377, 380 (5th Cir.2002), *cert. denied,* 538 U.S. 1012, 123 S.Ct. 1928, 155 L.Ed.2d 848 (2003). These private factors include, but are not limited to, the following:

(1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; (3) probability of an opportunity to view the premises, if view would be appropriate to the action; and (4) other factors affecting the ease, speed, and expense of trial or the enforceability of a judgment if obtained.

*2 *Baumgart,* 981 F.2d at 835-36 (citing *Gulf Oil Corp.,* 330 U .S. at 508). If these factors counsel dismissal, then the court need not proceed further. *Id.* at 837; *see also Empresa Lineas Maritimas Argentinas, S.A. v. Schichau-Unterweser, A.G.,* 955 F.2d 368, 376 (5th Cir.1992) ("Given the availability of an adequate forum in the Netherlands and the balance of private interest factors favoring dismissal, the district court had no need to consider the public interest factors."). However, if the private interest factors do not weigh in favor of dismissal, then the court proceeds to examine a series of "public interest factors." *Gonzalez,* 301 F.3d at 380. These public interest factors include, but are not limited to, the following:

(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641                                                                      Page 3
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

the forum that is familiar with the law that must
govern the action; (4) the avoidance of
unnecessary problems in conflicts of law, or in
application of foreign law; and (5) the unfairness
of burdening citizens in an unrelated forum with
jury duty.
*Baumgart*, 981 F.2d at 837 n. 14 (citing *Gulf Oil
Corp.*, 330 U.S. at 508). These lists of private and
public interest factors are "by no means exhaustive,
and some factors may not be relevant in the context
of a particular case." *Van Cauwenberghe v. Biard*,
486 U.S. 517, 528-29, 108 S.Ct. 1945, 100 L.Ed.2d
517 (1988). Considered in conjunction with one
another, these factors provide for a flexible inquiry;
accordingly, no one factor is dispositive. *Piper
Aircraft Co.*, 454 U.S. at 249-50.

## II. AVAILABILITY AND ADEQUACY OF THE ALTERNATIVE FORUM

[3] The first step in the *forum non conveniens*
inquiry entails two distinct determinations. *See
Vasquez*, 325 F.3d at 671 ("Forum availability and
adequacy are separate inquiries."); *In re Air Crash
Disaster Near New Orleans, Louisiana On July 9,
1982*, 821 F.2d 1147, 1165 (5th Cir.1987) (en banc)
("The district court must first decide whether an
available and adequate foreign forum exists. This is
a two-part inquiry: availability and adequacy."),
*vacated on other grounds sub nom. Pan Am. World
Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S.Ct.
1928, 104 L.Ed.2d 400 (1989), *reinstated on
remand save as to damages*, 883 F.2d 17 (5th
Cir.1989) (en banc) (per curiam). A forum is
"available" if it has the ability to assert jurisdiction
over "the entire case and all parties." *Vasquez*, 325
F.3d at 671. "An alternative forum is adequate if
'the parties will not be deprived of all remedies or
treated unfairly, even though they may not enjoy the
same benefits as they might receive in an American
court.'" *Id.* (quoting *Gonzalez*, 301 F.2d at 379- 80).

[4] Notwithstanding some confusion over
terminology, the parties do not dispute the adequacy
of Venezuelan courts to hear this matter. [FN2]
Instead, the issue is availability. Based on the
opinion of one of Plaintiffs' experts, Plaintiffs assert
that a Venezuelan court would not exercise
jurisdiction over this matter. *Docket No. 19* at 7-10.
Although another United States District Court has
accepted the analysis advanced by the Plaintiffs and
their expert, *see In re Bridgestone/Firestone, Inc.*,

*Tire Products Liability Litigation*, 190 F.Supp.2d
1125, 1130-32 (S.D.Ind.2002), this court cannot
agree with the aforesaid analysis. Boiled down to its
essence, the Plaintiffs maintain that, because the
Plaintiffs are unwilling to submit their case to the
Venezuelan judiciary, it is "unavailable" as that
term is understood in the law of *forum non
conveniens*. The Plaintiffs write:
*3 Article 40(4) of the [Venezuelan] Statute of
Private International Law provides that
"Venezuelan Courts shall have jurisdiction to
hear trials resulting from the filing of actions in
property when the *parties* should expressly or
tacitly submit to their jurisdiction." EXHIBIT B
(emphasis added). Dr. deMaekelt states that, a
plain reading of Article 40(4) in conjunction with
the provision of Article 44 which provides that
express submission shall be evidenced in writing,
means that a Venezuelan court would not exercise
jurisdiction over the actions at issue here unless
Plaintiffs and the Defendant submit a writing
executed by *both* parties that *expressly* submits to
the jurisdiction of a Venezuelan court. deMaekelt
Aff. II ¶¶ 9-10. For purposes of *forum non
conveniens* analysis, a Venezuelan court will not
be available as an alternative forum unless both
parties submit to their jurisdiction. deMaekelt
Aff. II ¶¶ 9-10. In the case at bar, because
Plaintiffs brought their case in the United States,
they are not expressly submitting to the
jurisdiction of Venezuelan courts.
*Docket No. 19* at 9-10 (emphasis in original).

The Plaintiffs, however, have confused their
willingness to avail themselves of the Venezuelan
forum for its availability. Only the latter concern is
relevant to the *forum non conveniens* inquiry.
Supreme Court and the Fifth Circuit case law makes
it clear that a foreign forum is available to plaintiffs
haling from the forum's country if the defendant
submits itself to the foreign jurisdiction. *See Piper
Aircraft Co.*, 454 U.S. at 254 n. 22 ("At the outset
of any *forum non conveniens* inquiry, the court must
determine whether there exists an alternative forum.
Ordinarily, this requirement will be satisfied when
the defendant is 'amenable to process' in the other
jurisdiction."); *Gonzalez*, 301 F.3d at 380 ("It is
undisputed that Mexico is an amenable forum
because the defendants have agreed to submit to the
jurisdiction of the Mexican courts."); *Veba-Chemie
A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th
Cir.1983) ("We hold instead that defendant's

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

Page 4

submission to the jurisdiction of an alternative forum renders that forum available for the purposes of *forum non conveniens* analysis."); *Vaz Borralho v. Keydrill Co.,* 696 F.2d 379, 393 (5th Cir.1983) (stating that "an agreement by a defendant to submit to the jurisdiction of the foreign forum will satisfy the doctrine's requirement of two forums in which the defendant is amenable to process"), *abrogated on other grounds, In re Air Crash,* 821 F.2d at 1163 n. 25. The Defendant has made it clear that it will submit itself to the jurisdiction of the Venezuelan courts. *Docket No. 13* at 7 ("Here, Ford makes itself available to the courts of Venezuela. Further, should this case be dismissed to Venezuela, Ford agrees to abide by any judgment entered into by a Venezuelan court."); *Docket No. 21* at 5 (reiterating willingness to submit to the jurisdiction of the Venezuelan courts).

*4 The Plaintiffs attempt to sidestep the foregoing case law and Defendant's submission by asserting that, "[u]nlike the alternate jurisdictions in those [other] cases, Venezuelan jurisdictional provisions require submission of both parties to that jurisdiction and the mere unilateral submission of the Defendant herein to Venezuelan jurisdiction is insufficient to create jurisdiction." *Docket No. 19* at 10; *see also Docket No. 34* at 10-12 (advancing the same notion). As previously noted, Plaintiffs' argument elides the distinction between their willingness to avail themselves of the Venezuelan forum and its availability. Indeed, the Plaintiffs' argument turns the *forum non conveniens* inquiry on its head. The *forum non conveniens* doctrine exists to provide federal courts an opportunity to reconsider a foreign Plaintiff's choice of forum in light of convenience. As conceptualized by the Plaintiffs, no such reconsideration may take place. Under the construction proposed by Plaintiffs, a Venezuelan plaintiff's choice of forum may never be reconsidered by the courts of this country, because Venezuelan plaintiffs have the option of rendering their home courts unavailable simply by bringing suits such as this one outside of their own country. Plaintiffs vociferously protest the Defendant's "unilateral submission to Venezuelan jurisdiction" as illegitimate, but evince no awareness that their own proposed construction of the *forum non conveniens* doctrine would empower themselves with unilateral authority regarding choice of forum. Nor do Plaintiffs indicate awareness that their own brand of unilateralism amounts to an utter

abrogation of the *forum non conveniens* doctrine in cases of this nature where Venezuelan plaintiffs are concerned. This court rejects the Plaintiffs availability-related arguments and finds that the Venezuelan courts are an available and adequate alternative forum. *Cf. Gonzalez,* 301 F.3d at 382-83 & n. 8 (rejecting notion that plaintiffs' unwillingness to bring suit in foreign forum due to its economic non-viability therein had any bearing on whether an alternative forum existed); *but cf. Canales Martinez v. Dow Chemical Co.,* 219 F.Supp.2d 719, 727-28 (E.D.La.2002) (arriving at the opposite conclusion reached by this court in the context of somewhat different Costa Rican jurisdictional provisions). [FN3]

III. PRIVATE INTEREST FACTORS

The Defendant argues that "[t]his case has absolutely no connection to Texas," pointing out that the "single-vehicle accident [at issue] ... occurred in Venezuela," the vehicle's "sole occupant" and owner "was a Venezuelan citizen and resident who received medical treatment only in Venezuela," the vehicle itself was manufactured and sold in Venezuela, and the accident was investigated by Venezuelan authorities. *Docket No. 13* at 3. Similarly, the Defendant notes that all of the Plaintiffs are Venezuelan citizens and residents. *Id.* Accordingly, the Defendant argues that the private interest factors "[a]ll ... weigh heavily in favor of dismissal." *Id.* at 9. More specifically, the Defendant argues that (1) "all of the case-specific evidence will originate in Venezuela," (2) "this Court will not be able to compel the attendance of key [Venezuelan] witnesses," (3) Ford will be unable "to join any non-parties since they would not be subject to personal jurisdiction in Texas," and (4) the accident site will be inaccessible should this matter be tried outside of Venezuela. *Id.* at 9-13.

*5 The Plaintiffs, of course, disagree with the Defendant's assessment. Regarding the case-specific evidence, the Plaintiffs argue that, as a design-oriented products liability suit, the voluminous documentary evidence (*i.e.,* "documents related to the development, design, testing summaries, evaluation, failure rates, fatal vehicle rates, inspections, NHTSA reports, Critical Concerns Review Group Reports") is located within the United States. *Docket No. 19* at 12. Moreover, the Plaintiffs note that the "millions" of relevant

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641                                                                                         Page 5
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

documents "will need to be translated into Spanish" in order for this action to proceed in Venezuela. *Id.* at 13. Contrariwise, Plaintiffs argue that there are "a mere handful" of relevant Venezuelan documents, which will be translated into English and provided to the Defendant at the Plaintiffs' expense. *Id.* In addition, Plaintiffs maintain that "witness testimony" that has been obtained in this suit thus far would not be admissible in Venezuelan proceedings. *Id.* at 13-14. Regarding the accident site and joinder of non- parties, the Plaintiffs argue that the accident site is largely irrelevant to the disputed issues and that the Defendant has not adduced any evidence that any potential third parties exist. *Id.* at 14-15. Finally, the Plaintiffs maintain that the political and judicial situation in Venezuela is such that "Venezuelan courts are less convenient for this trial." *Id.* at 15-16.

[5] Notwithstanding the Plaintiffs' counter-arguments, case law decisively resolves the private interest factors against the Plaintiffs' choice of forum in this case. The Plaintiffs' most plausible and compelling argument in favor of this forum is the one regarding the nature, extent, and location of documents relevant to their products liability cause of action. Unfortunately, this very argument has already been rejected by the Fifth Circuit. Of similar claims, the court of appeals has recently written:

> Plaintiffs point out that documents relating to the design and manufacture of the vehicle's tires are located in the United States and must be translated into Spanish....

> * * *

> Assuming *arguendo* that all information relating to the design and manufacture of the tires and vehicle is located in the United States, we still find the [district] court's analysis correct. The tires and vehicle were manufactured and sold in Mexico; the vehicle's servicing records--both vital to plaintiffs' alternative theories of liability--are also located there....

> * * *

> The linchpin of plaintiffs' argument--that the alleged wrongful act was the original design of the vehicle and tires--reaches back too far in the accident's causal chain. Identifying the situs of the wrongful conduct as an American designer's drawing board ignores the production, sale, and

alleged failure of the product, which all occurred in Mexico. If accepted, plaintiffs' argument would curtail the rights of foreign governments to regulate their internal economies and threaten to engulf American courts with foreign claims....

*6 *Vasquez,* 325 F.3d at 673-74. The vehicle at issue in this case was similarly manufactured and sold in Venezuela. *Docket No. 13* at 3 (citing affidavit of Roger Chen, which notes that the vehicle was "primarily designed in [the] USA and assembled in Venzuela" and sold by the Defendant to "an independent authorized [Venezuelan] dealer"); *id.* at Exhibit 3 (Plaintiffs' Original Petition at ¶ 4) (noting purchase of vehicle "by Jorge Enrique Pineda Carvajal at Auto Torovega, C.A., Carrera 8, Edif. Torovega, La Concordia, Apdo. 358, San Cristobal, Estado Tachira, Venezuela"). Like the plaintiffs in *Vasquez,* the instant Plaintiffs' rationale for selecting this forum simply "reaches back too far in the accident's causal chain." *See Docket No. 19* at 12 ("Fundamentally this case involves a determination of the circumstances surrounding the design of the Ford Explorer, the reasons for the failure of the vehicle, and the damages associated therewith and all of the evidence originates in the United States.").

This court finds Plaintiffs' contention regarding the purported inability of the parties to employ witness testimony procured in this proceeding in any future Venezuelan lawsuit to be similarly unpersuasive as a counter-argument to the Defendant's motion to dismiss. Initially, it is important to note the limited nature of Plaintiffs' argument. They do not contend that all discovery obtained thus far will be unusable in Venezuelan proceedings. Plaintiffs, relying on expert testimony propounded in another case, *see In re Bridgestone/Firestone,* 190 F.Supp.2d at 1149-50, argue only that Venezuelan law provides that " 'witness testimony obtained abroad shall have no value whatsoever if it was not taken under order issued by the Venezuelan judge hearing the case." ' *Docket No. 19* at 14. The Defendant disputes this contention altogether. *Docket No. 21* at 9.

However, the court finds it unnecessary to resolve this disagreement, as the sole discovery that has been conducted in this case to date has revolved around the *forum non conveniens* inquiry and a dispute concerning the applicable law in the event that this court declined to dismiss the suit. [FN4] The Plaintiffs themselves filed an unopposed

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641                                                                    Page 6
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

motion to extend the time for discovery on the merits pending this court's ruling on the *forum non conveniens* issue. *See Docket No. 37* ("To date, neither party has named any experts nor conducted written discovery as to the merits of the case because Defendant's motion to dismiss on grounds of *forum non conveniens* remains pending before the Court. As a practical matter, neither party wishes to expend time and resources on experts or written discovery until Defendant's motion is ripe for hearing and the Court issues its ruling."). The court granted this motion. *Docket No. 38.* The witness testimony procured thus far has been obtained over the Defendant's objection for the primary purpose of aiding the Plaintiffs' ability to respond to the Defendant's motion to dismiss this case. *See Docket Nos. 20, 25-26, 31, 33, 36.* It would be perverse to say the least to allow the Plaintiffs to now convert discovery allowed for their benefit over Defendant's objection on the issue of *forum non conveniens* into a basis for rejecting the very *forum non conveniens* motion that prompted the discovery. *Cf. Empresa Lineas Maritimas Arentinas, S.A.,* 955 F.2d at 372-73 (rejecting argument that completion of "substantial discovery" precluded *forum non conveniens* dismissal in case that had been pending before district court for eight years prior to filing of motion to dismiss).

*7 While the court is not unsympathetic to the Plaintiffs' premises-related counter-argument (*i.e.,* that "it is unlikely that any federal court would expend its judicial resources and time to investigate the scene of any accident"), *Docket No. 19* at 14, the court's sympathies are somewhat constrained by contrary case law. "Possibility of view of premises, if view would be appropriate to the action" is one of the private interest factors explicitly enumerated by the Supreme Court. *See Piper Aircraft Co.,* 454 U.S. at 241 n. 6 (quoting *Gulf Oil Co.,* 330 U.S. at 508). An accident such as the one at issue is, of course, of the sort that potentially renders a view of the accident scene appropriate. Potential defenses may include, for example, driver error or highway conditions, both of which necessitate a clear understanding of the scene. As another district court has observed:

Viewing the location of the [single car] accident could be appropriate, if unlikely, to a determination of this action. Although courts and juries in these type[s] of cases are usually informed of the circumstances of vehicular

accidents by photographs, modules and animations, physical viewing of the locale of the accident does occur. If it were necessary in this case, such a viewing would be virtually impossible due to the time and cost it would take to transport all court personnel and the jury to the location ....
*Urena-Taylor v. Daimler Chrysler Corp.,* 196 F.Supp.2d 428, 433 (E.D.Tex.2001); *cf. Seguros Comercial Americas S.A. de C.V. v. Am. President Lines, Ltd.,* 933 F.Supp. 1301, 1312-13 (S.D.Tex.1996) (finding that potential to view "the condition of the highway" in a case not involving personal injuries weighed in favor of dismissal).

In addition, although such a viewing of the scene may be relatively rare as a rule, the rule may be less pertinent in the context of trials involving foreign accidents. The need for local juries to personally view accident scenes located abroad may be higher due to Texas juries' unfamiliarity with road conditions abroad. That is, the reason accident scenes are infrequently viewed may have something to do with jurors' presumed familiarity with conditions in the locale in which they sit in judgment. *Cf. Piper Aircraft Co.,* 454 U.S. at 242 (noting district court's finding that trial concerning airplane crash "would be aided by familiarity with Scottish topography"). If this court retained the instant case, local jurors would, of course, lack such familiarity with the location of the accident. Accordingly, while the court considers this factor to be of limited import, particularly given the existence of modern technologies that would assist the parties in presenting a distant scene to otherwise unfamiliar jurors, it nonetheless also points toward dismissal of this case in favor of trial in Venezuela, if only slightly so.

The court also finds the Plaintiffs' counter-argument pertaining to potential third-parties unpersuasive. The Plaintiffs argue that the Defendant's purported concerns regarding the potential necessity of impleading third-parties who would be beyond the jurisdictional reach of this court are belied by its failure to identify any such parties. *Docket No. 19* at 14-15. Plaintiffs further contend that, having "allowed the parties to conduct discovery as to ... *forum non conveniens,*" the Defendant's failure to identify any such necessary third-parties constitutes a waiver of the issue. *Id.* The Defendant strenuously objects to the Plaintiffs'

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

line of argument on the basis that, "[i]f Ford had to provide a detailed catalog of potentially liable third-parties, it would have to conduct a full investigation and discovery in a foreign country under the Hague Convention." *Docket No. 21* at 10.

*8 Case law supports the Defendant's position. Regarding witnesses beyond the reach of a United States court's subpoena power, the Supreme Court has specifically rejected the contention that "defendants seeking *forum non conveniens* dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum." *Piper Aircraft Co.,* 454 U.S. at 258. Such witnesses would be difficult to identify and interview precisely because they are located "beyond the reach of compulsory process." *Id.* Indeed, "[r]equiring extensive investigation would defeat the purpose of" the *forum non conveniens* inquiry. *Id.; see also In re Air Crash,* 821 F.2d at 1165 n. 28 ("As one court has stated, however, 'a motion to dismiss for *forum non conveniens* does not call for a detailed development of the entire case.' "). The Court's observations in *Piper Aircraft Co.* concerning individual witnesses are likewise applicable to potential third-parties. Hence, this court feels it inappropriate to construe the Defendant's failure to identify potential third-parties with specificity as a waiver of the issue.

Nonetheless, defendants are at least required to suggest in general terms how such third-parties might be. *See Piper Aircraft Co.,* 454 U.S. at 258 (holding that defendants must "provide enough information to enable the District Court to balance the parties' interests"). The Defendant has stated that, "[a]t a minimum," it may need to join those "entities or individuals responsible for maintaining the subject vehicle." *Docket No. 13* at 11. This is sufficient to meet the Defendant's burden on this motion. *See id.* at 259 n. 27 (defendants submitted affidavits identifying witnesses in general terms who were beyond the reach of compulsory process, including "the persons responsible for servicing and maintaining the aircraft"). Given the nature of the case, this representation is credible. In addition, it is bolstered by the fact that, even if such potential third-parties never materialize, there are undeniably witnesses who are beyond this court's jurisdiction ( *e.g.,* the officer who investigated the scene in the immediate aftermath of the accident). [FN5] *See*

*Docket No. 13* at Exhibit 4 ("Translated Accident Report" of Venezuelan officer who investigated the accident scene). "Such difficulties in obtaining testimony and evidence located in foreign jurisdictions is a strong factor favoring *forum non conveniens* dismissal." *Torreblanca de Aguilar v. Boeing Co.,* 806 F.Supp. 139, 144 (E.D.Tex.1992), *aff'd,* 11 F.3d 55 (5th Cir.1993).

Finally, the Plaintiffs maintain that the political situation in Venezuela is such that trial would be more convenient in this country. *Docket No. 19* at 15-16. The Defendant has failed to address this matter. Nevertheless, this court is nonetheless unpersuaded by the Plaintiffs' contention. No actual evidence appears to have been submitted in support of this contention. Instead, the Plaintiffs appear to be relying principally on the testimony of an expert witness in another case in another federal forum. *See In re Bridgestone/Firestone,* 190 F.Supp.2d at 1153 (citing expert's written evaluation of Venezuelan judiciary and citing other documents not provided to this court). The Plaintiffs have provided this court with at least one other expert report from the *In re Bridestone/Firestone* litigation in the Southern District of Indiana. *See Docket No. 18* at Exhibit B ("Foreign Law Affidavit of James Otis Rodner"). However, the Plaintiffs have failed to provide this court with a copy of the relevant written report of the expert who opined in that case on the state of the Venezuelan judiciary, which renders it impossible for the court to independently assess the expert's opinion and its relevance to this case.

*9 Moreover, this court notes that, even if it is taken at face value, much of the information relied on by the Plaintiffs concerning the political and judicial situation in Venezuela is somewhat dated. For example, Plaintiffs rely on events that occurred or information that dates from 1997, 1999, and 2001. *Docket No. 19* at 15-16. None of these say anything about the state of the nation, its government, or its judicial branch at present. *Cf. Delgado,* 890 F.Supp. at 1357 (noting that political conditions bearing on the judiciary in Nicaragua had since changed for the better "since plaintiffs briefed the issue"). The most recent information alluded to by the Plaintiffs--the court uses the phrase "alluded to" because Plaintiffs have not actually provided the court with any of the documents that it references in this portion of their

2004 WL 825641
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

Page 8

briefing--is a press release from the Venezuelan embassy that purportedly relates that "confidence in the Venezuelan judicial system is 59%, amid accusations by the private media that the court follows government orders." *Id.* at 16.

Frankly, this court is at a loss as to how to meaningfully evaluate such generalizations, particularly in light of the overall lack of specific evidence on this point. Although the Fifth Circuit has indicated that it might consider political unrest and delays resulting therefrom in assessing the private interest factors, *see Vasquez*, 325 F.3d at 673 (distinguishing *In re Bridgestone/Firestone* on the basis that the district court therein "believed that political unrest could make trial ... difficult"), this court has been unable to locate a single opinion from this circuit that has done so. The sole court from within this circuit to address a like argument rejected it on the evidence submitted. *See Delgado*, 890 F.Supp. at 1357 (addressing and rejecting the more ambitious argument that "the courts of Nicaragua are unavailable because they are not functioning"). Given the paucity of evidence and information submitted to this court on the issue, this court likewise rejects the instant Plaintiffs' similar contentions.

Finally, as pertains to this subject, it is worth noting that even in *In re Bridgestone/Firestone*, in which the court accepted the plaintiffs' political unrest argument concerning Venezuela, it "accord[ed] this factor only slight weight in favor of retaining jurisdiction" due to a dearth of evidence. *In re Bridgestone/Firestone*, 190 F.Supp.2d at 1153. The district court in that case went on to note that a (convincing) argument against *forum non conveniens* dismissal premised on delay due to political unrest and the like should involve "exact evidence for the length of the delay and a delay of many years." *Id.* (citing *Bhatnagar v. Surrendra Overeas Ltd.*, 52 F.3d 1220, 1227-29 (3d Cir.1995), in which credible expert testimony established that litigation in India could take up to twenty-five years to complete). [FN6] Such evidence is lacking in this case, and the Plaintiffs may not simply rely on materials discussed in an opinion from another jurisdiction in a case that also involved Venezuelan plaintiffs. [FN7] *Bhatnager*, 52 F.3d at 1230.

*10 The preceding presentation of this court's consideration of private interest factors might give

the (mistaken) impression that the court placed the burden of persuasion on the Plaintiffs. Nothing could be further from the truth. The court has focused principally on the Plaintiffs' counter-arguments regarding the private interest factors due to the fact that the Defendant has demonstrated that the factors otherwise uniformly point toward dismissal. As the Defendant states in the opening paragraph of the introduction of its *forum non conveniens* motion:

> This case has absolutely no connection to Texas. This suit arose out of a single-vehicle accident that occurred in Venezuela. All of the Plaintiffs are citizens of Venezuela. The sole occupant of the vehicle was a Venezuelan citizen and resident who received medical treatment only in Venezuela. The vehicle at issue was manufactured in Venezuela. It was originally sold in Venezuela. It was owned by a Venezuelan resident and citizen. The accident was investigated by Venezuelan authorities.

*Docket No. 13* at 3. The evidence supports these contentions. *See id.* (citing Plaintiffs' Original Petition, Translated Accident Report, and Affidavit of Roger Chen). The Plaintiffs do not dispute these facts. Indeed, the Plaintiffs have tacitly acknowledged their accuracy. *See Docket No. 34* (attaching as "Exhibit C" the Defendant's responses to *forum non conveniens*- related interrogatories and requests for admissions); *see also Docket No. 42* (attaching as "Exhibit B" Defendant's responses to supplemental interrogatories and requests for admissions). [FN8] Plaintiffs merely maintain instead that the foregoing facts are irrelevant. *See, e.g., Docket No. 34* at 13 ("That the vehicle was 'finally assembled' and purchased in Venezuela is of no import ...."). Fifth Circuit case law and case law from within the circuit contradicts the Plaintiffs' position. *See Gonzalez*, 301 F.3d at 379 ("Texas, however, has a tenuous connection to the underlying dispute. Neither the car nor the airbag module was designed or manufactured in Texas. The accident took place in Mexico, involved Mexican citizens, and only Mexican citizens witnessed the accident. Moreover, Gonzalez purchased the Chrysler HLS in Mexico ...."); *Urena-Taylor*, 196 F.Supp.2d at 433 ("The decedent was a Mexican citizen; the plaintiffs are all Mexican citizens ...; the accident occurred in Mexico in a vehicle that was maintained in Mexico. All medical and law enforcement personnel and physical evidence are in Mexico.... Under these

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

circumstances, Mexico is the most appropriate forum available."); *see also Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 804 (7th Cir.1997) ( "Here, we do not even have an American plaintiff. Instead, we have a foreign plaintiff who was injured in a foreign land filing suit against an American defendant with extensive foreign dealings. The district court thus made a permissible inference that Indiana residents have a mere passing interest in this case."). [FN9]

## IV. PUBLIC INTEREST FACTORS

*11 The parties have likewise devoted considerable efforts contending that the public interest factors support their respective forum preferences. *See Docket No. 13* at 13-18 (Defendant's arguments); *Docket No. 19* at 16-20 (Plaintiffs' arguments); *Docket No. 34* at 16-18 (same); *Docket No. 42* at 7-9 (same). As the private interest factors strongly and uniformly point toward trial in a Venezuelan forum, *see supra* Part III, this court need not, and does not, discuss these arguments in detail. *Baumgart*, 981 F.2d at 835-36; *Empresa Lineas Maritimas Argentinas, S.A.*, 955 F.2d at 376. However, given the time expended on these factors by counsel, the court feels obligated to comment that the public interest factors mostly appear to favor trial abroad as well.

With the exception of the first factor concerning docket congestion--this court's current civil docket is quite manageable and thus poses no obstacle to the instant suit--the factors all indicate that trial in Venezuela would be more appropriate and convenient. Contrary to the Plaintiffs' assertion of a public safety policy interest in this suit on the part of the United States, *Docket No. 42* at 8-9, the locality of interest in this case is Venezuela. *See Vasquez*, 325 F.3d at 673 (stating that "Mexico has an interest in protecting its own citizens from defective products acquired in Mexico and causing injury there"). The Supreme Court has already indicated that domestic public policy concerns regarding consumer safety are insufficient to establish a local interest on the part of American courts sufficient to tip the second public interest factor in favor of retaining jurisdiction. *See Piper Aircraft Co.*, 454 U.S. at 260-61 (rejecting argument that trial in the United States would serve "an interest in ensuring that American manufacturers are deterred from producing defective products"). Although the court finds it

unnecessary to definitively resolve the issue, a recent Fifth Circuit case with a substantially similar fact pattern suggests that Venezuelan law would apply to this suit if it remained in this court. *See Vasquez*, 325 F.3d at 674 ("Even if the design of the tires and vehicles is characterized as the conduct causing injury, the aggregate of other specific contacts favors application of Mexican law."). Accordingly, the third public interest factor counseling trial in a forum familiar with the governing law likely points abroad. The parties voluminous and contentious wrangling concerning the contours of Venezuelan law, *see Docket Nos. 14, 18, 22, 35*, reinforces this impression. As previously noted, *see supra* note 4, the desirability of avoiding the complexity of choice of law inquiries in general and an unfamiliarity with Venezuelan law that necessarily adds to such complexity weighs in favor of trial abroad as well under the fourth public interest factor. Finally, the fifth public interest factor--the unfairness of burdening citizens in an unrelated forum with jury duty--heavily weighs in favor of dismissal in this instance. *See Urena Taylor*, 196 F.Supp.2d at 434 ("Given the limited contacts this case has with Texas, it would be an injustice to impose the burden of jury duty upon the people of this state having no relation to this litigation.").

## V. BURDEN OF PERSUASION

*12 The Plaintiffs in this case seek to alter the court's foregoing analysis of the balance of private interest factors by arguing that the Defendant is saddled with a heavier burden of persuasion than that which normally obtains in a *forum non conveniens* motion involving foreign plaintiffs. In general, a defendant "bears the burden of invoking the doctrine and moving to dismiss in favor of a foreign forum" and its "burden of persuasion runs to all the elements of the *forum non conveniens* analysis." *In re Air Crash*, 821 F.2d at 1164. The particular weight of this burden varies somewhat, however, depending on the circumstances of the case.

[6] In *Gulf Oil Co.*, the Supreme Court indicated that, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Co.*, 330 U.S. at 508. However, the parties in *Gulf Oil Co.* were both citizens of the United States litigating a dispute that

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

stemmed from an accident that took place in the United States. *Id.* at 502-03; *see also id.* at 512 (Black, J., dissenting). Where, as here, a case involves foreign plaintiffs attempting to litigate an accident that occurred on foreign soil in United States courts, plaintiffs' "choice deserves less deference." *Piper Aircraft Co.,* 454 U.S. at 256; *see also Baumgart,* 981 F.2d at 836 n. 12 (citing *Piper Aircraft Co.* for the foregoing proposition); *Great Prize, S.A. v. Mariner Shipping Pty., Ltd.,* 967 F.2d 157, 160 (5th Cir.1992) ("The strong presumption in favor of the plaintiff's choice of forum applies with less force when the plaintiff is a foreign national."). Indeed, in *Piper Aircraft Co.,* the Court indicated that, when a "plaintiff is unable to offer any specific reasons of convenience supporting his choice" of forum and said choice imposes "a heavy burden" on a defendant, "dismissal will ordinarily be appropriate," which suggests, perhaps, that foreign plaintiffs bear some persuasive obligations as well once the *forum non conveniens* issue has been credibly raised by a defendant. *Piper Aircraft Co.,* 454 U.S. at 249; *see also Empresa Lineas Maritimas Argentinas, S.A.,,* 955 F.2d at 373 ("When a plaintiff chooses a foreign forum for its claims, courts are reluctant to assume that convenience motivated that choice.").

The Plaintiffs in this case seek to avoid the aforementioned judicial skepticism concerning suits by foreigners brought in United States federal courts by effectively disclaiming their status as foreigners. Specifically, Plaintiffs argue that they are entitled by rights conferred in a treaty between the United States and Venezuela to be treated as if they were United States citizens in this lawsuit. *Docket No. 19* at 10-11 (citing and discussing the **Treaty of Peace, Friendship, Navigation, and Commerce,** Jan. 20, 1836, U.S.- Venez., art. 13, 8 Stat. 466, *available at* 1836 WL 3643). On the basis of this treaty, the Plaintiffs argue that they should be accorded the same treatment that would be afforded to American citizens in the court's *forum non conveniens* analysis, and they likewise contend that "the existence of this Treaty makes it reasonable to assume that the forum choice of the Plaintiffs herein is convenient in spite of the fact that they are foreigners." *Id.* at 11.

**\*13** At least one federal appellate court has adopted the very position advocated by the Plaintiffs. *See Blanco v. Banco Industrial de*

*Venezuela, S.A.,* 997 F.2d 974, 981 (2d Cir.1993) ("Because such a treaty exists between the United States and Venezuela ... no discount may be imposed upon the plaintiff's initial choice of a New York forum in this case solely because Proyecfin is a foreign corporation."). The Second Circuit Court of Appeals decision was premised on the notion "that when a treaty with a foreign nation accords its nationals access to our courts equivalent to that provided American citizens, identical *forum non conveniens* standards must be applied to such nationals by American courts." *Id.* However, it is not altogether clear that the Second Circuit has properly construed the relevant treaty provision. The provision in question provides that:

> Both the contracting parties promise and engage, formally, to give their special protection to the persons and property of the citizens of each other, of all occupations, *who may be in the territories subject to the jurisdiction of the one or the other, transient or dwelling therein,* leaving open and free to them the tribunals of justice, for their judicial recourse, on the same terms which are usual and customary with the natives or citizens *of the country in which they may be;* for which they may employ in defence [sic] of their rights, such advocates, solicitors, notaries, agents and factors, as they may judge proper, in all their trials at law; and such citizens or agents shall have free opportunity to be present at the decisions and sentences of the tribunals, in all cases which may concern them; and likewise at the taking of all examinations and evidence which may be exhibited on the said trials.

**Treaty of Peace, Friendship,** Navigation, and Commerce, Jan. 20, 1836, U.S.- Venez., art. 13, 8 Stat. 466, *available at* 1836 WL 3643 (emphasis added). By its express terms, this treaty provision requires that the signatories' courts be open to foreign nationals who happen to be located within the territory of the other. In other words, this treaty applies to Venezuelans present in the United States and citizens of the United States present in Venezuela. Nothing within this provision suggests that Venezuelan plaintiffs not located in the territory of the United States may bring suit within the latter's courts for events that took place abroad on equal footing with citizens of the United States or *vice versa.*

Furthermore, the Second Circuit nonetheless engaged in the traditional *forum non conveniens*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

<span style="float:right">Page 11</span>

analysis even after having interpreted the treaty in the manner proposed by the instant Plaintiffs. *Blanco,* 997 F.2d at 980-84. In fact, the *Blanco* court went on to find that Venezuela provided an adequate and available forum and that the public and private interest factors favored dismissal. *Id.* Indeed, the court of appeals affirmed the district court's dismissal, notwithstanding the fact that the parties had a contractual provision establishing mutual consent to trial in New York. *Id.* at 979-80.

*14 The Fifth Circuit has elsewhere acknowledged the Plaintiffs' argument, but it has not decided whether to accept the position embraced by the Second Circuit. *See James v. Gulf Int'l Marine Corp.,* 777 F.2d 193, 194 & n. 2 (5th Cir.1985) (addressing a somewhat similar provision in a treaty between the United States and Honduras but failing to decide the issue because it was not raised in the trial court). The Fifth Circuit Court of Appeals has indicated that, at a minimum, it will not construe general jurisdictional language in treaty provisions as casting aside the *forum non conveniens* doctrine. *See In re Air Crash,* 821 F.2d at 1160-62 (rejecting assertion that signing of Warsaw Convention suspended "a federal court's power to apply the doctrine of *forum non conveniens* in a case governed by the Convention"). However, it is one thing to hold that treaty provisions will not be construed as abrogating a longstanding legal doctrine in the absence of a more explicit statement to that effect and quite another to hold that a treaty provision will have no impact whatever on a federal court's *forum non conveniens* analysis.

At least one lower court within this circuit has reviewed a motion to dismiss on the basis of the *forum non conveniens* doctrine "under the higher standard that requires defendants to overcome the presumption accorded the plaintiffs' chosen forum by proving that the balance of interests points clearly toward trial in the alternative forum." *Delgado,* 890 F.Supp. at 1366 (citing and relying on *Blanco,* 997 F.2d at 981). However, the *Delgado* opinion is distinguishable on at least two grounds ( *viz.* some of the plaintiffs resided in the United States, and a jurisdictional provision of the Texas Civil Practice and Remedies Code was also at issue that has not been raised in this proceeding), and the court specifically noted that it found no Fifth Circuit authority akin to *Blanco.* Moreover, the *Delgado* court's decision about the appropriate standard was

not outcome determinative, as the court found that the higher standard was easily satisfied. *Delgado,* 890 F.Supp. at 1369. More recently, other district courts within this circuit have rejected arguments that general treaty provisions guaranteeing equality "before the courts" compel deference to a foreign plaintiff's choice of forum in the *forum non conveniens* context. *See Dominguez-Cota v. Cooper Tire & Rubber Co.,* 284 F.Supp.2d 444, 450 (N.D.Miss.2003) ("By giving a foreign plaintiff's choice of an American forum less deference than an American plaintiff's choice of a domestic forum, a court is not violating treaty obligations, but rather performing the *forum non conveniens* balancing test approved by the Supreme Court."); *Zermeno v. McDonnell Douglas Corp.,* 246 F.Supp.2d 646, 661-62 (S.D.Tex.2003) (same).

Given the text of the treaty provision at issue and case law concerning not altogether dissimilar treaty provisions, [FN10] this court is dubious about the contention being advanced by the Plaintiffs. In addition, this court is somewhat skeptical that the treaty argument being plied by the Plaintiffs might have much bearing on a discretionary decisions concerning *forum non conveniens* even if accepted. *See Empresa Lineas Maritimas Argentinas, S.A.,* 955 F.2d at 373 (holding that district courts in this circuit need not state the degree of deference "accorded a plaintiff's forum choice" and refusing to find an abuse of discretion in an instance in which a court failed to do so). However, the court ultimately finds that it need not decide this issue, as the private interest factors, *see supra* Part III, clearly point towards trial in Venezuela. *See Vasquez,* 325 F.3d at 672 (holding that the appellate court need not decide same type of argument that is advanced in this case, albeit on the basis of different treaty, "because the private and public factors 'clearly point towards' trial" abroad); *see also James,* 777 F.2d at 194 n. 2 (noting that, even when courts have accepted arguments akin to those being advanced by the instant Plaintiffs, these "courts have dismissed the suits where the balance weighs in favor of another forum"). The decision in *Blanco,* on which the Plaintiffs heavily rely, reflects the accuracy of the *James* court's observation. *See Blanco,* 997 F.2d at 981 (holding that "that the presence of an adequate Venezuelan forum, and the strong adverse balance of *Gilbert* private and public factors, outweigh the initial choice of [the foreign plaintiff] of a New York forum").

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641                                                                    Page 12
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

VI. CONCLUSION

*15 For the foregoing reasons, this court hereby
finds that Venezuela provides an adequate and
available alternative forum for this litigation. In
addition, this court finds that the private interest
factors uniformly favor dismissal of this case on the
ground of *forum non conveniens.* The private
interest factors point toward trial in Venezuela with
sufficient force to obviate any need to consider the
public interest factors. *Baumgart,* 981 F.2d at
835-36; *Empresa Lineas Maritimas Argentinas,
S.A.,* 955 F.2d at 376. The foregoing determinations
also render the parties' choice-of-law motions moot
and the court hereby DENIES them on this ground.
Accordingly, this court conditionally GRANTS
Ford Motor Company's Motion to Dismiss on
*Forum Non Conveniens* Grounds and conditionally
DISMISSES this case. In keeping with the law of
the circuit, this court conditions its dismissal as
follows:

First, the court grants this dismissal subject to a
return jurisdiction clause. *See Vasquez,* 325 F.3d at
675 (reversing and remanding because district court
failed to include a clause "permitting parties to
return to the dismissing court should the lawsuit
become impossible in the foreign forum"); *see also
In re Air Crash,* 821 F.2d at 1166 (requiring district
courts to "ensure that a plaintiff can reinstate his
suit in the alternative forum without undue
inconvenience or prejudice and that if the defendant
obstructs such reinstatement in the alternative forum
that the plaintiff may return to the American
forum"). Should legal proceedings in Venezuela
prove impossible for any reason other than the
Plaintiffs' unwillingness to fulfill the procedural
niceties necessary for a Venezuelan court to assert
jurisdiction with the consent of the parties, this
court will reassert its jurisdiction over the matter.
Similarly, failure to comply with any of the
conditions elaborated below constitutes grounds for
reassertion of jurisdiction by this court. *See Seguros
Comercial Americas S.A. de C.V.,* 933 F.Supp. at
1315 (providing for resumption "of jurisdiction
over this case if Defendant fails to meet any of the
above conditions").

Second, the court conditions dismissal on the
Defendant's agreement to appear and submit itself
to the jurisdiction of the Venezuelan courts, waiving
any jurisdictional defenses it might otherwise

possess. *See Great Prize, S.A.,* 967 F.2d at 159
(district court below so conditioned dismissal);
*Urena- Taylor,* 196 F.Supp.2d at 434 (district court
so conditioned dismissal).

Third, dismissal is similarly conditioned on
Defendant's waiver of statute of limitations or
laches-related defenses that it did not possess at the
time the Plaintiffs' Original Petition was filed in
state court. *See Great Prize, S.A.,* 967 F.2d at 159
(district court below so conditioned dismissal);
*Urena-Taylor,* 196 F.Supp.2d at 434-35 (district
court so conditioned dismissal).

Fourth, the court's order of dismissal is conditioned
on the Defendant's agreement to submit to
discovery in the Venezuelan forum per its
procedural rules. *Urena-Taylor,* 196 F.Supp.2d at
435 (requiring defendants to "produce in Nuevo
Leon, Mexico all reasonable discovery requests by
the plaintiffs").

*16 Fifth, the court's order of dismissal is
conditioned on the Defendant's agreement to make
its witnesses and evidence available in the
Venezuelan proceedings. *See Seguros Comercial
Americas S.A. de C.V.,* 933 F.Supp. at 1315
(conditioning dismissal on defendant's obligation to
"make available in the Mexican proceedings all
relevant documents and witnesses within its
control").

Sixth, the court's dismissal is conditioned on the
Defendant's agreement to bear any
translation-related expenses concerning the
testimony of English- speaking witnesses at trial.

Seventh, the court's dismissal is conditioned on the
Defendant's agreement to allow the use of all
discovery obtained thus far in proceedings in the
United States in the subsequent Venezuelan suit.
*See Seguros Comercial Americas S.A. de C.V.,* 933
F.Supp. at 1315 (conditioning dismissal on
defendant's obligation to "make available any
discovery taken in this action in the Mexican
proceeding").

Eighth, the court's dismissal is conditioned on the
Defendant's agreement to satisfy any Venezuelan
judgment, subject only to whatever appellate rights
it may enjoy in that forum. The court's dismissal is
further conditioned on the Defendant's agreement to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

Page 13

the reassertion of jurisdiction by this court in the event that it fails to satisfy any final judgment. *See Baumgart,* 981 F.2d at 836 n. 13 (noting that district court had imposed such a satisfaction condition and required an agreement that the defendant would "submit to the district court's retention of jurisdiction over the matter in the event that any judgments were not satisfied"); *Great Prize, S.A.,* 967 F.2d at 159 (same).

In keeping with the conditional nature of this order of dismissal, dismissal of the case from this court's docket shall become effective once the Defendant has tendered a written statement assenting to be bound by the foregoing conditions. Should the Defendant fail to do so within ten (10) business days of the entry of this order, its *forum non conveniens* motion will be considered waived, and this case will proceed to trial in this court.

FN1. Even in a diversity action, a federal court applies the federal law of *forum non conveniens* rather than any state-law counterpart. *De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir.1993); *see also Am. Dredging Co.,* 510 U.S. at 453 (stating of *forum non conveniens* that "the doctrine is one of procedure rather than substance"); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (holding that federal courts sitting in diversity are to apply state substantive law but federal procedural law).

FN2. Although the parties are in dispute as to the applicable law and are also in disagreement concerning the nature of Venezuelan substantive law on several points, *see Docket Nos. 14, 18, 22, 35,* the Defendant has argued that the Venezuelan body of law that it believes is applicable is "adequate" as that term is defined for purposes of federal *forum non conveniens* law. *Docket No. 13* at 7-9. The Plaintiffs do not contest this issue in their filings with this court. Although one subheading of "Plaintiffs' Response to Defendant's Motion to Dismiss For *Forum Non Conveniens* " is entitled "Plaintiffs' choice of forum should be upheld because an

adequate alternative forum does not exist under Venezuelan law," *Docket No. 19* at 7, this section of the Plaintiffs' argument solely addresses and disputes the availability of a Venezuelan forum rather than its adequacy. *See id.* at 7-10. Nowhere else do the Plaintiffs assert that Venezuela constitutes an inadequate forum. Indeed, the Plaintiffs elsewhere maintain that "there is no real difference between the laws of Venezuela and Texas," *Docket No. 35* at 1, which, of course, precludes any contention that Venezuelan courts are an inadequate forum for this litigation.

FN3. The district court in *Canales Martinez* effectively did hold that the doctrine of *forum non conveniens* is nonexistent with reference to Costa Rican plaintiffs involved in lawsuits such as the instant one in the absence of the plaintiffs' consent to the foreign forum. *See Canales Martinez,* 219 F.Supp.2d at 728 ("Were this court to dismiss this action conditioned on plaintiffs' refiling it in Costa Rica and having the Costa Rican court accept the case ... the [c]ourt would be forcing the plaintiffs to try to file the lawsuit in Costa Rica in violation of articles 122 and 477."). This court has some doubts concerning the correctness of the *Canales Martinez* decision on this point. First, the applicability of articles 122 and 477, each of which merely specify that parties cannot be forced to bring lawsuits, is not self-evident from the face of *Canales Martinez* opinion. The plaintiffs in that case, like the plaintiffs herein, have, in fact, already voluntarily brought suit. The relevant question raised by the *forum non conveniens* inquiry is not whether plaintiffs may be forced to sue, but rather in what forum the litigation that they have initiated should proceed. Second, the *Canales Martinez* court arrived at the foregoing conclusion only after it had already accepted the Costa Rican plaintiffs' jurisdictional contention that "the action originates from acts undertaken, and decisions made, by the defendant companies at their highest levels

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

in their corporate headquarters in the United States." *Canales Martinez,* 219 F.Supp.2d at 726. The Fifth Circuit has since rejected this very argument. *Vasquez,* 325 F.3d at 673-74. Therefore, to whatever extent *Canales Martinez* was good law, it, perhaps, has little or no continuing vitality.

Setting aside the foregoing doubts, the case at hand is also distinguishable from the decision in *Canales Martinez* in a couple of critical respects. First, in arriving at its decision, the *Canales Martinez* court relied on a specific Costa Rican case that construed its country's jurisdictional provisions and found jurisdiction wanting after a United States court had dismissed it on the basis of the *forum non conveniens* doctrine. *Canales Martinez,* 219 F.Supp.2d at 726-27, 729. No such equivalent Venezuelan case law has been proffered to this court. In the absence of such case law, this court's inclusion of a return jurisdiction clause is sufficient to safeguard against a subsequent determination by the Venezuelan courts that they lack the jurisdiction to hear this case. *See Delgado v. Shell Oil Co.,* 890 F.Supp. 1324, 1356-57 (S.D.Tex.1995) (rejecting argument that defendants' consent was insufficient to render foreign forums available in a case that involved some Costa Rican plaintiffs on account of the court's inclusion of a return jurisdiction clause in its *forum non conveniens* dismissal), *aff'd,* 231 F.3d 165 (5th Cir.2000), *cert. denied sub nom. Rodriguez-Delgado v. Shell Oil Co.,* 537 U.S. 1229, 123 S.Ct. 1350, 154 L.Ed.2d 1095 (2003); *see also Canales Martinez,* 219 F.Supp.2d at 729 (discussing the procedural history of the *Delgado* case after the *forum non conveniens* dismissal). Second, the Venezuelan jurisdictional provisions at issue in this case are distinguishable from the Costa Rican provisions discussed in *Canales Martinez.* Plaintiffs in this case do not raise the precise arguments addressed in the *Canales Martinez* court; nor have the parties brought to this court's attention any Venezuelan legal provisions equivalent to Costa Rican articles 122 and 477.

Similarly, the parties in this case have not brought to this court's attention any provisions akin to article 31 of the Costa Rican Code of Civil Procedure, upon which the *Canales Martinez* court heavily relies. *See Canales Martinez,* 219 F.Supp.2d at 728.

FN4. The parties have filed multiple documents concerning the choice of law issue. *See Docket Nos. 14, 18, 22, 35.* In summary, the Defendant argued that Venezuelan law should be applied in the event that this court decided to retain this case. The Plaintiffs contended that Texas law should apply in this diversity action. As the court has decided to dismiss the lawsuit on the basis of the *forum non conveniens* doctrine, the issue is superfluous and the court hereby denies all motions relating thereto as being moot. The court has given the choice of law issue little consideration in arriving at its decision on Defendant's motion to dismiss on the basis of *forum non conveniens. See Piper Aircraft Co.,* 454 U.S. at 251 ("If the possibility of a change in law were given substantial weight, deciding motions to dismiss on the ground of *forum non conveniens* would become quite difficult. Choice-of-law analysis would become extremely important, and the courts would frequently be required to interpret the law of foreign jurisdictions ."). The Supreme Court went on to note with reference to the public interest factors that, "[t]he doctrine of *forum non conveniens* ... is designed in part to help courts avoid conducting complex exercises in comparative law." *Id.*

FN5. The Plaintiffs attempt to counteract this fact by noting that both "Sgt. Elias Pena, the officer who investigated the accident, and Dr. Torres Macho, the attending physician of Clinica San Jose" have declared "under penalty of perjury ... their willingness to present themselves and provide testimony regarding this case in either Venezuela or Aruba." *Docket No. 19* at 13; *see also Docket No.27* (English

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641                                                              Page 15
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

translation of the declarations in question). Plaintiffs feel that "[t]hese declarations should allay the Defendant's concern with regard to compelling key witnesses to testify at trial." *Docket No. 19* at 13. However, the declarations do not actually commit the persons in question to appear at trial. Moreover, even were they to do so, the declarations are not binding in the Southern District of Texas. These persons are beyond the reach of this court, and this court is powerless to compel these individuals to live up to their declarations. In addition, it is telling that the Plaintiffs do not in any fashion obligate themselves to ensure that the persons in question will be available for trial in the United States. Rather, these declarations bind only Pena and Macho--who are each located far from this court's jurisdiction. This is not the only district court in Texas that is skeptical of such assurances. *See Urena-Taylor,* 196 F.Supp.2d at 433 ("The plaintiffs have asserted that they, the plaintiffs, will be available and present in a U.S. court. However, they cannot guarantee the availability of any of the necessary witnesses who might be unwilling to appear and this court cannot summon them.").

FN6. It should be noted that the *Bhatnager* court did not consider the delay at issue in that case in weighing the private interest factors. As in *Delgado,* the *Bhatnager* court considered the state of the foreign judiciary as it related to the Indian courts' availability as an alternate forum. The Third Circuit held "that delay of the magnitude described in the Bhatnagers' experts' affidavits can render an alternative forum inadequate as a matter of law." *Bhatnager,* 52 F.3d at 1228. Having failed to demonstrate that Venezuela's judicial situation should be taken into account in weighing the private interest factors, Plaintiffs have likewise failed to make the more demanding showing that Venezuela is an inadequate forum as a matter of law on this basis.

FN7. The Third Circuit's opinion in *Bhatnager* is worth quoting at length on this point:
We should not be read to conclude that the courts of India are always inadequate fora, making *forum non conveniens* dismissal inappropriate whenever an Indian national sues in the United States. That is neither the thrust nor the end point of our analysis. In reaching its conclusion that India was an inadequate alternative forum in this case, the district court was essentially concluding that Surrendra had not met its burden of proof on that threshold issue. We agree. It may well be that the next defendant to face the same issue faced by Surrendra would reach a different result because it would marshal more--or better--proof. Furthermore, another district court presented with the same raw evidence might reach different factual conclusions, and we might be constrained under our lenient standards of review to affirm in that case, as well.
52 F.3d at 1230.

FN8. The interrogatories state that the vehicle in question "was not assembled in the United States." *Docket No. 34* at Exhibit C (Interrogatory Nos. 7-8). It appears to have been "finally assembled in Venezuela." *Id.* (Interrogatory Nos. 11-12). Ford played some part in the vehicle's assembly, but did so outside of the United States. *Id.* (Request for Admission No. 9). Ford admits that the vehicle was "designed, in part, ... in the United States." *Id.* (Request for Admission Nos. 3, 7). It also admits that the vehicle was "tested, in part, ... in the United States" as well. *Id.* (Request for Admission Nos. 4, 7). Supplemental discovery responses provide more detail, but they do not alter the complexion of the case. *See, e.g., Docket No. 42* at Exhibit B (Interrogatory Nos. 7-8) ("The subject 2001 Ford Explorer was not finally assembled in the United States--it was finally assembled at Ford of Venezuela's Valencia plant. It is Ford's reasonable belief that seventy- two [72] percent of the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641                                                    Page 16
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

parts installed in the 2001 Explorer assembled in Venezuela were supplied by a U.S. manufacturer, although some of those parts may have in fact been manufactured or assembled at facilities outside of the United States."). At most, the interrogatories and requests for admissions at issue establish a connection to the United States that has been held to be insufficient to defeat a motion to dismiss based on the *forum non conveniens* doctrine. *Vasquez,* 325 F.3d at 673-74. They do not gainsay the Defendant's otherwise uncontradicted contentions that this case's circumstances are overwhelmingly connected with Venezuela.

FN9. The *Gonzalez* court went on to reiterate and underscore the foregoing observations in its conclusion. The court of appeals wrote that:
The district court found that almost all of the private and public interest factors pointed away from Texas and toward Mexico as the appropriate forum. It is clear to us that this finding does not represent an abuse of discretion. After all, the tort victim was a Mexican citizen, the driver of the Chrysler HLS (Gonzalez's wife) is a Mexican citizen, and the plaintiff is a Mexican citizen. The accident took place in Mexico. Gonzalez purchased the car in Mexico. Neither the car nor the air bag was designed or manufactured in Texas. In short, there are no public or private interest factors that would suggest that Texas is the appropriate forum for the trial of this case.
301 F.3d at 383-84. Given the circuit's subsequent determination that design within the United States is an insufficient basis for controverting an otherwise valid *forum non conveniens* motion, *Vasquez,* 325 F.3d at 673-74, the fact that some design took place in this country is also irrelevant.
Moreover, even if the location of the product's design was relevant, it is worth noting that the Plaintiffs have not even suggested let alone demonstrated that the vehicle at issue was designed in Texas.

Apart from the location of Plaintiffs' lawyers, there does not appear to be any documented connection to this forum. In making their design-oriented *forum non conveniens* argument, Plaintiffs routinely refer to generic connections with the United States. *See, e.g., Docket No. 34* at 13-14 (noting that documents and potential witnesses are located in the United States); *Docket No. 42* at 3-6 (arguing that the relevant documents and experts are located in the United States). There is literally no indication whatever in the record that explains why this Defendant, a Delaware corporation with its principal place of business located in Dearborn, Michigan, *Docket No. 1* at ¶ 7, is being sued in this particular forum. The Plaintiffs have "pointed to no specific interests favoring retention of jurisdiction. None of the parties, witnesses or sources of proof reside in the [Southern District of Texas]." *Veba-Chemie, A.G.,* 711 F.2d at 1249; *see also Urena-Taylor,* 196 F.Supp.2d at 434 ("[C]ertain evidence that may prove germane to the instant action is located in the United States. None of this evidence, as far as the court is aware, is stored in Texas and accordingly some inconvenience will necessarily be involved in transporting it for trial in this court."); *Torreblanca de Aguilar,* 806 F.Supp. at 144 ("The fact that some evidence concerning the aircraft's design and manufacture may be located elsewhere in the United States does not make the Eastern District of Texas a convenient forum.").

FN10. Both of the lower court decisions cited construed article 14(1) of the International Covenant on Civil and Political Rights, which provides that "[a]ll persons shall be equal before the courts and tribunals" of the signatories. *Dominguez-Cota,* 284 F.Supp.2d at 450 & n. 2; *Zermeno,* 246 F.Supp.2d at 661 & n. 7 . In dicta, a panel of the Fifth Circuit has indicated that it did not view the aforementioned treaty provision as being similar enough to the instant treaty

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 825641
--- F.Supp.2d ---
(Cite as: 2004 WL 825641 (S.D.Tex.))

    provision to be instructive in terms of how to construe the former with reference to the *forum non conveniens* doctrine. *Vasquez,* 325 F.3d at 672 n. 5.

2004 WL 825641, 2004 WL 825641 (S.D.Tex.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION**

FILED

SEP 2 3 2003

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| CIRIACO GONZALEZ, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | P-02-CA-137 |
| | § | |
| FORD MOTOR COMPANY, | § | |
| Defendant | § | |

*CONSOLIDATED WITH*

| | | |
|---|---|---|
| ROSAURA LINARES CARMONA | § | |
| GUTIERREZ, Individually and as Wife | § | |
| of EDGAR GUTIERREZ, Deceased, and | § | |
| as Mother of EDWARD GUTIERREZ, | § | |
| and FANNY ESPERANZA SANDOVAL, | § | |
| Individually and as Parent of EDGAR | § | |
| GUTIERREZ, | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | P-02-CA-016 |
| | § | |
| FORD MOTOR COMPANY, | § | |
| Defendant | § | |

**ORDER OF DISMISSAL UNDER THE DOCTRINE OF *FORUM NON CONVENIENS***

Before the Court is Defendant Ford Motor Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens*, filed on June 6, 2003 in the above-captioned matter. The Plaintiffs' Memorandum in Response to the Motion of Defendant Ford Motor Company to Dismiss on the Grounds of *Forum Non Conveniens* was filed on August 14, 2003. Defendant Ford Motor Company's Reply to Plaintiffs' Memorandum in Response to Defendant's Motion to Dismiss on the

K:\A\agrawal\civil\Gutierrez [4-02-CV-016]\foc.wpd 　　　　1

15

EXHIBIT
4

Grounds of *Forum Non Conveniens* was filed on August 20, 2003. Finally, a hearing on the Motion to Dismiss was held on August 20, 2003. After due consideration of the arguments and submissions of the parties, the Court is of the opinion that the Defendant's Motion should be GRANTED and the case DISMISSED under the doctrine of *forum non conveniens*.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

This consolidated case arose out of an accident that occurred on February 20, 2000 in Venezuela. On that day, Edgar Gutierrez was driving a 1998 Ford Explorer when he lost control of the vehicle. As a result of the ensuing accident, Gutierrez lost his life and Plaintiff Ciriaco Gonzalez, one of the passengers in the vehicle, was injured. Mr. Gutierrez's wife, Plaintiff Rosaura Linares Carmona Gutierrez, as well as his parent, Plaintiff Fanny Esperanza Sandoval, brought suit on his behalf against Ford Motor Company (Ford), Border Transfer Services, Inc., and Del Rio Test Center, Inc. in the 143rd Judicial District Court of Reeves County, Texas on February 4, 2002. Ford subsequently removed the case to this Court on March 13, 2002, and the case was assigned Cause Number P-02-CA-016. In contrast, Plaintiff Ciriaco Gonzalez's lawsuit against Ford was originally filed in this Court on December 27, 2002 under Cause Number P-02-CA-137. Both lawsuits alleged strict liability and negligence claims against Ford arising out of the February 20, 2000 accident.

On June 16, 2003, the Court ordered the two lawsuits consolidated under Cause Number P-02-CA-016. Prior to consolidation, the case filed on behalf of Edgar Gutierrez had an extensive procedural history which bears recounting here. As mentioned before, Plaintiffs Rosaura Linares Carmona Gutierrez and Fanny Esperanza Sandoval originally sued Ford, Border Transfer Services, Inc. (Border Transfer), and Del Rio Test Center, Inc. (Del Rio) in state court. After the case was removed to this Court, the Plaintiffs filed a Notice of Voluntary Dismissal Without Prejudice on

April 22, 2002 as to the entire cause of action. Accordingly, the Court entered an Order on Voluntary Dismissal Without Prejudice on April 24, 2002 and the case was closed. Then, on July 9, 2002, the parties filed a Stipulation to Vacate Order on Voluntary Dismissal Without Prejudice and Unopposed Withdrawal of Plaintiffs' Notice of Voluntary Dismissal Without Prejudice. In response, the Court issued an Order to Show Cause on August 14, 2002. After the parties failed to respond to the Order to Show Cause, the Court entered an Order Denying Plaintiffs and Defendant Ford Motor Company's Stipulation to Vacate Order on Voluntary Dismissal Without Prejudice and Unopposed Withdrawal of Plaintiffs' Notice of Voluntary Dismissal Without Prejudice on September 5, 2002.

One week later, on September 12, 2002, the Plaintiffs filed an Emergency Motion for Reconsideration of Order Denying Plaintiffs and Defendant Ford Motor Company's Stipulation to Vacate Order on Voluntary Dismissal Without Prejudice and Unopposed Withdrawal of Plaintiffs' Notice of Voluntary Dismissal Without Prejudice. The Court therefore entered an Order Vacating Order on Voluntary Dismissal Without Prejudice and Granting Withdrawal of Plaintiffs' Notice of Voluntary Dismissal Without Prejudice on November 6, 2002. The case was thus resurrected, and a Scheduling Order was entered on February 10, 2003.

The history of this case continues. Due to ambiguity in the language of the Order Vacating Order on Voluntary Dismissal Without Prejudice and Granting Withdrawal of Plaintiffs' Notice of Voluntary Dismissal Without Prejudice, it was not clear whether the Plaintiffs wished to maintain their causes of action against Border Transfer and Del Rio in addition to Ford subsequent to the reopening of the lawsuit. Thus, on May 27, 2003, the Plaintiffs filed a Notice of Voluntary Dismissal of Defendants Border Transfer Services, Inc. and Del Rio Test Center, Inc. The Court

accordingly entered an Agreed Order of Voluntary Dismissal of Defendants Del Rio Test Center, Inc. and Border Transfer Services, Inc. on May 28, 2003. Shortly thereafter, on June 16, 2003, the case was consolidated with Plaintiff Ciriaco Gonzalez's lawsuit against Ford arising out of the same accident in Venezuela. As such, the parties presently before the Court for the purpose of this Order are Defendant Ford Motor Company and Plaintiffs Ciriaco Gonzalez, Rosaura Linares Carmona Gutierrez, and Fanny Esperanza Sandoval.

## STANDARD OF REVIEW FOR *FORUM NON CONVENIENS*

To obtain a dismissal under the doctrine of *forum non conveniens*, a party must demonstrate that there exists an available and adequate alternative forum for the lawsuit and that the balance of relevant private and public interest factors favors dismissal of the lawsuit. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). An alternative forum is considered available if the entire case and all parties can come within its jurisdiction. *Id.* Moreover, an alternative forum is adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *Id.*

Once a court makes the threshold determination that an alternative forum for the case is both available and adequate, it turns to balancing relevant private and public interest factors to decide whether dismissal of the case is appropriate. *See id.* at 672. Relevant private interest factors include: the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses; the possibility of viewing the premises, if such viewing would be appropriate to the action; and all other practical problems that make the trial of a case easy, expeditious, and inexpensive. *Id.* If consideration of

these private interest factors counsels against dismissal, the court should turn to an evaluation of public interest factors. *See Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002). Relevant public interest factors include: administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *See Vasquez*, 325 F.3d at 673.

## DISCUSSION

In accordance with the recent guidance provided by the Fifth Circuit in *Vasquez* and *Gonzalez*, the Court first addresses the availability and adequacy of an alternative forum in this case. The Court will then turn its attention to the relevant private and public interest factors.

### I. Availability of Alternative Forum

In this case, the courts of Venezuela supply an available alternative forum to this Court. All of the Plaintiffs are citizens of Venezuela and can obviously file suit in the courts of that country for an accident that occurred there. Furthermore, the Defendant has stipulated and represented to the Court that it will submit to the authority of any Venezuelan court having jurisdiction over this case. *See Veba-Chemie, A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) (holding that defendant's submission to jurisdiction of alternative forum renders that forum available for purposes of *forum non conveniens* analysis). Therefore, availability of an alternative forum does not preclude dismissal.

### II. Adequacy of Alternative Forum

The next step in the inquiry is whether the courts of Venezuela provide an adequate forum

for the resolution of this dispute. As mentioned before, an alternative forum is deemed adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *See Vasquez*, 325 F.3d at 671. The Plaintiffs have not argued that the courts of Venezuela provide no remedy whatsoever for their causes of action against the Defendant. Assuming *arguendo* that Venezuelan law would severely cap any damages award in this case, or even that it would result in the entire lawsuit ceasing to be economically viable, the courts of Venezuela would still supply an adequate forum. *See id.* at 672; *Gonzalez*, 301 F.3d at 381.

## III. Private Interest Factors

Having satisfied the threshold inquiry regarding the availability and adequacy of an alternative forum in this case, the Court now turns its attention to the relevant private interest factors. First, any witnesses to the accident in this case are in Venezuela. Second, the vehicle at issue was purchased and maintained in Venezuela. Third, a court of appropriate jurisdiction in Venezuela could obtain compulsory process over unwilling witnesses, while this Court has no power to compel the attendance of Venezuelan citizens at a trial here. Fourth, it would be difficult and costly to obtain the attendance of willing witnesses from Venezuela. Fifth, all of the events leading up to the accident took place in Venezuela. Sixth, all of the reports dealing with the accident in this case are in Spanish, and the process of translating them into English for trial here would be lengthy and expensive. For all of these reasons, the Court finds that the private interest factors favor dismissal. *Cf. Vasquez*, 325 F.3d at 672-73. Indeed, the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses, the possibility of viewing the accident scene, if necessary,

K:\\Agravade\MIGutierrez [4-02-CV-016]\frac.wpd                6

and all other practical considerations that would make the trial of the case easy, expeditious, and inexpensive, clearly point toward trial in Venezuela.

**IV. Public Interest Factors**

Even if the private factors were to counsel against dismissal of this case, the Court is convinced that the relevant public interest factors clearly point toward trial in the alternative forum. First, the Court finds that this case would pose a substantial burden on the Pecos Division of the Western District of Texas. One need only peruse the Court's heavy criminal docket to appreciate the onus this lawsuit would pose in terms of time and resources. Also, jury duty in the case would exact an undue burden on the citizens who reside within the Pecos Division of the Western District of Texas.

Second, there is virtually no local interest in deciding this controversy because the Defendant's alleged actions have minimal, if any, relation to the Pecos Division. At the same time, the country of Venezuela has a great interest in regulating the quality of the products used by its citizens and in holding accountable the manufacturers of those products that allegedly cause injury within its borders. Moreover, any argument by the Plaintiffs that the wrongful act in this case was the original design of the vehicle "reaches too far back in the accident's causal chain." *Vasquez*, 325 F.3d at 674. The Court is not willing to ignore the fact that the product at issue in this case was sold in Venezuela and allegedly failed in that country.

Third, the Court finds that Venezuelan law controls this dispute. A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *Id.* Texas' conflict-of-laws rule employs the "most significant relationship" test, which takes into consideration the place where the injury occurred, the place where the injury-causing conduct occurred, the parties' residence, and

the place where the relationship between the parties, if any, is centered. *Id.* (footnote omitted). The aggregate of these factors favors application of Venezuelan law, even if the design of the vehicle were characterized as the injury-causing conduct. As mentioned before, the Plaintiffs are residents of Venezuela, the accident and any subsequent investigation took place there, and the vehicle was purchased and maintained there. *See id.*

In addition, the "most significant relationship" test requires that these specific contacts be evaluated through the prism of policy considerations such as: (1) the needs of the interstate and international systems; (2) the relevant policies of the (current) forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Id.* (citation omitted). Without belaboring the point, the Court finds that there is little, if any, policy justification for applying Texas law in this case. *See id.* at 675.

Having found that Venezuelan law is better suited than Texas law to govern this cause of action, the Court concludes that a court in Venezuela would be in the best position to apply the relevant substantive law. Indeed, a Venezuelan court would necessarily be more at home than this Court in a trial involving Venezuelan law. Dismissal of the case under *forum non conveniens* thus serves the public interest inasmuch as it avoids any problems this Court might have in the application of foreign law. In sum, the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and the unfairness of

burdening citizens in an unrelated forum with jury duty all clearly point again toward trial in Venezuela.

## CONCLUSION

For the reasons given above, the Court is of the opinion that dismissal of this case under the doctrine of *forum non conveniens* is appropriate. Accordingly,

It is ORDERED that Defendant Ford Motor Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* is hereby GRANTED.

It is FURTHER ORDERED that the above-numbered and -styled cause is hereby DISMISSED subject to the following additional Orders:

It is ORDERED that Defendant Ford Motor Company must agree to submit to jurisdiction and service of process in any Venezuelan court having jurisdiction under the applicable laws of Venezuela. This Court will not designate which court is proper because that question is for the courts of the country of Venezuela to decide.

It is FURTHER ORDERED that the Defendant must agree to pay any judgment rendered against it when required by the appropriate court in Venezuela.

It is FURTHER ORDERED that the Defendant must make witnesses and evidence available to the Plaintiffs in the appropriate Venezuelan court. The Defendant has obtained a dismissal in this Court under the doctrine of *forum non conveniens* upon an explicit representation to this Court that all necessary proof, evidence, and witnesses are available in Venezuela, and the Defendant shall be held to that representation. All evidence obtained through discovery in this Court, as well as all evidence obtained through discovery conducted in related Multi-District Litigation proceedings, if

any, shall be made available and shall be admissible to the extent permitted under the applicable Venezuelan court's procedural rules.

It is FURTHER ORDERED that, in the event that the appropriate court or courts of Venezuela fail or refuse to grant access to either the Plaintiffs or the Defendant, the parties may return to this jurisdiction for further proceedings.

It is FURTHER ORDERED that the Defendant is precluded from pleading statute of limitations or any jurisdictional bar in the courts of Venezuela. This Court will not permit either party to delay the proceedings in this case in order to invoke a statute of limitations or other jurisdictional bar through dilatory tactics.

It is FINALLY ORDERED that all pending motions in this case are DISMISSED AS MOOT, with the parties to bear their own costs.

SO ORDERED this _22_ day of September, 2003.

ROBERT JUNELL
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### PECOS DIVISION

**FILED**

**SEP 23 2003**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| ELSA BEATRIZ LOPEZ GUEDEZ et al., | § |
| Plaintiffs | § |
| | § |
| v. | § |
| | § |
| BRIDGESTONE/FIRESTONE, INC., | § |
| DEL RIO TEST CENTER, INC., | § |
| and FORD MOTOR COMPANY, | § |
| Defendants | § |

P-03-CA-032

## ORDER OF DISMISSAL UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

Before the Court is Firestone's Brief in Support of its Motion to Dismiss Based on *Forum Non Conveniens*, filed on behalf of Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc. on July 21, 2003 in the above-captioned matter. Defendant Ford Motor Company's Brief in Support of its Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* was filed on July 24, 2003. On August 26, 2003, the Plaintiffs filed their Objections and Opposition to Defendants' Motion to Dismiss for *Forum Non Conveniens*. Firestone's Reply Brief in Support of its Motion to Dismiss Based on *Forum Non Conveniens* was filed by Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc. on September 3, 2003. Likewise, Defendant Ford Motor Company's Reply Brief in Support of its Previously Filed Motion to Dismiss on the Grounds of *Forum Non Conveniens* was filed on September 5, 2003. Finally, a hearing was held on September 10, 2003 in Midland, Texas. After due consideration of the arguments and submissions of the parties, the Court is of the opinion that the Defendants' Motions should be GRANTED and the case DISMISSED under the doctrine of *forum non conveniens*.

K:\AA\gramm\civil\4-03-CV-032\fnc.wpd

1

42



EXHIBIT
5
Blumberg No. 5208

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

The above-numbered and -styled cause of action was removed to this Court on April 8, 2003 from a lawsuit originally filed in the 143rd Judicial District Court of Reeves County, Texas on March 3, 2003. The Plaintiffs are residents of Venezuela, and the case stems from an accident that occurred in Venezuela when one of the tires on a Ford Explorer allegedly failed. The tire was allegedly designed, manufactured, and distributed by Defendant Bridgestone/Firestone, Inc. or one of its affiliated companies, and was allegedly tested by Defendant Del Rio Test Center, Inc.

In their Original Petition filed in state court, the Plaintiffs sued Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc., Del Rio Test Center, Inc., and Ford Motor Company. As to Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc., and Del Rio Test Center, Inc., the Petition alleged causes of action for negligence and/or strict liability involving the design, manufacture, testing, etc. of the tire that allegedly failed. As to Ford Motor Company, the Petition alleged causes of action for negligence and strict liability involving the design, manufacture, etc. of the Explorer.

Defendant Bridgestone Corporation filed a Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process on May 27, 2003 in this matter. At a hearing on July 30, 2003 in Midland, Texas, the Plaintiffs represented that they were unopposed to this Motion. Accordingly, on August 8, 2003, the Court entered an Order Granting Defendant Bridgestone Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process. All of the Plaintiffs' claims against Defendant Bridgestone Corporation were thus dismissed.

Defendant Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. filed a Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on July 28, 2003. At a hearing on September 10, 2003, the Plaintiffs represented that they were unopposed to the dismissal of Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. under Rule 12(b)(6), as long as the parties would bear their own costs in that regard. Accordingly, all of the Plaintiffs' claims against Defendant Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. have been dismissed as well.

Thus, the parties presently before the Court for the purpose of this Order are the Plaintiffs and Defendants Bridgestone/Firestone, Inc., Del Rio Test Center, Inc., and Ford Motor Company.

### STANDARD OF REVIEW FOR *FORUM NON CONVENIENS*

To obtain a dismissal under the doctrine of *forum non conveniens*, a party must demonstrate that there exists an available and adequate alternative forum for the lawsuit and that the balance of relevant private and public interest factors favors dismissal of the lawsuit. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). An alternative forum is considered available if the entire case and all parties can come within its jurisdiction. *Id.* Moreover, an alternative forum is adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *Id.*

Once a court makes the threshold determination that an alternative forum for the case is both available and adequate, it turns to balancing relevant private and public interest factors to decide whether dismissal of the case is appropriate. *See id.* at 672. Relevant private interest factors include:

the relative ease of access to sources of proof; the availability of compulsory process for attendance

of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses; the possibility

of viewing the premises, if such viewing would be appropriate to the action; and all other practical

problems that make the trial of a case easy, expeditious, and inexpensive. *Id.* If consideration of

these private interest factors counsels against dismissal, the court should turn to an evaluation of

public interest factors. *See Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002). Relevant

public interest factors include: administrative difficulties flowing from court congestion; the local

interest in having localized controversies decided at home; the interest in having the trial of a

diversity case in a forum that is at home with the law that must govern the action; the avoidance of

unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of

burdening citizens in an unrelated forum with jury duty. *See Vasquez*, 325 F.3d at 673.

## DISCUSSION

In accordance with the recent guidance provided by the Fifth Circuit in *Vasquez* and

*Gonzalez*, the Court first addresses the availability and adequacy of an alternative forum in this case.

The Court will then turn its attention to the relevant private and public interest factors.

### I. Availability of Alternative Forum

In this case, the courts of Venezuela supply an available alternative forum to this Court. The

Plaintiffs are all citizens of Venezuela and can obviously file suit in the courts of that country for an

accident that occurred there. Furthermore, the Defendants have stipulated and represented to the

Court that they will submit to the authority of any Venezuelan court having jurisdiction over this

case. *See Veba-Chemie, A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) (holding that

defendant's submission to jurisdiction of alternative forum renders that forum available for purposes

K:\MA\grawal\civil\M-03-CV-032\fnc.wpd          4

of *forum non conveniens* analysis). Therefore, availability of an alternative forum does not preclude dismissal.

## II. Adequacy of Alternative Forum

The next step in the inquiry is whether the courts of Venezuela provide an adequate forum for the resolution of this dispute. As mentioned before, an alternative forum is deemed adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *See Vasquez*, 325 F.3d at 671. The Plaintiffs have not argued that the courts of Venezuela provide no remedy whatsoever for their causes of action against the Defendants. Assuming *arguendo* that Venezuelan law would severely cap any damages award in this case, or even that it would result in the entire lawsuit ceasing to be economically viable, the courts of Venezuela would still supply an adequate forum. *See id.* at 672; *Gonzalez*, 301 F.3d at 381.

## III. Private Interest Factors

Having satisfied the threshold inquiry regarding the availability and adequacy of an alternative forum in this case, the Court now turns its attention to the relevant private interest factors. First, any witnesses to the accident in this case are in Venezuela. Second, the vehicle at issue was purchased and maintained in Venezuela. Third, a court of appropriate jurisdiction in Venezuela could obtain compulsory process over unwilling witnesses, while this Court has no power to compel the attendance of Venezuelan citizens at a trial here. Fourth, it would be difficult and costly to obtain the attendance of willing witnesses from Venezuela. Fifth, all of the events leading up to the accident took place in Venezuela. Sixth, all of the reports dealing with the accident in this case are in Spanish, and the process of translating them into English for trial here would be lengthy and

expensive. For all of these reasons, the Court finds that the private interest factors favor dismissal. *Cf. Vasquez*, 325 F.3d at 672-73. Indeed, the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses, the possibility of viewing the accident scene, if necessary, and all other practical considerations that would make the trial of the case easy, expeditious, and inexpensive, clearly point toward trial in Venezuela.

## IV. Public Interest Factors

Even if the private factors were to counsel against dismissal of this case, the Court is convinced that the relevant public interest factors clearly point toward trial in the alternative forum. First, the Court finds that this case would pose a substantial burden on the Pecos Division of the Western District of Texas. One need only peruse the Court's heavy criminal docket to appreciate the onus this lawsuit would pose in terms of time and resources. Also, jury duty in the case would exact an undue burden on the citizens who reside within the Pecos Division of the Western District of Texas.

Second, there is virtually no local interest in deciding this controversy because the Defendants' alleged actions have minimal, if any, relation to the Pecos Division. At the same time, the country of Venezuela has a great interest in regulating the quality of the products used by its citizens and in holding accountable the manufacturers of those products that allegedly cause injury within its borders. Moreover, any argument by the Plaintiffs that the wrongful acts in this case were the original design of the vehicle and the tire, "reaches too far back in the accident's causal chain." *Vasquez*, 325 F.3d at 674. The Court is not willing to ignore the fact that the products at issue in this case were sold in Venezuela and allegedly failed in that country.

BMOH

2003 13:21 FAX 713 525 6251

Third, the Court finds that Venezuelan law controls this dispute. A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *Id.* Texas' conflict-of-laws rule employs the "most significant relationship" test, which takes into consideration the place where the injury occurred, the place where the injury-causing conduct occurred, the parties' residence, and the place where the relationship between the parties, if any, is centered. *Id.* (footnote omitted). The aggregate of these factors favors application of Venezuelan law, even if the design of the vehicle and the tire at issue were characterized as the injury-causing conduct. As mentioned before, the Plaintiffs are residents of Venezuela, the accident and any subsequent investigation took place there, and the vehicle as well as the tire were purchased and maintained there. *See id.*

In addition, the "most significant relationship" test requires that these specific contacts be evaluated through the prism of policy considerations such as: (1) the needs of the interstate and international systems; (2) the relevant policies of the (current) forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Id.* (citation omitted). Without belaboring the point, the Court finds that there is little, if any, policy justification for applying Texas law in this case. *See id.* at 675.

Having found that Venezuela's law is better suited than Texas' law to govern this cause of action, the Court concludes that a court in Venezuela would be in the best position to apply the relevant substantive law. Indeed, a Venezuelan court would necessarily be more at home than this Court in a trial involving Venezuelan law. Dismissal of the case under *forum non conveniens* thus serves the public interest inasmuch as it avoids any problems this Court might have in the application

7

K:\AAApawn\civil\M-03-CV-0324sc.wpd

of foreign law. In sum, the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty all clearly point again toward trial in Venezuela.

**CONCLUSION**

For the reasons given above, the Court is of the opinion that dismissal of this case under the doctrine of *forum non conveniens* is appropriate. Accordingly,

It is ORDERED that Firestone's Motion to Dismiss Based on *Forum Non Conveniens*, filed on behalf of Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc., is hereby GRANTED.

It is FURTHER ORDERED that Defendant Ford Motor Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* is hereby GRANTED.

It is FURTHER ORDERED that the above-numbered and -styled cause is hereby DISMISSED subject to the following additional Orders:

It is ORDERED that the above-named Defendants must agree to submit to jurisdiction and service of process in any Venezuelan court having jurisdiction under the applicable laws of the country of Venezuela. This Court will not designate which court is proper because that question is for the courts of Venezuela to decide.

It is FURTHER ORDERED that the Defendants must agree to pay any judgment rendered

against them, or any of them, when required by the appropriate court in Venezuela.

It is FURTHER ORDERED that the Defendants must make witnesses and evidence available to the Plaintiffs in the appropriate Venezuelan court. The Defendants have obtained a dismissal in this Court under the doctrine of *forum non conveniens* upon an explicit representation to this Court that all necessary proof, evidence, and witnesses are available in Venezuela, and the Defendants shall be held to that representation. All evidence obtained through discovery in this Court, as well as all evidence obtained through discovery conducted in related Multi-District Litigation proceedings, if any, shall be made available and shall be admissible to the extent permitted under the applicable Venezuelan court's procedural rules.

It is FURTHER ORDERED that, in the event that the appropriate court or courts of Venezuela fail or refuse to grant access to either the Plaintiffs or the Defendants, the parties may return to this jurisdiction for further proceedings.

It is FURTHER ORDERED that the Defendants are precluded from pleading statute of limitations or any jurisdictional bar in the courts of Venezuela. This Court will not permit either party to delay the proceedings in this case in order to invoke a statute of limitations or other jurisdictional bar through dilatory tactics.

It is FINALLY ORDERED that all pending motions in this case are DISMISSED AS MOOT, with the parties to bear their own costs.

SO ORDERED this 22 day of September, 2003.

ROBERT JUNELL
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### PECOS DIVISION

**FILED**

SEP 23 2003

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| ADRIANA CANALES RODRIGUEZ,<br>　　　Plaintiff | § | |
| | § | |
| | § | |
| v. | § | P-03-CA-057 |
| | § | |
| BRIDGESTONE/FIRESTONE, INC.,<br>DEL RIO TEST CENTER, INC.,<br>and FORD MOTOR COMPANY,<br>　　　Defendants | § | |

## ORDER OF DISMISSAL UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

Before the Court is Firestone's Brief and Exhibits in Support of its Motion to Dismiss for *Forum Non Conveniens*, filed on behalf of Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc. on July 24, 2003 in the above-captioned matter. Defendant Ford Motor Company's Brief in Support of its Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* was filed on July 25, 2003. On August 26, 2003, the Plaintiff filed her Objections and Opposition to Defendants' Motion to Dismiss for *Forum Non Conveniens*. Firestone's Reply Brief in Support of its Motion to Dismiss for *Forum Non Conveniens* was filed by Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc. on September 3, 2003. Likewise, Defendant Ford Motor Company's Reply Brief in Support of its Previously Filed Motion to Dismiss on the Grounds of *Forum Non Conveniens* was filed on September 5, 2003. Finally, a hearing was held on September 10, 2003 in Midland, Texas. After due consideration of the arguments and submissions of the parties, the Court is of the opinion that the Defendants' Motions should be GRANTED and the case DISMISSED under the doctrine of *forum non conveniens*.

K:\AA\grava\Rciv\M-03-CV-057\dza.wpd                    1

34



EXHIBIT
**6**

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

The above-numbered and -styled cause of action was removed to this Court on May 23, 2003 from a lawsuit originally filed in the 143rd Judicial District Court of Reeves County, Texas on April 23, 2003. The Plaintiff is a resident of Mexico, and the case involves an accident that occurred in Mexico on April 23, 2001. On that day, the Plaintiff was traveling in a Ford Explorer when one of the tires on the vehicle allegedly failed. The tire was allegedly designed, manufactured, and distributed by Defendant Bridgestone/Firestone, Inc. or one of its affiliated companies, and was allegedly tested by Defendant Del Rio Test Center, Inc.

In her Original Petition filed in state court, the Plaintiff sued Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc., Del Rio Test Center, Inc., and Ford Motor Company. As to Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc., and Del Rio Test Center, Inc., the Petition alleged causes of action for negligence and/or strict liability involving the design, manufacture, testing, etc. of the tire that allegedly failed. As to Ford Motor Company, the Petition alleged causes of action for negligence and strict liability involving the design, manufacture, etc. of the Explorer.

Defendant Bridgestone Corporation filed a Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process on May 30, 2003 in this matter. At a hearing on July 30, 2003 in Midland, Texas, the Plaintiff represented that she was unopposed to this Motion. Accordingly, on August 8, 2003, the Court entered an Order Granting Defendant Bridgestone Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process. All of the Plaintiff's claims against Defendant Bridgestone Corporation were thus

dismissed.

Defendant Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. filed a Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on August 18, 2003. At a hearing on September 10, 2003, the Plaintiff represented that she was unopposed to the dismissal of Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. under Rule 12(b)(6), as long as the parties would bear their own costs in that regard. Accordingly, all of the Plaintiff's claims against Defendant Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. have been dismissed as well.

Thus, the parties presently before the Court for the purpose of this Order are the Plaintiff and Defendants Bridgestone/Firestone, Inc., Del Rio Test Center, Inc., and Ford Motor Company.

## STANDARD OF REVIEW FOR *FORUM NON CONVENIENS*

To obtain a dismissal under the doctrine of *forum non conveniens*, a party must demonstrate that there exists an available and adequate alternative forum for the lawsuit and that the balance of relevant private and public interest factors favors dismissal of the lawsuit. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). An alternative forum is considered available if the entire case and all parties can come within its jurisdiction. *Id.* Moreover, an alternative forum is adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *Id.*

Once a court makes the threshold determination that an alternative forum for the case is both available and adequate, it turns to balancing relevant private and public interest factors to decide

whether dismissal of the case is appropriate. *See id.* at 672. Relevant private interest factors include: the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses; the possibility of viewing the premises, if such viewing would be appropriate to the action; and all other practical problems that make the trial of a case easy, expeditious, and inexpensive. *Id.* If consideration of these private interest factors counsels against dismissal, the court should turn to an evaluation of public interest factors. *See Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002). Relevant public interest factors include: administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *See Vasquez*, 325 F.3d at 673.

## DISCUSSION

In accordance with the recent guidance provided by the Fifth Circuit in *Vasquez* and *Gonzalez*, the Court first addresses the availability and adequacy of an alternative forum in this case. The Court will then turn its attention to the relevant private and public interest factors.

## I. Availability of Alternative Forum

In this case, the courts of Mexico supply an available alternative forum to this Court. The Plaintiff is a citizen of Mexico and can obviously file suit in the courts of that country for an accident that occurred there. Furthermore, the Defendants have stipulated and represented to the Court that they will submit to the authority of any Mexican court having jurisdiction over this case. *See Veba-Chemie, A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) (holding that defendant's

submission to jurisdiction of alternative forum renders that forum available for purposes of *forum non conveniens* analysis). Therefore, availability of an alternative forum does not preclude dismissal.

## II. Adequacy of Alternative Forum

The next step in the inquiry is whether the courts of Mexico provide an adequate forum for the resolution of this dispute. As mentioned before, an alternative forum is deemed adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *See Vasquez*, 325 F.3d at 671. The Plaintiff has not argued that the courts of Mexico provide no remedy whatsoever for her causes of action against the Defendants. Assuming *arguendo* that Mexican law would severely cap any damages award in this case, or even that it would result in the entire lawsuit ceasing to be economically viable, the courts of Mexico would still supply an adequate forum. *See id.* at 672; *Gonzalez*, 301 F.3d at 381.

## III. Private Interest Factors

Having satisfied the threshold inquiry regarding the availability and adequacy of an alternative forum in this case, the Court now turns its attention to the relevant private interest factors. First, any witnesses to the accident in this case are in Mexico. Second, the vehicle at issue was purchased and maintained in Mexico. Third, a court of appropriate jurisdiction in Mexico could obtain compulsory process over unwilling witnesses, while this Court has no power to compel the attendance of Mexican citizens at a trial here. Fourth, it would be difficult and costly to obtain the attendance of willing witnesses from Mexico. Fifth, all of the events leading up to the accident took place in Mexico. Sixth, all of the reports dealing with the accident in this case are in Spanish, and

K:\AAgrawal\civil\M-03-CV-057\doc.wpd                    5

the process of translating them into English for trial here would be lengthy and expensive. For all of these reasons, the Court finds that the private interest factors favor dismissal. *Cf. Vasquez*, 325 F.3d at 672-73. Indeed, the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses, the possibility of viewing the accident scene, if necessary, and all other practical considerations that would make the trial of the case easy, expeditious, and inexpensive, clearly point toward trial in Mexico.

**IV. Public Interest Factors**

Even if the private factors were to counsel against dismissal of this case, the Court is convinced that the relevant public interest factors clearly point toward trial in the alternative forum. First, the Court finds that this case would pose a substantial burden on the Pecos Division of the Western District of Texas. One need only peruse the Court's heavy criminal docket to appreciate the onus this lawsuit would pose in terms of time and resources. Also, jury duty in the case would exact an undue burden on the citizens who reside within the Pecos Division of the Western District of Texas.

Second, there is virtually no local interest in deciding this controversy because the Defendants' alleged actions have minimal, if any, relation to the Pecos Division. At the same time, the sovereign Republic of Mexico has a great interest in regulating the quality of the products used by its citizens and in holding accountable the manufacturers of those products that allegedly cause injury within its borders. Moreover, any argument by the Plaintiff that the wrongful acts in this case were the original design of the vehicle and the tire, "reaches too far back in the accident's causal chain." *Vasquez*, 325 F.3d at 674. The Court is not willing to ignore the fact that the products at

issue in this case were sold in Mexico and allegedly failed in that country.

Third, the Court finds that Mexican law controls this dispute. A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *Id.* Texas' conflict-of-laws rule employs the "most significant relationship" test, which takes into consideration the place where the injury occurred, the place where the injury-causing conduct occurred, the parties' residence, and the place where the relationship between the parties, if any, is centered. *Id.* (footnote omitted). The aggregate of these factors favors application of Mexican law, even if the design of the vehicle and the tire at issue were characterized as the injury-causing conduct. As mentioned before, the Plaintiff is a resident of Mexico, the accident and any subsequent investigation took place there, and the vehicle as well as the tire were purchased and maintained there. *See id.*

In addition, the "most significant relationship" test requires that these specific contacts be evaluated through the prism of policy considerations such as: (1) the needs of the interstate and international systems; (2) the relevant policies of the (current) forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Id.* (citation omitted). Without belaboring the point, the Court finds that there is little, if any, policy justification for applying Texas law in this case. *See id.* at 675.

Having found that Mexico's law is better suited than Texas' law to govern this cause of action, the Court concludes that a court in Mexico would be in the best position to apply the relevant substantive law. Indeed, a Mexican court would necessarily be more at home than this Court in a trial involving Mexican law. Dismissal of the case under *forum non conveniens* thus serves the

public interest inasmuch as it avoids any problems this Court might have in the application of foreign law. In sum, the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty all clearly point again toward trial in Mexico.

## CONCLUSION

For the reasons given above, the Court is of the opinion that dismissal of this case under the doctrine of *forum non conveniens* is appropriate. Accordingly,

It is ORDERED that Firestone's Motion to Dismiss for *Forum Non Conveniens*, filed on behalf of Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc., is hereby GRANTED.

It is FURTHER ORDERED that Defendant Ford Motor Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* is hereby GRANTED.

It is FURTHER ORDERED that the above-numbered and -styled cause is hereby DISMISSED subject to the following additional Orders:

It is ORDERED that the above-named Defendants must agree to submit to jurisdiction and service of process in any Mexican court having jurisdiction under the applicable laws of the Republic of Mexico. This Court will not designate which court is proper because that question is for the courts of the Republic of Mexico to decide.

It is FURTHER ORDERED that the Defendants must agree to pay any judgment rendered

K:\AA\prava\Dclv\04-03-CV-057\fac.wpd                    8

against them, or any of them, when required by the appropriate court in the Republic of Mexico.

It is FURTHER ORDERED that the Defendants must make witnesses and evidence available to the Plaintiff in the appropriate Mexican court. The Defendants have obtained a dismissal in this Court under the doctrine of *forum non conveniens* upon an explicit representation to this Court that all necessary proof, evidence, and witnesses are available in Mexico, and the Defendants shall be held to that representation. All evidence obtained through discovery in this Court, as well as all evidence obtained through discovery conducted in related Multi-District Litigation proceedings, if any, shall be made available and shall be admissible to the extent permitted under the applicable Mexican court's procedural rules.

It is FURTHER ORDERED that, in the event that the appropriate court or courts of the Republic of Mexico fail or refuse to grant access to either the Plaintiff or the Defendants, the parties may return to this jurisdiction for further proceedings.

It is FURTHER ORDERED that the Defendants are precluded from pleading statute of limitations or any jurisdictional bar in the courts of the Republic of Mexico. This Court will not permit either party to delay the proceedings in this case in order to invoke a statute of limitations or other jurisdictional bar through dilatory tactics.

It is FINALLY ORDERED that all pending motions in this case are DISMISSED AS MOOT, with the parties to bear their own costs.

SO ORDERED this _22_ day of September, 2003.

ROBERT JUNELL
UNITED STATES DISTRICT JUDGE

K:\\Agravel\civil\M-03-CV-057\doc.wpd                9

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION**

*FILED*

SEP 2 3 2003

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| AEIDA ELATRACH HANGE et al., | § | |
|     Plaintiffs | § | |
| | § | |
| v. | § | P-03-CA-043 |
| | § | |
| BRIDGESTONE/FIRESTONE, INC., | § | |
| DEL RIO TEST CENTER, INC., | § | |
| and FORD MOTOR COMPANY, | § | |
|     Defendants | § | |

**ORDER OF DISMISSAL UNDER THE DOCTRINE OF *FORUM NON CONVENIENS***

Before the Court is Firestone's Brief in Support of its Motion to Dismiss Based on *Forum Non Conveniens*, filed on behalf of Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc. on July 21, 2003 in the above-captioned matter. Defendant Ford Motor Company's Brief in Support of its Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* was filed on July 24, 2003. On August 26, 2003, the Plaintiffs filed their Objections and Opposition to Defendants' Motion to Dismiss for *Forum Non Conveniens*. Firestone's Reply Brief in Support of its Motion to Dismiss Based on *Forum Non Conveniens* was filed by Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc. on September 3, 2003. Likewise, Defendant Ford Motor Company's Reply Brief in Support of its Previously Filed Motion to Dismiss on the Grounds of *Forum Non Conveniens* was filed on September 5, 2003. Finally, a hearing was held on September 10, 2003 in Midland, Texas. After due consideration of the arguments and submissions of the parties, the Court is of the opinion that the Defendants' Motions should be GRANTED and the case DISMISSED under the doctrine of *forum non conveniens*.

K:\AAgrawal\civil\4-03-CV-043\fnc.wpd



EXHIBIT
1



## FACTUAL BACKGROUND & PROCEDURAL HISTORY

The above-numbered and -styled cause of action was removed to this Court on April 17, 2003 from a lawsuit originally filed in the 143rd Judicial District Court of Reeves County, Texas on March 20, 2003. The Plaintiffs are residents of Venezuela, and the case involves an accident that occurred in Venezuela on March 20, 2001. On that day, Louaiy Alatrach was traveling in a Ford Explorer when one of the tires on the vehicle allegedly failed. The tire was allegedly designed, manufactured, and distributed by Defendant Bridgestone/Firestone, Inc. or one of its affiliated companies, and was allegedly tested by Defendant Del Rio Test Center, Inc.

In their Original Petition filed in state court, the Plaintiffs sued Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc., Del Rio Test Center, Inc., and Ford Motor Company. As to Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc., and Del Rio Test Center, Inc., the Petition alleged causes of action for negligence and/or strict liability involving the design, manufacture, testing, etc. of the tire that allegedly failed. As to Ford Motor Company, the Petition alleged causes of action for negligence and strict liability involving the design, manufacture, etc. of the Explorer.

Defendant Bridgestone Corporation filed a Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process on April 25, 2003 in this matter. At a hearing on July 30, 2003 in Midland, Texas, the Plaintiffs represented that they were unopposed to this Motion. Accordingly, on August 8, 2003, the Court entered an Order Granting Defendant Bridgestone Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process. All of the Plaintiffs' claims against Defendant Bridgestone Corporation were

K:\AAgrawal\civil\4-03-CV-043\lmc.wpd                    2

thus dismissed.

Defendant Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. filed a Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on July 28, 2003. At a hearing on September 10, 2003, the Plaintiffs represented that they were unopposed to the dismissal of Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. under Rule 12(b)(6), as long as the parties would bear their own costs in that regard. Accordingly, all of the Plaintiffs' claims against Defendant Smithers Transportation Test Center a/k/a Smithers Tire & Automotive Testing of Texas, Inc. have been dismissed as well.

Thus, the parties presently before the Court for the purpose of this Order are the Plaintiffs and Defendants Bridgestone/Firestone, Inc., Del Rio Test Center, Inc., and Ford Motor Company.

## STANDARD OF REVIEW FOR *FORUM NON CONVENIENS*

To obtain a dismissal under the doctrine of *forum non conveniens*, a party must demonstrate that there exists an available and adequate alternative forum for the lawsuit and that the balance of relevant private and public interest factors favors dismissal of the lawsuit. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003). An alternative forum is considered available if the entire case and all parties can come within its jurisdiction. *Id.* Moreover, an alternative forum is adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *Id.*

Once a court makes the threshold determination that an alternative forum for the case is both available and adequate, it turns to balancing relevant private and public interest factors to decide

whether dismissal of the case is appropriate. *See id.* at 672. Relevant private interest factors include: the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses; the possibility of viewing the premises, if such viewing would be appropriate to the action; and all other practical problems that make the trial of a case easy, expeditious, and inexpensive. *Id.* If consideration of these private interest factors counsels against dismissal, the court should turn to an evaluation of public interest factors. *See Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002). Relevant public interest factors include: administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *See Vasquez*, 325 F.3d at 673.

## DISCUSSION

In accordance with the recent guidance provided by the Fifth Circuit in *Vasquez* and *Gonzalez*, the Court first addresses the availability and adequacy of an alternative forum in this case. The Court will then turn its attention to the relevant private and public interest factors.

## I. Availability of Alternative Forum

In this case, the courts of Venezuela supply an available alternative forum to this Court. The Plaintiffs are all citizens of Venezuela and can obviously file suit in the courts of that country for an accident that occurred there. Furthermore, the Defendants have stipulated and represented to the Court that they will submit to the authority of any Venezuelan court having jurisdiction over this case. *See Veba-Chemie, A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983) (holding that

defendant's submission to jurisdiction of alternative forum renders that forum available for purposes of *forum non conveniens* analysis). Therefore, availability of an alternative forum does not preclude dismissal.

## II. Adequacy of Alternative Forum

The next step in the inquiry is whether the courts of Venezuela provide an adequate forum for the resolution of this dispute. As mentioned before, an alternative forum is deemed adequate if the parties would not be deprived of all remedies or treated unfairly in that forum, even if they might not enjoy the same benefits there that they might in a U.S. court. *See Vasquez*, 325 F.3d at 671. The Plaintiffs have not argued that the courts of Venezuela provide no remedy whatsoever for their causes of action against the Defendants. Assuming *arguendo* that Venezuelan law would severely cap any damages award in this case, or even that it would result in the entire lawsuit ceasing to be economically viable, the courts of Venezuela would still supply an adequate forum. *See id.* at 672; *Gonzalez*, 301 F.3d at 381.

## III. Private Interest Factors

Having satisfied the threshold inquiry regarding the availability and adequacy of an alternative forum in this case, the Court now turns its attention to the relevant private interest factors. First, any witnesses to the accident in this case are in Venezuela. Second, the vehicle at issue was purchased and maintained in Venezuela. Third, a court of appropriate jurisdiction in Venezuela could obtain compulsory process over unwilling witnesses, while this Court has no power to compel the attendance of Venezuelan citizens at a trial here. Fourth, it would be difficult and costly to obtain the attendance of willing witnesses from Venezuela. Fifth, all of the events leading up to the accident took place in Venezuela. Sixth, all of the reports dealing with the accident in this case are

in Spanish, and the process of translating them into English for trial here would be lengthy and expensive. For all of these reasons, the Court finds that the private interest factors favor dismissal. *Cf. Vasquez*, 325 F.3d at 672-73. Indeed, the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses as well as the cost of obtaining attendance of willing witnesses, the possibility of viewing the accident scene, if necessary, and all other practical considerations that would make the trial of the case easy, expeditious, and inexpensive, clearly point toward trial in Venezuela.

## IV. Public Interest Factors

Even if the private factors were to counsel against dismissal of this case, the Court is convinced that the relevant public interest factors clearly point toward trial in the alternative forum. First, the Court finds that this case would pose a substantial burden on the Pecos Division of the Western District of Texas. One need only peruse the Court's heavy criminal docket to appreciate the onus this lawsuit would pose in terms of time and resources. Also, jury duty in the case would exact an undue burden on the citizens who reside within the Pecos Division of the Western District of Texas.

Second, there is virtually no local interest in deciding this controversy because the Defendants' alleged actions have minimal, if any, relation to the Pecos Division. At the same time, the country of Venezuela has a great interest in regulating the quality of the products used by its citizens and in holding accountable the manufacturers of those products that allegedly cause injury within its borders. Moreover, any argument by the Plaintiffs that the wrongful acts in this case were the original design of the vehicle and the tire, "reaches too far back in the accident's causal chain." *Vasquez*, 325 F.3d at 674. The Court is not willing to ignore the fact that the products at issue in this

case were sold in Venezuela and allegedly failed in that country.

Third, the Court finds that Venezuelan law controls this dispute. A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *Id.* Texas' conflict-of-laws rule employs the "most significant relationship" test, which takes into consideration the place where the injury occurred, the place where the injury-causing conduct occurred, the parties' residence, and the place where the relationship between the parties, if any, is centered. *Id.* (footnote omitted). The aggregate of these factors favors application of Venezuelan law, even if the design of the vehicle and the tire at issue were characterized as the injury-causing conduct. As mentioned before, the Plaintiffs are residents of Venezuela, the accident and any subsequent investigation took place there, and the vehicle as well as the tire were purchased and maintained there. *See id.*

In addition, the "most significant relationship" test requires that these specific contacts be evaluated through the prism of policy considerations such as: (1) the needs of the interstate and international systems; (2) the relevant policies of the (current) forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Id.* (citation omitted). Without belaboring the point, the Court finds that there is little, if any, policy justification for applying Texas law in this case. *See id.* at 675.

Having found that Venezuela's law is better suited than Texas' law to govern this cause of action, the Court concludes that a court in Venezuela would be in the best position to apply the relevant substantive law. Indeed, a Venezuelan court would necessarily be more at home than this Court in a trial involving Venezuelan law. Dismissal of the case under *forum non conveniens* thus

serves the public interest inasmuch as it avoids any problems this Court might have in the application of foreign law. In sum, the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty all clearly point again toward trial in Venezuela.

## CONCLUSION

For the reasons given above, the Court is of the opinion that dismissal of this case under the doctrine of *forum non conveniens* is appropriate. Accordingly,

It is ORDERED that Firestone's Motion to Dismiss Based on *Forum Non Conveniens*, filed on behalf of Defendants Bridgestone/Firestone, Inc. and Del Rio Test Center, Inc., is hereby GRANTED.

It is FURTHER ORDERED that Defendant Ford Motor Company's Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* is hereby GRANTED.

It is FURTHER ORDERED that the above-numbered and -styled cause is hereby DISMISSED subject to the following additional Orders:

It is ORDERED that the above-named Defendants must agree to submit to jurisdiction and service of process in any Venezuelan court having jurisdiction under the applicable laws of the country of Venezuela. This Court will not designate which court is proper because that question is for the courts of Venezuela to decide.

It is FURTHER ORDERED that the Defendants must agree to pay any judgment rendered against them, or any of them, when required by the appropriate court in Venezuela.

It is FURTHER ORDERED that the Defendants must make witnesses and evidence available to the Plaintiffs in the appropriate Venezuelan court. The Defendants have obtained a dismissal in this Court under the doctrine of *forum non conveniens* upon an explicit representation to this Court that all necessary proof, evidence, and witnesses are available in Venezuela, and the Defendants shall be held to that representation. All evidence obtained through discovery in this Court, as well as all evidence obtained through discovery conducted in related Multi-District Litigation proceedings, if any, shall be made available and shall be admissible to the extent permitted under the applicable Venezuelan court's procedural rules.

It is FURTHER ORDERED that, in the event that the appropriate court or courts of Venezuela fail or refuse to grant access to either the Plaintiffs or the Defendants, the parties may return to this jurisdiction for further proceedings.

It is FURTHER ORDERED that the Defendants are precluded from pleading statute of limitations or any jurisdictional bar in the courts of Venezuela. This Court will not permit either party to delay the proceedings in this case in order to invoke a statute of limitations or other jurisdictional bar through dilatory tactics.

It is FINALLY ORDERED that all pending motions in this case are DISMISSED AS MOOT, with the parties to bear their own costs.

SO ORDERED this 22 day of September, 2003.

ROBERT JUNELL
UNITED STATES DISTRICT JUDGE



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 2 2 2003

CLERK, U.S. DISTRICT COURT
By _____ Deputy

MARIA AIDE GARCIA ZAMUDIO,        §
ET AL.,                           §
                                  §
        Plaintiffs,               §
                                  §
VS.                               §   NO. 4:02-CV-929-A
                                  §
GENERAL MOTORS CORPORATION,       §
ET AL.,                           §
                                  §
        Defendants.               §

## ORDER

Came on for consideration the motion of defendants Michelin
North America, Inc., Michelin America's Research Corporation,
Michelin Tire Corporation, and Uniroyal Goodrich Tire Company
("Michelin defendants") to dismiss on forum non conveniens
grounds. Plaintiffs, Maria Aide Garcia Zamudio, individually and
as representative of the Estate of Salvador Munguia Gonzalez,
Deceased, and for and on behalf of all those entitled to recover
for his death under the Texas Wrongful Death Act, the Texas
Survival Act, and as Next Friend of Andrea Munguia Garcia and
Salvador Munguia Garcia, minors, Montserrat Melania Munguia
Garcia, Melania Gonzalez, Fernando Orihuela Carmona, and Luis
Miguel Orihuela Estefan, have failed to respond to the motion,
which is ripe for ruling. The court, having considered the
motion, the record, and applicable authorities, finds that the
motion should be granted. As the Michelin defendants have shown,

EXHIBIT
8

all of the facts giving rise to plaintiffs' claims in this action occurred in Mexico. Thus, Mexico has the most significant relationship with plaintiffs' claims. <u>Vasquez v. Bridgestone/Firestone, Inc.</u>, 325 F.3d 665, 674 (5th Cir. 2003). The Michelin defendants have agreed to submit to jurisdiction in Mexico, making it an available alternative forum. <u>Veba-Chemie A.G. v. M/V Getafix</u>, 711 F.2d 1243, 1245 (5th Cir. 1983). And, Mexico is an adequate alternative forum. <u>Gonzalez v. Chrysler Corp.</u>, 301 F.3d 377 (5th Cir. 2002). Both the private and public factors weigh strongly in favor of Mexico as the proper forum for this action. <u>Gulf Oil. Corp. v. Gilbert</u>, 330 U.S. 501, 508 (1947). Accordingly,

The court ORDERS that the Michelin defendants' motion to dismiss be, and is hereby, granted, and that plaintiffs' claims against the Michelin defendants be, and are hereby, dismissed on forum <u>non conveniens</u> grounds so that they may be pursued in Mexico.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of plaintiffs' claims against the Michelin defendants.

SIGNED August 22, 2003.

JOHN McBRYDE
United States District Judge

2

## DECLARATION OF PROFESSOR JOSE M. SERNA DE LA GARZA CONCERNING THE LAWS OF COAHUILA, MEXICO

**I.    Introduction**

My name is Jose Maria Serna de la Garza, a Mexican citizen, born in Acapulco, State of Guerrero, Mexico, on March 27, 1965. I am over the age of 18, have never been convicted of a crime and am competent to make this declaration. The factual statements in this declaration are based on my personal knowledge, except as otherwise stated, and are true and correct.   My address is:

Julio Garcia 12, Circ. Juristas
Cd. Satelite, Estado de Mexico,
CP 53100, Mexico

Attached hereto as Exhibit "A" is a true and correct copy of my current curriculum vitae, which reflects my professional affiliations, experience and publications.

I have been retained by attorneys representing Bridgestone/Firestone, Inc. to draft a Declaration regarding the following issues:

(a)    whether the plaintiffs in this case can sue an American corporation in Mexican courts;

(b)    whether the laws of the Republic of Mexico provide the plaintiffs a cause of action that encompasses the allegations made in this case;

(c)    whether the laws of the Republic of Mexico allow the plaintiffs to recover monetary compensation for injuries sustained.

(d)    whether Mexican courts allow the introduction of discovery obtained in a foreign country.

In preparing this declaration, I reviewed the Plaintiffs' Amended Complaint. I also reviewed primary and secondary sources of Mexican law.



Based on the claims set forth in the Plaintiffs' Amended Complaint, I have made the following conclusions:

A.    The law of the State of Coahuila is applicable to this case under the *Lex Loci Delicti* principle.

B.    The Plaintiffs in this case can bring a lawsuit in the courts of Coahuila against American defendants.

C.    The Civil Code of Coahuila provides two causes of action to plaintiffs: one corresponds to the notion of "civil liability" found in article 1851 (fault/negligence based liability); and the other to the concept of "strict liability" found in article 1879 (non-fault/negligence liability). The 1879 action is available only against the "user" of the vehicle-i.e., the driver.

D.    The Civil Code of Coahuila and the Federal Labor Act allow plaintiffs to recover material and moral damages.

E.    Coahuila's courts permit judges to receive both, foreign public documents and foreign private documents as evidence in a trial.

## II.    Structure of Mexican Law

A.    General Structure

Mexico is a federation, and, like the United States, each Mexican state has its own codes and laws with respect to matters not expressly declared federal by the Federal Constitution. Tort law, which is part of the Civil Codes of Mexico, is a matter of state law, except in specific federal cases. Labor law, however, which might be relevant for the calculation of damages, is a matter of federal law.

B.    The *Lex Loci Delicti* Principle

In Mexico, the laws of the state where the accident occurred govern the case i.e., the *lex loci delicti* rule applies. This rule is derived from the territoriality principle, which is followed by all the Civil Codes of the Mexican States. In the state of Coahuila, the *lex loci delicti*

2

principle can be derived from articles 2 and 17 of the Civil Code. Article 2 states, "the laws of the State [of Coahuila] are applicable to all the inhabitants of the State, without making any distinction of gender and nationality, notwithstanding the fact that they have their domiciles in the State or that they are in transit." Article 17 further states, "real and personal property located in the State [of Coahuila] shall be governed by the rules of this Code, even when the owners have their domiciles outside the State."

### C. Conclusion

The applicable tort laws in the present case are in the Civil Code of the State of Coahuila (the state where the present accident occurred), and, as we shall discuss, the applicable compensation laws are in the Federal Labor Act. The text of the Coahuila Civil Code coincides with that of the Civil Code for Federal District and with the civil codes of other Mexican states; thus, federal case law on torts might also provide criteria for the interpretation of Coahuila's tort rules.

### III. Mexican Tort and Products Liability Law

#### A. Products Liability

The notion of "strict products liability" has had a limited development in the Mexican legal system. There is no case law on the subject, and legislatures have been reluctant in introducing statutes on this matter. Coahuila's tort law, however, provides two causes of action that encompass the allegations made in this case.

#### B. Article 1851 Actions

##### 1. Generally

3

Under article 1851, "He who causes damage by behaving in an illicit way, has to repair such damage, except if he proves that the damage was produced as a consequence of the fault or inexcusable negligence of the victim."

2.    Illicit Defined

Article 1806 defines illicit as an act, positive or negative, performed with fault or negligence that causes damage to another, personally or to his property. Fault is defined as intent to cause damage. Negligence is defined as imprudence, lack of expertise, lack of prevision and care. Whether an act is negligent will be evaluated under the circumstances of the case. In sum, defendants, in tort cases, are responsible for the harmful consequences of their behavior, if the plaintiff proves that the defendant intentionally produced harm or failed to conduct himself with the proper degree of care and precaution normally expected under the circumstances.

3.    Causation

Additionally, the plaintiff must prove a causal relation between the defendant's behavior and the harm that was produced. Coahuila's Civil Code does not provide a specific definition of causation in tort law. However, courts have applied, by analogy, a provision that defines causation in the context of contract law. Specifically, article 2306 of the Coahuila Civil Code uses the definition provided by article 2110 of the Federal District's Civil Code, which states, "[d]amages and losses must be a direct and immediate consequence of the failure to comply with the obligation, whether they have already occurred or will necessarily occur."

4.    Burden of Proof

The burden of proving harm, causation and negligence in an article 1851 action is on the plaintiff.

4

5.    Defenses to 1851 Actions

Defenses to an article 1851 action include:

(a)    failure by the plaintiff to show fault on the part of the defendant;

(b)    a showing by the defendant that the plaintiff was "inexcusably" negligent;

(c)    failure by the plaintiff to show causation between the defendant's behavior and the injury;

(d)    acts of God;

(e)    where the action is brought more than one year from the moment the injury occurred (*see* article 1898).

6.    "Inexcusable Negligence"

Article 1851 of the Coahuila Civil Code states that the defendant is not liable when the plaintiff was also at fault or was inexcusably negligent. Federal case law states that not all negligence reaches the level of "inexcusable" negligence; it is up to the Mexican judges to decide this question on a case by case basis.

C.    Article 1879 Actions

Article 1879 of the Coahuila Civil Code also recognizes strict liability (no-fault responsibility) on the part of the *user* of dangerous items and substances. Specifically, article 1879 states that when a person makes use, either as owner, or as an original or derivative possessor, of mechanical devices, objects, substances, mechanisms, instruments or items which are dangerous per se, for instance on account of the speed they develop, their toxic explosive or flammable nature, the energy of the electrical current that they conduct, or other analogous causes, he is responsible for the damage such objects or substances may cause, even if there is no negligence or fault on his part. In an article 1879 action, it must first be determined if the

5

things or substances qualify as those explicitly mentioned by said article, or as analogous causes. Then the defendant has the burden of proving that they did not actually cause the damages. One exception is where the user of such items and substances proves that such damage has been produced by the fault or inexcusable negligence of the victim, or by fault or negligence of a third-party (*see* Article 1880 of the Coahuila Civil Code).

The application of this strict liability article is limited to users (e.g., drivers of automobiles) who are owners or possessors of inherently dangerous things. Therefore, article 1879's strict liability principle does not apply to the manufacturer, the designer or even the seller of certain products (e.g., a car). Rather, liability under this article applies only to the <u>user</u> of objects, techniques or substances that are inherently or potentially dangerous, such as the ones mentioned by article 1879 of the Civil Code of Coahuila.

**IV.**    **Mexico's Compensation System**

A.    Generally

The Civil Code of Coahuila provides that the plaintiff can choose between the reparation of damages (i.e., reestablishing the status quo), whenever that is possible, or the payment of compensation. If the plaintiff selects the second option, he or she is entitled to "material" and "moral" damages.

In determining the appropriate measure of damages, one important principle should be kept in mind: the Supreme Court of Mexico has recognized that the measure of damages for the family of a deceased individual cannot be proven in every case. According to the high court, asking the relatives of the victim to prove the measure of damages they have suffered would be impossible and would amount to leaving them without protection which goes against the goals of the law and the legislature. This difficulty has been overcome by the legislature, which has established a method for calculating the amount of compensation.

6

B.      Material Damages

When damage is caused to persons, producing death, or total or partial permanent disability, the measure of damages consist of (*see* article 1890):

> (a)     funeral expenses (in cases of death);
>
> (b)     all expenses incurred into in order to cure the victim from the injuries that eventually led to his death or permanent disability (the persons who can claim these and funeral expenses are the ones who can show that they made them, *see* article 1893); and
>
> (c)     a monetary compensation calculated according to the rules of the Federal Labor Act.[1]

1.      Federal Labor Act--Article 487:  General Damages

Article 487 of the Federal Labor Act allows for the recovery of:

(a)     Medical and surgical assistance

(b)     Rehabilitation

(c)     Hospitalization, if needed

(d)     Medicines and medical materials

(e)     Devices of prosthesis and orthopedic items

(f)     The damages in Title  IX of the FLA (as listed below).

2.      Federal Labor Act—Articles 500 and 502:  Death Cases

---

[1] The Federal Labor Act (FLA) gives workers a cause of action against their employer for accidents and illnesses that occurred during the scope of their employment. These rules also apply to tort cases to determine the compensation that can be claimed by plaintiffs. Therefore, terms "employer" and "employee" are analogous to "tortfeasor" and "plaintiff" in tort cases.

7

In cases of death, the compensation shall correspond to the persons who were economically dependent on the victim. If no person depended economically on the victim, the compensation shall correspond to the persons which whom the victim lived as a family or the persons on which the victim was economically dependent. If no such persons exist, then the compensation shall correspond to the victim's legitimate heirs (*see* article 1893, of the Coahuila's Civil Code).

In cases involving death, the said plaintiff(s) are entitled to claim an amount equal to 730 days of the worker's salary, plus two months of salary for funeral expenses. Note that article 1891 of Coahuila's Civil Code stipulates that in tort cases, the "worker's salary" means the highest daily minimum salary valid in the region where the accident occurred, multiplied by four.[2]

The compensation credits in favor of the victim (or of the persons who depended economically on him; or of his heirs), shall be paid in one payment, unless the parties agree otherwise under the supervision of the judge (*see* article 1894).

3.   Federal Labor Act—Article 480: Total Permanent Disability Cases

These cases involve loss of abilities or aptitudes that make it impossible for the injured person to perform any job for the rest of his (her) life. In cases of total permanent disability, the plaintiff is entitled to 1,095 days of the plaintiff's daily salary (*see*, article 495 of the FLA). Again, article 1891 of Coahuila's Civil Code stipulates that the "worker's salary" means the highest minimum salary valid in the region where the accident occurred, multiplied by four.

4.   Federal Labor Act—Article 492: Partial Permanent Disability Cases

---

[2] For the purposes of minimum salaries, Mexico is divided into economic regions. Each region has a daily minimum salary.

These cases involve injuries that result in a decrease to the injured person's ability to work (*see* Article 479). Article 514 of the Federal Labor Act lists a "Table for the Valuation of Permanent Disabilities," which lists 409 different kinds of permanent disabilities. The table also provides the minimum and maximum compensation for each of the 409 permanent disabilities. The proper measure of compensation is computed as a function of damages recoverable in cases involving *total* permanent disability. In determining the proper measure of damages in a partial permanent disability case, the following circumstances are taken into account: the age of the workman, the importance of his disability, the major or minor potentiality to dedicate himself to remunerated activities, similar to the ones that have corresponded to his profession or specialty.

Further, article 493 of the FLA states that if the partial disability consists of the absolute loss of the possibility and aptitude of the victim to dedicate himself to his usual profession, the Labor Board may increase the compensation up to the amount for permanent total disability, taking into consideration the importance of the profession and the possibility that the victim would dedicate himself to an activity of a similar kind, which may produce a similar income.

Article 1888 compliments the damages awarded by the FLA in "partial permanent disability cases." First, if the harm consists of injuries that did not produce death nor permanent disability to work the reparation of damage shall consist of expenses for medical assistance, medicines, hospitalization and all other expenses that are necessary to cure the victim. Moreover, this article states that the compensation for "losses" shall consist of an amount equivalent to the salary that the victim stops earning for his work, during the time between the production of the injury and the moment in which he can return to work. Article 1889 further states that in these cases, if there is no fix earning of the victim, the compensation shall be calculated by experts,

9

taking into account the abilities, capabilities and average productive capacity of the victim in relation to his job, skill or profession. Finally, if the experts do not have enough elements to produce an opinion, or if the victim neither earns a salary nor performs a productive activity, the compensation shall be calculated on the basis of the highest minimum salary valid in the region where and when the accident occurred (*see* article 1889).

C.    Moral Damages

The Civil Code for State of Coahuila also recognizes the right to seek compensation for "moral damages" (*see* Article 1895). Moral damages protect a person's "moral patrimony". The first paragraph of article 1895 provides the list of what is to be considered as elements of the "moral patrimony": a person's feelings, affections, beliefs, honor, reputation, private life, physical aspect, or the opinion that others have about him. This is an exhaustive list that admits no other notion (such as the American concepts of "grief", "pain", "suffering" and "loss of companionship").

The burden of establishing the existence of any moral damages is on the plaintiff. Note, however, that Article 1895 of the Coahuila Civil Code establishes a presumption of moral damages when the physical or psychological integrity of a person has been violated or harmed.

It is also important to notice that the Civil Code of Coahuila establishes a limitation in connection with the possibility of claiming moral damages in cases in which the victim has died. In this way, the fourth paragraph of article 1895 states that the action to recover moral damages "...shall be transmitted to the victim's heirs, only when the victim brought himself the corresponding action when he was alive."

10

Finally, article 1895 of the Coahuila Civil Code states that the amount of "moral damages" is determined by the judge. In making his or her determination, the judge must take into account: (a) the rights that were damaged, (b) the degree of responsibility, (c) the economic situation of the tortfeasor and plaintiff; and (d) all the other circumstances of the case.

      D.    Punitive Damages

There are no punitive damages in Mexican law. The notion of punitive damages is repugnant to two important doctrines in the civil law: one is the sharp separation between the purpose of the criminal law, which is punitive, and the purpose of private law, which is to restore the situation to its fair balance, i.e., the status quo ante. The second doctrine is that of unjust enrichment. In the civil law systems such as that of the Republic of Mexico, an unjust enrichment, or windfall, is considered as much of an injustice as an unjust loss. Since the plaintiff who is awarded punitive damages experiences an unjust enrichment by definition under Mexican law, such punitive damages are not permitted.

**V.**    **Jurisdiction**

Tort claims are heard by the courts of the state in which the harm occurred. The courts of the state of Coahuila, therefore, would have jurisdiction over the present case. In addition, article 27 of Coahuila's Code of Civil Procedure allows the parties to a dispute to subject themselves to the jurisdiction of a specific judge of the State of Coahuila.

Moreover, according to the Mexican Supreme Court, a foreign corporation has a Mexican domicile, if it has a branch in Mexico. The Mexican Supreme Court has clearly stated that: "...if a foreign corporation has a branch in Mexico, this is enough to provide jurisdiction ("competence") to Mexico's courts. . . . [T]his doctrine is in accord with the necessity that each country has to administer justice in its own territory [and] resolving those conflicts that arise within it. . ." (See Semanario Judicial de la Federación, Quinta Epoca: Tomo XXVIII, Pagina

1573. Mexican Petroleum Co.). In addition, the Supreme Court of Mexico has ruled that if the claim that is brought corresponds to a personal action, "the judge of the place where the branch is located is the competent judge to hear the respective case." (See Semanario Judicial de la Federación, Pleno, Sexta Epoca, Tomo CXVII, Primera parte, página 64. Competencia 105/66. Daniel Monárrez Cabrera. 14 de marzo de 1967. Unanimidad de 17 votos. Ponente: José Castro Estrada).

Furthermore, the Supreme Court has also ruled that the legal domicile of a company is "... the place in which it has established branches or agencies, whenever the risk is produced where the latter develop their activities, even when according to their by-laws they have their legal domicile in a different place and without considering the place in which they have their administration." (See Semanario Judicial de la Federación, Tercera Sala, Octava Epoca, Vol. III, Primera Parte, Tesis 3ª./J. 27 10/89, página 396 ).

This rule concerning the domicile of foreign corporations is consistent with the doctrine recently developed by the First Collegial Civil Court of the Second Circuit in a divorce case, by which it refused to apply an express rule on jurisdiction established in the Code of Civil Procedure of the State of Mexico (article 51-XIII), which states that the court of the domicile of the "abandoned spouse" is the court with jurisdiction to hear a divorce claim. In that case, the "abandoned spouse" had her domicile outside Mexico. Yet, the court refused to apply article 51-XIII because its application entailed that Mexican courts would waive their jurisdiction in favor of a foreign court. In its decision, the court ruled that the prescription of article 51-XIII of the Code of Civil Procedure of the State of Mexico, "rules and produces its effects only when the question of jurisdiction emerges between courts that exercise their jurisdiction within the national territory, but not when the conflict arose between a Mexican and a foreign court, because that would imply, from the Mexican perspective, a waiver of Mexican courts' jurisdiction and, therefore, of their sovereignty, as well as the denial of justice to citizens." (See Semanario Judicial de la Federación, Primer Tribunal Colegiado en Materia Civil del Segundo Circuito, Novena Epoca, Tomo XVI, Octubre de 2002. Tesis: II.1º.C., Página 1346, Materia Civil.)

12

A Mexican court can exercise jurisdiction over a non-Mexican defendant. In fact, the whole point of the international instruments on procedural cooperation (some of them are mentioned below) that have been signed and ratified by Mexico is to make it possible for a Mexican court to serve the summons, make notifications, take evidence, and enforce judgments abroad.

## VI.    Discovery

There is no "discovery" in Mexico, as understood in the American legal system. Yet, most Codes of Civil Procedure of the Mexican States provide for "preliminary measures" (e.g. depositions, interrogatories) that can be ordered by the judge who is hearing the case, whenever a party lacks a document on which the claim is based because it is in possession of the future defendant or of a third party. Moreover, discovery in this case would be governed by two international instruments signed and ratified by Mexico: the Hague Convention on the taking of evidence abroad in civil or commercial matters (concluded March 18, 1970); and the Inter-American Convention on the taking of evidence abroad (ratified by Mexico on March 27, 1978).

Mexican courts, and specifically the courts of Coahuila, can examine documents produced in a foreign country in the process of making their minds in order to decide a case. First of all, it has to be noticed that Mexico's legal tradition allows judges broader powers to conduct the litigation process. That is why article 424 of the Code of Civil Procedure of Coahuila states that the judge can order the examination of all evidence that he considers appropriate to know the facts under discussion. Moreover, article 435 recognizes the possibility of offering as evidence documents located outside of Mexico (in which case the party that offers the evidence

13

must indicate the public or private archives where the documents can be found). In addition, article 455 of said Code establishes as a wide-open principle the admissibility of all kind of documents, public or private, that may help the judge to make his decision.

The distinction between public and private documents is important, because there are rules that govern their validity as evidence in Coahuila's litigation process. Article 456 of Coahuila's Code of Civil Procedure indicates that to give foreign "public documents " full-faith and credit in Mexico, they will have to fulfil the requirements established in the Federal Code of Civil Procedure. Article 546 of the Federal Code of Civil Procedure, stipulates that to give "foreign public documents" full-faith and credit in Mexico, they will have to be "legalized" (certified) by Mexican consular authorities. Only those "foreign public documents" that are transmitted to Mexico through official channels do not require such "legalization". Yet, this "legalization" requirement came to an end when Mexico signed in 1995 the "Hague Convention that eliminates the requirement of legalization of foreign public documents" (The Hague, October 5, 1961). Thanks to this Convention, to give full faith and credit to "foreign public documents" in Mexico, what is requires is to get an "Apostille" issued on the respective document.

The Apostille is a form of certification that certifies the authenticity of the signature, the capacity in which the person signing the document has acted and identifies the seal/stamp which the document bears. Under the Hague Convention of 1961, each State may designate those authorities which may issue Appostilles for their jurisdiction. For example, in Texas, the Secretary of State of Texas may issue an Apostille on documents issued by persons on file with this agency, including county clerks, notaries public, statewide officials. Moreover, the

14

competent authority in the USA for issuance of Apostilles on documents issued by the federal government are the clerks of the federal courts. Finally, under the Hague Convention of 1961, the "public documents" that need an Apostille are: a. Those originating in a court, clerk of a court, public prosecutor or process server; b. Administrative documents; c. Notarial acts; d. official certificates placed on documents.

As for foreign private documents, article 457 of the Code of Civil Procedure of Coahuila, states that they shall be considered as authentic only after the authenticity of the signature has been certified by those public officials that have the power to make that certification.

If we consider "foreign private documents" in the light of said article 2457 we have to get to the following conclusion: to have validity as evidence in Coahuila's courts, the authenticity of these documents would have to be certified by the public official who has the power to do so in the foreign country, say the USA, and in turn, such certification would have to get the "Apostille", following article 1-d) of the Hague Convention of 1961, according to which "public documents" subject to said Convention are: "d) official certificates placed on private documents, such as certificates of registration; certification of the date and certification of signatures".

## VII. Conclusions

A. The law of the State of Coahuila is applicable to this case under the *Lex Loci Delicti* principle.

B. The Plaintiffs in this case can bring a lawsuit in the courts of Coahuila against American defendants.

C. The Civil Code of Coahuila provides two causes of action to plaintiffs: one corresponds to the notion of "civil liability" found in article 1851 (fault/negligence based liability); and the other to the concept of "strict liability" found in article 1879 (non-fault/negligence liability). The 1879 action is available only against the "user" of the vehicle-i.e., the driver.

15

D.    The Civil Code of Coahuila and the Federal Labor Act allow plaintiffs to recover material and moral damages.

E.    Coahuila's courts permit judges to receive both, foreign public documents and foreign private documents as evidence in a trial.

Pursuant to 28 U.S.C.s. 1746, I declare under the penalty of perjury that the foregoing is true and correct.

JOSE M. SERNA DE LA GARZA
May 30, 2003.

16

Exhibit "A"

## CURRICULUM VITAE

Name: José María Serna de la Garza

Place and date of birth: Acapulco, State of Guerrero, México, March 27, 1965

Address: Calle Goya No. 64, Casa 20, Col. Insurgentes Mixcoac,
Del. Benito Juárez, México, D.F., C.P. 03920, MEXICO (Home)

Instituto de Investigaciones Jurídicas (UNAM)
Cto. Mtro. Mario de la Cueva, Cd. Universitaria,
Coyoacán, México, D.F., C.P. 04510 MEXICO(Office)

Tel. (52-55) 56 98 16 47 (Home)
(52-55) 56 22 74 68/69, ext. 413 (Office)

Fax. (52-55) 56 65 21 93

Email: josemar@servidor.unam.mx

Current professional activity: Full-time researcher at the *Instituto de Investigaciones Jurídicas* of the National University of México (UNAM).

## I.- Academic background:

a) BA in Law ("*Licenciatura en Derecho*"), School of Law of the UNAM (*Universidad Nacional Autónoma de México*), 1983-1988.

b) MA in Latin American Politics and Government, University of Essex (England), 1990-1991.

c) PhD in Government, University of Essex, 1991-1995.

## II.- Published works:

### a) Books:

- *Derecho Parlamentario*, within the collective work: "Panorama del Derecho Mexicano", McGraw-Hill, Serie Jurídica, UNAM, México, 1997.

- *La Reforma del Estado en América Latina: los casos de Brasil, Argentina y México*, UNAM, México, 1998.

- *El gobierno en América Latina: ¿presidencialismo o parlamentarismo?*, (coordinador) UNAM, México, 2000.

- *Federalismo y regionalismo, Memoria del VII Congreso Iberoamericano de Derecho Constitucional*, (compilador), UNAM, México, 2002.

- *Estado de Derecho y transición jurídica* (co-editor), UNAM, México, 2002.

**b) Articles:**

- "El Sistema Presidencial en la Evolución Política de México", *Revista Jurídica Jaliciense*, Año 1, Número 1, Sept-Dic, 1991.

- "El Servicio civil de carrera: un elemento de la posible reforma del Estado", *Revista de la Universidad Nacional Autónoma de México*, Julio-Agosto, 1995, Núms. 534-535.

- "Constitutional Federalism in Latin America", *California Western International Law Journal*, vol. 30, no. 2, spring, 2000.

- "Transiciones en América Latina: reflexiones sobre la reforma político-institucional en Brasil y Argentina", en González, Ma. del Refugio y López Ayllón, Sergio (eds.), *Transiciones y diseños institucionales*, UNAM, México, 2000.

- "Reflexiones en torno a las resoluciones del Tribunal Electoral del Poder Judicial de la Federación, relativas a los casos Tabasco y Yucatán", *Boletín Mexicano de Derecho Comparado*, año XXXIV, no. 100, enero-abril, 2001.

- "Federalismo y sistemas de distribución de competencias legislativas", Documento de Trabajo del Instituto de Investigaciones Jurídicas de la UNAM, no. 12, abril de 2001.

- "Los aspectos constitucionales de una posible reforma del federalismo fiscal mexicano", en Valadés, Diego y Gutiérrez, Rodrigo (coords.), *Economía y Constitución, Memoria del IV Congreso Nacional de Derecho Constitucional*, tomo IV, UNAM, México, 2001.

- "Federalismo judicial: revisión crítica de los distintos argumentos del debate sobre el amparo casación en México", Documento de Trabajo del Instituto de Investigaciones Jurídicas de la UNAM, no. 26, junio de 2002.

- "Federalismo y sistemas de distribución de competencias legislativas" en la obra colectiva editada por Serna, José María y Caballero, José Antonio, *Estado de Derecho y transición jurídica* (editor), UNAM, México, 2002.

- "Apuntes sobre el debate relativo al amparo casación en México", *Reforma Judicial, Revista Mexicana de Justicia*, no. 1, ene-junio, 2003.

- "Apuntes sobre las opciones de cambio en la metodología de la enseñanza del derecho en México, Documento de Trabajo del Instituto de Investigaciones Jurídicas de la UNAM, no. 35, abril de 2003.

**III.- Lectures:**

a) Lecture on: Current Developments in South America, Cranfield Institute of Technology (England), October 23, 1992.

b) Lecture at the *Centro de Estudios Superiores Navales*. Title of the Lecture: Proyecto Nacional: Determinación de Intereses, Objetivos y Políticas Nacionales, México, March 23, 1995.

c) Lecture at the Mexican Center del *Institute of Latin American Studies,* University of Texas at Austin. Title of the lecture: "El Debate sobre la Reforma Institucional en México", October 3, 1995.

d) Lecture at the "Ier. Encuentro Internacional sobre Protección Jurídica de los Derechos Ciudadanos". Title of the lecture: Legislación agraria y Derechos Ciudadanos, La Habana, Cuba, November 9, 1995.

**IV.- Teaching Experience:**

a) In charge of the following courses organized by the *Instituto de Investigaciones Jurídicas* of the UNAM: Constitutional theory, Comparative constitutional law, and comparative government.

b) Visiting professor at the Law School of the University of Texas at Austin. Courses: Introduction to Mexican Law and Latin American law (Survey), 1997-2001.

**V.- Academic awards:**

- C.B. Smith Scholarship, awarded by the *Mexican Center* of the *Institute of Latin American Studies*, University of Texas at Austin, September 23-October 4, 1995.

**VI.- Others:**

- Director of the legal review: *Boletín Mexicano de Derecho Comparado*, published by the Instituto de Investigaciones Jurídicas of the UNAM (since 2000).