United States District Court
Southern District of Texas
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUN 1 5 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ELLENA PATRICIA ARIZPE, Individually and | § | |
| MONZERAT SUAREZ, Individually | § | |
| *Plaintiffs,* | § | |
| vs. | § | CIVIL ACTION NO.: B-04-037 |
| | § | JURY |
| FORD MOTOR COMPANY | § | |
| *Defendant.* | § | |

---

## FORD MOTOR COMPANY'S MOTION TO APPLY THE LAWS OF MEXICO AND BRIEF IN SUPPORT OF SAME

---

In the event that this case remains in this forum, defendant Ford Motor Company ("Ford") requests that the plaintiffs' claims be governed by and decided under the substantive law of Mexico. Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, Ford asks this Court to make a determination of the laws of Mexico and apply same to this case. Ford provides evidence of the law of Mexico in the form of the attached Declaration of Professor Jose M. Serna De La Garza Concerning the Laws of Coahuila, Mexico. *See* Declaration attached hereto as **Exhibit "1"**. In support of this Motion, Ford relies upon that Declaration, the exhibits to that Declaration, and the proof previously filed with its "Brief in Support of Ford Motor Company's Motion to Dismiss for *Forum Non Conveniens*" filed contemporaneously with this Motion.

### I. INTRODUCTION

This is a diversity action. A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *See Vasquez v. Bridgestone/Firestone*, 325 F.3rd 665, 674 (5th Cir.). Texas has adopted the "most significant relationship" test of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971)(the "RESTATEMENT"). Under that test, the claims in this case should be governed by the law of Mexico.

The facts giving rise to this cause of action lack any relationship to Texas. Comparatively, this case has an overwhelming factual relationship to Mexico. To that end:

(1)     The plaintiffs are Mexican citizens;

(2)     The accident made the basis of this lawsuit occurred on a Mexican highway;

(3)     The vehicle was purportedly owned by Mexican residents;

(4)     The vehicle was purportedly registered in Mexico;

(5)     The principle case specific witnesses and evidence in this action are located in Mexico, and the witnesses are beyond the subpoena powers of this Court;

(6)     The accident was investigated by Mexican authorities;

(7)     The injured passenger and driver were purportedly treated by Mexican medical providers; and

(8)     Defendant Ford is a Delaware corporation with its principal place of business in Michigan.

The factors set forth above are more than sufficient to support this motion. The laws of Mexico should govern the claims in this case.

## II. ARGUMENT AND AUTHORITIES

Texas has adopted the "most significant relationship" approach of the RESTATEMENT to decided choice-of-law issues. *See Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979), *see also Torrington v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2001). Under this standard, the plaintiffs' claims should be decided under the substantive law of the jurisdiction with the "most significant relationship" to the occurrence and the parties related to that issue. The RESTATEMENT lists several factors to consider in making that determination:

(1)     The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2)    Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

    (a)    the place where the injury occurred;
    (b)    the place where the conduct causing the injury occurred;
    (c)    the domicile, residence, nationality, place of incorporation and place of business of the parties; and
    (d)    the place where the relationship , if any, of the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT § 145 (1971). The RESTATEMENT's approach, and the factors listed therein, demonstrate that it is Mexico -- not Texas -- that has the most significant relationship to the claims and issues in this case.

**A.    The factual considerations of RESTATEMENT § 145 point to Mexican law.**

It is readily apparent that in this case the factual contacts the RESTATEMENT lists for consideration overwhelmingly point to Mexico. It is equally apparent that none of them point to Texas.

**1.    The injuries occurred in Mexico.**

The accident at issue here, and all resulting injuries, occurred entirely in Mexico. This is a starting point of great importance. Texas courts have recognized that the RESTATEMENT normally places significant weight on the place where the injury occurred. *See Torrington v. Stutzman*, 46 S.W.3d at 848; *see also CPS Int'l, Inc. v. Dresser Indust.., Inc.*, 911 S.W.2d 18, 29 (Tex.App. – El Paso 1995, writ denied); *Trailways, Inc. v. Clark*, 794 S.W.2d 479, 485 (Tex.App. – Corpus Christi 1990, writ denied). The recent development of the law which holds that the location of the injury is no longer the *only* fact that matters has hardly made that fact irrelevant. As Judge Posner has observed, even under the more flexible choice-of-law approach described in the RESTATEMENT, the location of the plaintiff's injury is still "in the absence of unusual

3

circumstances, the highest scorer on the 'most significant relationship test'." *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844 (7th Cir. 1999). This makes good sense:

> [f]or that is the place that has the greatest interest in striking a reasonable balance among safety, cost, and other factors pertinent to the design and administration of a system of tort law. . . . [T]he law of the place of the accident can be expected to reflect the values and preferences of the people most likely to be involved in accidents -- can be expected, in other words, to be responsive and responsible law, law that internalizes the costs and benefits of the people affected by it.

*Id.* at 845.

The importance of the location of the injury is echoed in the RESTATEMENT. In fact, in a personal injury case, the RESTATEMENT maintains that the location of the injury is *dispositive* in deciding the choice-of-law unless there is some good reason why it should not be:

> [i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

RESTATEMENT § 146, Personal Injuries. *See also* § 145 cmt. f ("[The place of injury is of particular importance in the case of personal injuries and of injuries to tangible things."). Indeed, this is a consistent theme throughout the RESTATEMENT. The appropriate law "will usually be the local law of the state where the injury occurred" to decide the following: whether the defendant's conduct was tortious, § 156(2); the standard of care, § 157(2); the interests entitled to legal protection, § 158(2); whether the actor owed a duty that was violated, § 159(2); legal cause, § 160(2); right of action for death, §175; and the measure of damages in a claim for wrongful death, § 178.

Here, the accident and all resulting injuries occurred in Mexico. As a result, there is no reason to apply the law of any other jurisdiction in deciding the outcome of this lawsuit.

**2.     The conduct allegedly causing the injuries did not occur in Texas.**

The plaintiffs contend that this accident was caused by defects in a vehicle that was designed in Michigan.  Plaintiffs have not pleaded any facts that demonstrate anything related to this vehicle or this accident occurred in the <u>State of Texas</u>.  *See* Plaintiffs' Original Petition.

The plaintiffs have no legitimate basis on which to insist that this Court consider only what they maintain was the cause this accident.  In that vein, Ford contends that it was not caused by a defective product at all, but rather by driver error, improper maintenance and repair, dangerous road conditions, among other factors.  Ford is entitled to have its contentions on the cause of this accident taken just as seriously, treated with just as much dignity, and given just as much weight as the contentions asserted by the plaintiffs.  Mexico has the "most significant relationship" with the defensive allegations advanced by Ford.

The Fifth Circuit recognized this point in a recent decision concluding, under Texas choice-of-law rules, that Mexican law should govern the claims of Mexican plaintiffs suing for the deaths of Mexican nationals in a vehicular accident in Mexico that was allegedly caused by a defective tire and vehicle designed in the United States.  *See Vasquez*, 325 F.3d.  *Vasquez* is instructive.  In that case, the plaintiffs could not require the court to ignore everything that happened in Mexico simply by stressing their theory that the accident was caused by defective products designed in the United States: "The linchpin of plaintiff's argument -- that the alleged wrongful act was the original design of the vehicle and tires -- reaches too far back in the causal chain." *Vasquez*, 325 F.3d at 674.  The plaintiffs could not insist that everything that occurred later be treated as irrelevant -- such as the sale and use of the product, and the accident itself.  *Id*. The same is also true here.

### 3. The parties' residences point to the law of Mexico.

The plaintiffs in this case are presently Mexican nationals living in Mexico, and where Mexican nationals living in Mexico at the time the accident occurred. *See* Plaintiffs' Original Petition, page 1. Ford is a Delaware corporation with its principal place of business in Michigan. None of the parties are residents of Texas; therefore, the allegations pleaded by plaintiffs in this case should be decided under the laws of Mexico.

### 4. The relationship between the parties, if relevant at all, is centered in Mexico.

The only relationship between the plaintiffs and the defendant is based on this particular vehicle and this specific accident. The vehicle was owned in Mexico, licensed in Mexico, operated in Mexico, and serviced in Mexico. At the time of the accident, the vehicle was being driven on a highway in Mexico by a Mexican national. Mexico is where the alleged injuries occurred. If there is any relationship at all between these parties, it is centered in Mexico.

## B. The policy considerations of RESTATEMENT § 6 point to Mexican law.

Under the RESTATEMENT's approach, the factual considerations discussed above should be weighed in conjunction with the following policy factors:

     (a)     the needs of the interstate and international systems;
     (b)     the relevant policies of the forum;
     (c)     the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue;
     (d)     the protection of justified expectations;
     (e)     the basic policies underlying the particular field of law;
     (f)     certainty, predictability, and uniformity of result; and
     (g)     ease in the determination and application of the law to be applied.

RESTATEMENT § 6.

Not all of the aforementioned factors can be meaningfully applied here. But those that can be applied unambiguously point to Mexico.

6

1.   **Mexico has the strongest policy interest in the outcome of this controversy**.

Mexico has an undeniable interest in regulating the conduct of its citizens and residents when they operate vehicles on Mexican highways. It has a corresponding interest in regulating the conduct of those who build the vehicles that are sold to its citizens and residents, and in protecting the interests of those citizens and residents when they are injured by defective products. *See, e.g., Vasquez*, 325 F.3d at 673 ("Mexico has an interest in protecting its own citizens from defective products acquired in Mexico and causing injury there."); *Delgado v. Shell Oil Co.*, 231 F.3d 165, 181 (5th Cir. 2000)(the countries from which the plaintiffs were from and where they were injured "obviously have an interest in protecting the rights and welfare of their citizens.").

In civil matters, the detailed Mexican code reflects the balance that Mexico has chosen to protect the interests of its citizens in light of Mexican legal principles, culture, and economy. That nation's choices should not be lightly dismissed. As the Fifth Circuit observed concerning similar claims from an accident in Mexico:

> Mexico, as a sovereign nation, has made a deliberate choice in providing a specific remedy for this tort cause of action. In making this policy choice, the Mexican government has resolved a trade-off among the competing objectives and costs of tort law, involving interests of victims, of consumers, of manufacturers, and of various other economic and cultural values. . . . It would be inappropriate-- even patronizing--for us to denounce this legitimate policy choice. . . .

*Gonzalez, et al v. Chrysler Corporation, et al.*, 301 F.3d 377, 381-82 (5th Cir. 2002).

Of course, the same is true here. In adopting laws to govern claims such as these, the Mexican government made deliberate choices to resolve trade-offs among the competing objectives and costs of tort law. Where its values, its vehicles, its highways, and its residents and citizens are concerned, Mexico is entitled to have that balance and its laws respected.

Antithetically, Texas has no discernible interest in the claims of these non-resident foreign nationals injured in another country who are suing for alleged defects in products that were neither designed, nor manufactured, nor sold, nor used in the State of Texas. *See Vasquez*, 325 F.3d at 675 ("Given that all decedents and plaintiffs are Mexican . . . there is little justification for applying Texas law, which seeks to protect the rights of its *citizens* to adequate compensation.")(emphasis in original, internal citations omitted).

Indeed, applying Texas law to claims against Ford under these circumstances would be an unconstitutional exercise of extraterritorial jurisdiction to control and regulate conduct occurring wholly outside the borders of this state. *See State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513 (2003); *see also Phillips Petroleum Co. v. Shunts*, 472 U.S. 797 (1985); *BMW v. Gore*, 517 U.S. 559 (1996).

### 2.    The expectations of the parties point to the law of Mexico.

These plaintiffs cannot reasonably expect to avail themselves of Texas law for an accident that occurred in Mexico.   The plaintiffs are Mexican nationals.   The vehicle was owned in Mexico, serviced in Mexico, used in Mexico, and at the time of the accident was being driven on a Mexican highway by a Mexican resident and citizen.  If the justified expectations of the parties are relevant here, this factor points to the laws of Mexico.  To quote Justice Holmes: "[It should be remembered that parties do not enter into civil relations in foreign jurisdictions in reliance upon our courts." *Cuba Railroad Co. v. Crosby*, 222 U.S. 473, 479 (1912).

### 3.    Certainty, predictability, and uniformity of result point to Mexico.    The

only sensible way to achieve certainty, predictability, and uniformity of result is to decide this case under the law of Mexico.   Considering the alternative drives the point home.   If cases involving vehicular accidents in foreign countries were decided under the local laws wherever the cases were filed in the United States, there would be multiple standards of recovery applied to the

8

claims of similar plaintiffs suing the same defendants -- even when the accidents occurred in the same foreign country, involved the same product, and allegedly happened in the same way.  For accidents such at this one that occurred in Mexico, one substantive law would apply to the plaintiffs who sue in Mexico, another law would apply to those who sue in Florida, a third to those who sue in Texas, etc.  The results would be uncertain, unpredictable, and far from uniform.  Clearly, to avoid such inconsistencies, Mexican law should apply in the immediate case.

### III.  RELEVANT PROVISIONS OF MEXICAN LAW

The attached Declaration contains an explanation of the Mexican law that should govern this case.  Ford will not repeat that discussion here, but will briefly note a few salient points. Under the law of the Mexico:

1.   The law of the State of Coahuila is applicable to this case under the *Lex Loci Declicti* principle.

2.   The plaintiffs in this case can bring a lawsuit in the courts of Coahuila against an American defendant.

3.   The Civil Code of Coahuila provides two causes of action to plaintiffs: one corresponds to the notion of "civil liability" found in article 1851 (fault/negligence liability); and the other to the concept of "strict liability" found in article 1879 (non-fault/negligence liability).  The 1897 action is available only against the "user" of the vehicle *i.e.*, the driver.

4.   The Civil Code of Coahuila and the Federal Labor Act allow plaintiffs to recover material and moral damages.

5.   Coahuila's courts permit judges to receive both, foreign public documents and foreign private documents as evidence in a trial.

## IV. PRAYER

Defendant Ford Motor Company requests that the plaintiffs' claims in this case be governed by and decided under the substantive law of Mexico and the state of Coahuila. Ford also requests that the Court determine and apply the laws of Mexico under Rule 44.1 of the Federal Rules of Civil Procedure.

Respectfully submitted,

By _____

Evan N. Kramer
Attorney in Charge
Texas Bar No.: 11704650

OF COUNSEL:

BROWN McCARROLL, L.L.P.
William R. Moye
Texas Bar No. 24027553
1111 Bagby, 47th Floor
Houston, Texas 77002
(713) 529-3110
(713) 525-6295 Fax

ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Ford Motor Company's Motion to Apply the Laws of Mexico and Brief in Support of Same has been forwarded to all known counsel of record as set forth below by U.S. Certified Mail, Return Receipt Requested, on this __11__ day of June, 2004.

WILLIAM R. MOYE

Juan A. Gonzalez
LAW OFFICE OF MARK A. CANTU
The Atrium
1300 N. 10th Street, Suite 400
McAllen, Texas  78501
*Attorneys for Plaintiffs*

11

## DECLARATION OF PROFESSOR JOSE M. SERNA DE LA GARZA CONCERNING THE LAWS OF COAHUILA, MEXICO

**I.**     **Introduction**

My name is Jose Maria Serna de la Garza, a Mexican citizen, born in Acapulco, State of Guerrero, Mexico, on March 27, 1965. I am over the age of 18, have never been convicted of a crime and am competent to make this declaration. The factual statements in this declaration are based on my personal knowledge, except as otherwise stated, and are true and correct. My address is:

Julio Garcia 12, Circ. Juristas
Cd. Satelite, Estado de Mexico,
CP 53100, Mexico

Attached hereto as Exhibit "A" is a true and correct copy of my current curriculum vitae, which reflects my professional affiliations, experience and publications.

I have been retained by attorneys representing Bridgestone/Firestone, Inc. to draft a Declaration regarding the following issues:

        (a)     whether the plaintiffs in this case can sue an American corporation in Mexican courts;

        (b)     whether the laws of the Republic of Mexico provide the plaintiffs a cause of action that encompasses the allegations made in this case;

        (c)     whether the laws of the Republic of Mexico allow the plaintiffs to recover monetary compensation for injuries sustained.

        (d)     whether Mexican courts allow the introduction of discovery obtained in a foreign country.

In preparing this declaration, I reviewed the Plaintiffs' Amended Complaint. I also reviewed primary and secondary sources of Mexican law.

Based on the claims set forth in the Plaintiffs' Amended Complaint, I have made the following conclusions:

A.  The law of the State of Coahuila is applicable to this case under the *Lex Loci Delicti* principle.

B.  The Plaintiffs in this case can bring a lawsuit in the courts of Coahuila against American defendants.

C.  The Civil Code of Coahuila provides two causes of action to plaintiffs: one corresponds to the notion of "civil liability" found in article 1851 (fault/negligence based liability); and the other to the concept of "strict liability" found in article 1879 (non-fault/negligence liability). The 1879 action is available only against the "user" of the vehicle-i.e., the driver.

D.  The Civil Code of Coahuila and the Federal Labor Act allow plaintiffs to recover material and moral damages.

E.  Coahuila's courts permit judges to receive both, foreign public documents and foreign private documents as evidence in a trial.

**II.    Structure of Mexican Law**

A.    General Structure

Mexico is a federation, and, like the United States, each Mexican state has its own codes and laws with respect to matters not expressly declared federal by the Federal Constitution. Tort law, which is part of the Civil Codes of Mexico, is a matter of state law, except in specific federal cases. Labor law, however, which might be relevant for the calculation of damages, is a matter of federal law.

B.    The *Lex Loci Delicti* Principle

In Mexico, the laws of the state where the accident occurred govern the case i.e., the *lex loci delicti* rule applies. This rule is derived from the territoriality principle, which is followed by all the Civil Codes of the Mexican States. In the state of Coahuila, the *lex loci delicti*

2

principle can be derived from articles 2 and 17 of the Civil Code. Article 2 states, "the laws of the State [of Coahuila] are applicable to all the inhabitants of the State, without making any distinction of gender and nationality, notwithstanding the fact that they have their domiciles in the State or that they are in transit." Article 17 further states, "real and personal property located in the State [of Coahuila] shall be governed by the rules of this Code, even when the owners have their domiciles outside the State."

### C.    Conclusion

The applicable tort laws in the present case are in the Civil Code of the State of Coahuila (the state where the present accident occurred), and, as we shall discuss, the applicable compensation laws are in the Federal Labor Act. The text of the Coahuila Civil Code coincides with that of the Civil Code for Federal District and with the civil codes of other Mexican states; thus, federal case law on torts might also provide criteria for the interpretation of Coahuila's tort rules.

### III.    Mexican Tort and Products Liability Law

### A.    Products Liability

The notion of "strict products liability" has had a limited development in the Mexican legal system. There is no case law on the subject, and legislatures have been reluctant in introducing statutes on this matter. Coahuila's tort law, however, provides two causes of action that encompass the allegations made in this case.

### B.    Article 1851 Actions

#### 1.    Generally

3

Under article 1851, "He who causes damage by behaving in an illicit way, has to repair such damage, except if he proves that the damage was produced as a consequence of the fault or inexcusable negligence of the victim."

### 2.    Illicit Defined

Article 1806 defines illicit as an act, positive or negative, performed with fault or negligence that causes damage to another, personally or to his property. Fault is defined as intent to cause damage. Negligence is defined as imprudence, lack of expertise, lack of prevision and care. Whether an act is negligent will be evaluated under the circumstances of the case. In sum, defendants, in tort cases, are responsible for the harmful consequences of their behavior, if the plaintiff proves that the defendant intentionally produced harm or failed to conduct himself with the proper degree of care and precaution normally expected under the circumstances.

### 3.    Causation

Additionally, the plaintiff must prove a causal relation between the defendant's behavior and the harm that was produced. Coahuila's Civil Code does not provide a specific definition of causation in tort law. However, courts have applied, by analogy, a provision that defines causation in the context of contract law. Specifically, article 2306 of the Coahuila Civil Code uses the definition provided by article 2110 of the Federal District's Civil Code, which states, "[d]amages and losses must be a direct and immediate consequence of the failure to comply with the obligation, whether they have already occurred or will necessarily occur."

### 4.    Burden of Proof

The burden of proving harm, causation and negligence in an article 1851 action is on the plaintiff.

4

5.    Defenses to 1851 Actions

Defenses to an article 1851 action include:

(a)    failure by the plaintiff to show fault on the part of the defendant;

(b)    a showing by the defendant that the plaintiff was "inexcusably" negligent;

(c)    failure by the plaintiff to show causation between the defendant's behavior and the injury;

(d)    acts of God;

(e)    where the action is brought more than one year from the moment the injury occurred (*see* article 1898).

6.    "Inexcusable Negligence"

Article 1851 of the Coahuila Civil Code states that the defendant is not liable when the plaintiff was also at fault or was inexcusably negligent. Federal case law states that not all negligence reaches the level of "inexcusable" negligence; it is up to the Mexican judges to decide this question on a case by case basis.

C.    Article 1879 Actions

Article 1879 of the Coahuila Civil Code also recognizes strict liability (no-fault responsibility) on the part of the *user* of dangerous items and substances. Specifically, article 1879 states that when a person makes use, either as owner, or as an original or derivative possessor, of mechanical devices, objects, substances, mechanisms, instruments or items which are dangerous per se, for instance on account of the speed they develop, their toxic explosive or flammable nature, the energy of the electrical current that they conduct, or other analogous causes, he is responsible for the damage such objects or substances may cause, even if there is no negligence or fault on his part. In an article 1879 action, it must first be determined if the

5

things or substances qualify as those explicitly mentioned by said article, or as analogous causes. Then the defendant has the burden of proving that they did not actually cause the damages. One exception is where the user of such items and substances proves that such damage has been produced by the fault or inexcusable negligence of the victim, or by fault or negligence of a third-party (*see* Article 1880 of the Coahuila Civil Code).

The application of this strict liability article is limited to users (e.g., drivers of automobiles) who are owners or possessors of inherently dangerous things. Therefore, article 1879's strict liability principle does not apply to the manufacturer, the designer or even the seller of certain products (e.g., a car). Rather, liability under this article applies only to the <u>user</u> of objects, techniques or substances that are inherently or potentially dangerous, such as the ones mentioned by article 1879 of the Civil Code of Coahuila.

## IV.    Mexico's Compensation System

### A.    Generally

The Civil Code of Coahuila provides that the plaintiff can choose between the reparation of damages (i.e., reestablishing the status quo), whenever that is possible, or the payment of compensation. If the plaintiff selects the second option, he or she is entitled to "material" and "moral" damages.

In determining the appropriate measure of damages, one important principle should be kept in mind: the Supreme Court of Mexico has recognized that the measure of damages for the family of a deceased individual cannot be proven in every case. According to the high court, asking the relatives of the victim to prove the measure of damages they have suffered would be impossible and would amount to leaving them without protection which goes against the goals of the law and the legislature. This difficulty has been overcome by the legislature, which has established a method for calculating the amount of compensation.

6

B.     Material Damages

When damage is caused to persons, producing death, or total or partial permanent disability, the measure of damages consist of (*see* article 1890):

   (a)  funeral expenses (in cases of death);

   (b)  all expenses incurred into in order to cure the victim from the injuries that eventually led to his death or permanent disability (the persons who can claim these and funeral expenses are the ones who can show that they made them, *see* article 1893); and

   (c)  a monetary compensation calculated according to the rules of the Federal Labor Act.[1]

  1.  Federal Labor Act--Article 487:  General Damages

Article 487 of the Federal Labor Act allows for the recovery of:

(a)  Medical and surgical assistance

(b)  Rehabilitation

(c)  Hospitalization, if needed

(d)  Medicines and medical materials

(e)  Devices of prosthesis and orthopedic items

(f)  The damages in Title  IX of the FLA (as listed below).

  2.  Federal Labor Act—Articles 500 and 502:  Death Cases

---

[1] The Federal Labor Act (FLA) gives workers a cause of action against their employer for accidents and illnesses that occurred during the scope of their employment. These rules also apply to tort cases to determine the compensation that can be claimed by plaintiffs. Therefore, terms "employer" and "employee" are analogous to "tortfeasor" and "plaintiff" in tort cases.

7

In cases of death, the compensation shall correspond to the persons who were economically dependent on the victim. If no person depended economically on the victim, the compensation shall correspond to the persons which whom the victim lived as a family or the persons on which the victim was economically dependent. If no such persons exist, then the compensation shall correspond to the victim's legitimate heirs (*see* article 1893, of the Coahuila's Civil Code).

In cases involving death, the said plaintiff(s) are entitled to claim an amount equal to 730 days of the worker's salary, plus two months of salary for funeral expenses. Note that article 1891 of Coahuila's Civil Code stipulates that in tort cases, the "worker's salary" means the highest daily minimum salary valid in the region where the accident occurred, multiplied by four.[2]

The compensation credits in favor of the victim (or of the persons who depended economically on him; or of his heirs), shall be paid in one payment, unless the parties agree otherwise under the supervision of the judge (*see* article 1894).

    3.    Federal Labor Act—Article 480: Total Permanent Disability Cases

These cases involve loss of abilities or aptitudes that make it impossible for the injured person to perform any job for the rest of his (her) life. In cases of total permanent disability, the plaintiff is entitled to 1,095 days of the plaintiff's daily salary (*see*, article 495 of the FLA). Again, article 1891 of Coahuila's Civil Code stipulates that the "worker's salary" means the highest minimum salary valid in the region where the accident occurred, multiplied by four.

    4.    Federal Labor Act—Article 492: Partial Permanent Disability Cases

---

[2] For the purposes of minimum salaries, Mexico is divided into economic regions. Each region has a daily minimum salary.

8

These cases involve injuries that result in a decrease to the injured person's ability to work (*see* Article 479). Article 514 of the Federal Labor Act lists a "Table for the Valuation of Permanent Disabilities," which lists 409 different kinds of permanent disabilities. The table also provides the minimum and maximum compensation for each of the 409 permanent disabilities. The proper measure of compensation is computed as a function of damages recoverable in cases involving total permanent disability. In determining the proper measure of damages in a partial permanent disability case, the following circumstances are taken into account: the age of the workman, the importance of his disability, the major or minor potentiality to dedicate himself to remunerated activities, similar to the ones that have corresponded to his profession or specialty.

Further, article 493 of the FLA states that if the partial disability consists of the absolute loss of the possibility and aptitude of the victim to dedicate himself to his usual profession, the Labor Board may increase the compensation up to the amount for permanent total disability, taking into consideration the importance of the profession and the possibility that the victim would dedicate himself to an activity of a similar kind, which may produce a similar income.

Article 1888 compliments the damages awarded by the FLA in "partial permanent disability cases." First, if the harm consists of injuries that did not produce death nor permanent disability to work the reparation of damage shall consist of expenses for medical assistance, medicines, hospitalization and all other expenses that are necessary to cure the victim. Moreover, this article states that the compensation for "losses" shall consist of an amount equivalent to the salary that the victim stops earning for his work, during the time between the production of the injury and the moment in which he can return to work. Article 1889 further states that in these cases, if there is no fix earning of the victim, the compensation shall be calculated by experts,

9

taking into account the abilities, capabilities and average productive capacity of the victim in relation to his job, skill or profession. Finally, if the experts do not have enough elements to produce an opinion, or if the victim neither earns a salary nor performs a productive activity, the compensation shall be calculated on the basis of the highest minimum salary valid in the region where and when the accident occurred (*see* article 1889).

C.    Moral Damages

The Civil Code for State of Coahuila also recognizes the right to seek compensation for "moral damages" (*see* Article 1895). Moral damages protect a person's "moral patrimony". The first paragraph of article 1895 provides the list of what is to be considered as elements of the "moral patrimony": a person's feelings, affections, beliefs, honor, reputation, private life, physical aspect, or the opinion that others have about him. This is an exhaustive list that admits no other notion (such as the American concepts of "grief", "pain", "suffering" and "loss of companionship").

The burden of establishing the existence of any moral damages is on the plaintiff. Note, however, that Article 1895 of the Coahuila Civil Code establishes a presumption of moral damages when the physical or psychological integrity of a person has been violated or harmed.

It is also important to notice that the Civil Code of Coahuila establishes a limitation in connection with the possibility of claiming moral damages in cases in which the victim has died. In this way, the fourth paragraph of article 1895 states that the action to recover moral damages "...shall be transmitted to the victim's heirs, only when the victim brought himself the corresponding action when he was alive."

10

Finally, article 1895 of the Coahuila Civil Code states that the amount of "moral damages" is determined by the judge. In making his or her determination, the judge must take into account: (a) the rights that were damaged, (b) the degree of responsibility, (c) the economic situation of the tortfeasor and plaintiff; and (d) all the other circumstances of the case.

### D.    Punitive Damages

There are no punitive damages in Mexican law. The notion of punitive damages is repugnant to two important doctrines in the civil law: one is the sharp separation between the purpose of the criminal law, which is punitive, and the purpose of private law, which is to restore the situation to its fair balance, i.e., the status quo ante. The second doctrine is that of unjust enrichment. In the civil law systems such as that of the Republic of Mexico, an unjust enrichment, or windfall, is considered as much of an injustice as an unjust loss. Since the plaintiff who is awarded punitive damages experiences an unjust enrichment by definition under Mexican law, such punitive damages are not permitted.

## V.    Jurisdiction

Tort claims are heard by the courts of the state in which the harm occurred. The courts of the state of Coahuila, therefore, would have jurisdiction over the present case. In addition, article 27 of Coahuila's Code of Civil Procedure allows the parties to a dispute to subject themselves to the jurisdiction of a specific judge of the State of Coahuila.

Moreover, according to the Mexican Supreme Court, a foreign corporation has a Mexican domicile, if it has a branch in Mexico. The Mexican Supreme Court has clearly stated that: "...if a foreign corporation has a branch in Mexico, this is enough to provide jurisdiction ("competence") to Mexico's courts. . . . [T]his doctrine is in accord with the necessity that each country has to administer justice in its own territory [and] resolving those conflicts that arise within it. . ." (See Semanario Judicial de la Federación, Quinta Epoca: Tomo XXVIII, Pagina

11

1573. Mexican Petroleum Co.). In addition, the Supreme Court of Mexico has ruled that if the claim that is brought corresponds to a personal action, "the judge of the place where the branch is located is the competent judge to hear the respective case." (See Semanario Judicial de la Federación, Pleno, Sexta Epoca, Tomo CXVII, Primera parte, página 64. Competencia 105/66. Daniel Monárrez Cabrera. 14 de marzo de 1967. Unanimidad de 17 votos. Ponente: José Castro Estrada).

Furthermore, the Supreme Court has also ruled that the legal domicile of a company is "... the place in which it has established branches or agencies, whenever the risk is produced where the latter develop their activities, even when according to their by-laws they have their legal domicile in a different place and without considering the place in which they have their administration." (See Semanario Judicial de la Federación, Tercera Sala, Octava Epoca, Vol. III, Primera Parte, Tesis 3ª./J. 27 10/89, página 396 ).

This rule concerning the domicile of foreign corporations is consistent with the doctrine recently developed by the First Collegial Civil Court of the Second Circuit in a divorce case, by which it refused to apply an express rule on jurisdiction established in the Code of Civil Procedure of the State of Mexico (article 51-XIII), which states that the court of the domicile of the "abandoned spouse" is the court with jurisdiction to hear a divorce claim. In that case, the "abandoned spouse" had her domicile outside Mexico. Yet, the court refused to apply article 51-XIII because its application entailed that Mexican courts would waive their jurisdiction in favor of a foreign court. In its decision, the court ruled that the prescription of article 51-XIII of the Code of Civil Procedure of the State of Mexico, "rules and produces its effects only when the question of jurisdiction emerges between courts that exercise their jurisdiction within the national territory, but not when the conflict arose between a Mexican and a foreign court, because that would imply, from the Mexican perspective, a waiver of Mexican courts' jurisdiction and, therefore, of their sovereignty, as well as the denial of justice to citizens." (See Semanario Judicial de la Federación, Primer Tribunal Colegiado en Materia Civil del Segundo Circuito, Novena Epoca, Tomo XVI, Octubre de 2002. Tesis: II.1º.C., Página 1346, Materia Civil.)

12

A Mexican court can exercise jurisdiction over a non-Mexican defendant. In fact, the whole point of the international instruments on procedural cooperation (some of them are mentioned below) that have been signed and ratified by Mexico is to make it possible for a Mexican court to serve the summons, make notifications, take evidence, and enforce judgments abroad.

## VI.   Discovery

There is no "discovery" in Mexico, as understood in the American legal system. Yet, most Codes of Civil Procedure of the Mexican States provide for "preliminary measures" (e.g. depositions, interrogatories) that can be ordered by the judge who is hearing the case, whenever a party lacks a document on which the claim is based because it is in possession of the future defendant or of a third party. Moreover, discovery in this case would be governed by two international instruments signed and ratified by Mexico: the Hague Convention on the taking of evidence abroad in civil or commercial matters (concluded March 18, 1970); and the Inter-American Convention on the taking of evidence abroad (ratified by Mexico on March 27, 1978).

Mexican courts, and specifically the courts of Coahuila, can examine documents produced in a foreign country in the process of making their minds in order to decide a case. First of all, it has to be noticed that Mexico's legal tradition allows judges broader powers to conduct the litigation process. That is why article 424 of the Code of Civil Procedure of Coahuila states that the judge can order the examination of all evidence that he considers appropriate to know the facts under discussion. Moreover, article 435 recognizes the possibility of offering as evidence documents located outside of Mexico (in which case the party that offers the evidence

13

must indicate the public or private archives where the documents can be found). In addition, article 455 of said Code establishes as a wide-open principle the admissibility of all kind of documents, public or private, that may help the judge to make his decision.

The distinction between public and private documents is important, because there are rules that govern their validity as evidence in Coahuila's litigation process. Article 456 of Coahuila's Code of Civil Procedure indicates that to give foreign "public documents " full-faith and credit in Mexico, they will have to fulfil the requirements established in the Federal Code of Civil Procedure. Article 546 of the Federal Code of Civil Procedure, stipulates that to give "foreign public documents" full-faith and credit in Mexico, they will have to be "legalized" (certified) by Mexican consular authorities. Only those "foreign public documents" that are transmitted to Mexico through official channels do not require such "legalization". Yet, this "legalization" requirement came to an end when Mexico signed in 1995 the "Hague Convention that eliminates the requirement of legalization of foreign public documents" (The Hague, October 5, 1961). Thanks to this Convention, to give full faith and credit to "foreign public documents" in Mexico, what is requires is to get an "Apostille" issued on the respective document.

The Apostille is a form of certification that certifies the authenticity of the signature, the capacity in which the person signing the document has acted and identifies the seal/stamp which the document bears. Under the Hague Convention of 1961, each State may designate those authorities which may issue Appostilles for their jurisdiction. For example, in Texas, the Secretary of State of Texas may issue an Apostille on documents issued by persons on file with this agency, including county clerks, notaries public, statewide officials. Moreover, the

14

competent authority in the USA for issuance of Apostilles on documents issued by the federal government are the clerks of the federal courts. Finally, under the Hague Convention of 1961, the "public documents" that need an Apostille are: a. Those originating in a court, clerk of a court, public prosecutor or process server; b. Administrative documents; c. Notarial acts; d. official certificates placed on documents.

As for foreign private documents, article 457 of the Code of Civil Procedure of Coahuila, states that they shall be considered as authentic only after the authenticity of the signature has been certified by those public officials that have the power to make that certification.

If we consider "foreign private documents" in the light of said article 2457 we have to get to the following conclusion: to have validity as evidence in Coahuila's courts, the authenticity of these documents would have to be certified by the public official who has the power to do so in the foreign country, say the USA, and in turn, such certification would have to get the "Apostille", following article 1-d) of the Hague Convention of 1961, according to which "public documents" subject to said Convention are: "d) official certificates placed on private documents, such as certificates of registration; certification of the date and certification of signatures".

## VII.    Conclusions

A.    The law of the State of Coahuila is applicable to this case under the *Lex Loci Delicti* principle.

B.    The Plaintiffs in this case can bring a lawsuit in the courts of Coahuila against American defendants.

C.    The Civil Code of Coahuila provides two causes of action to plaintiffs: one corresponds to the notion of "civil liability" found in article 1851 (fault/negligence based liability); and the other to the concept of "strict liability" found in article 1879 (non-fault/negligence liability). The 1879 action is available only against the "user" of the vehicle-i.e., the driver.

15

D.     The Civil Code of Coahuila and the Federal Labor Act allow plaintiffs to recover material and moral damages.

E.     Coahuila's courts permit judges to receive both, foreign public documents and foreign private documents as evidence in a trial.

Pursuant to 28 U.S.C.s. 1746, I declare under the penalty of perjury that the foregoing is true and correct.

JOSE M. SERNA DE LA GARZA
May 30, 2003.

16

Exhibit "A"

## CURRICULUM VITAE

Name: José María Serna de la Garza

Place and date of birth: Acapulco, State of Guerrero, México, March 27, 1965

Address: Calle Goya No. 64, Casa 20, Col. Insurgentes Mixcoac,
Del. Benito Juárez, México, D.F., C.P. 03920, MEXICO (Home)

Instituto de Investigaciones Jurídicas (UNAM)
Cto. Mtro. Mario de la Cueva, Cd. Universitaria,
Coyoacán, México, D.F., C.P. 04510 MEXICO(Office)

Tel. (52-55) 56 98 16 47 (Home)
(52-55) 56 22 74 68/69, ext. 413 (Office)

Fax. (52-55) 56 65 21 93

Email: josemar@servidor.unam.mx

Current professional activity: Full-time researcher at the *Instituto de Investigaciones Jurídicas* of the National University of México (UNAM).

## I.- Academic background:

a) BA in Law ("*Licenciatura en Derecho*"), School of Law of the UNAM (*Universidad Nacional Autónoma de México*), 1983-1988.

b) MA in Latin American Politics and Government, University of Essex (England), 1990-1991.

c) PhD in Government, University of Essex, 1991-1995.

## II.- Published works:

### a) Books:

- *Derecho Parlamentario*, within the collective work: "Panorama del Derecho Mexicano", McGraw-Hill, Serie Jurídica, UNAM, México, 1997.

- *La Reforma del Estado en América Latina: los casos de Brasil, Argentina y México*, UNAM, México, 1998.

- *El gobierno en América Latina: ¿presidencialismo o parlamentarismo?*, (coordinador) UNAM, México, 2000.

- *Federalismo y regionalismo, Memoria del VII Congreso Iberoamericano de Derecho Constitucional*, (compilador), UNAM, México, 2002.

- *Estado de Derecho y transición jurídica* (co-editor), UNAM, México, 2002.

**b) Articles:**

- "El Sistema Presidencial en la Evolución Política de México", *Revista Jurídica Jaliciense*, Año 1, Número 1, Sept-Dic, 1991.

- "El Servicio civil de carrera: un elemento de la posible reforma del Estado", *Revista de la Universidad Nacional Autónoma de México*, Julio-Agosto, 1995, Núms. 534-535.

- "Constitutional Federalism in Latin America", *California Western International Law Journal*, vol. 30, no. 2, spring, 2000.

- "Transiciones en América Latina: reflexiones sobre la reforma político-institucional en Brasil y Argentina", en González, Ma. del Refugio y López Ayllón, Sergio (eds.), *Transiciones y diseños institucionales*, UNAM, México, 2000.

- "Reflexiones en torno a las resoluciones del Tribunal Electoral del Poder Judicial de la Federación, relativas a los casos Tabasco y Yucatán", *Boletín Mexicano de Derecho Comparado*, año XXXIV, no. 100, enero-abril, 2001.

- "Federalismo y sistemas de distribución de competencias legislativas", Documento de Trabajo del Instituto de Investigaciones Jurídicas de la UNAM, no. 12, abril de 2001.

- "Los aspectos constitucionales de una posible reforma del federalismo fiscal mexicano", en Valadés, Diego y Gutiérrez, Rodrigo (coords.), *Economía y Constitución, Memoria del IV Congreso Nacional de Derecho Constitucional*, tomo IV, UNAM, México, 2001.

- "Federalismo judicial: revisión crítica de los distintos argumentos del debate sobre el amparo casación en México", Documento de Trabajo del Instituto de Investigaciones Jurídicas de la UNAM, no. 26, junio de 2002.

- "Federalismo y sistemas de distribución de competencias legislativas" en la obra colectiva editada por Serna, José María y Caballero, José Antonio, *Estado de Derecho y transición jurídica* (editor), UNAM, México, 2002.

- "Apuntes sobre el debate relativo al amparo casación en México", *Reforma Judicial, Revista Mexicana de Justicia*, no. 1, ene-junio, 2003.

- "Apuntes sobre las opciones de cambio en la metodología de la enseñanza del derecho en México, Documento de Trabajo del Instituto de Investigaciones Jurídicas de la UNAM, no. 35, abril de 2003.

**III.- Lectures:**

a) Lecture on: Current Developments in South America, Cranfield Institute of Technology (England), October 23, 1992.

b) Lecture at the *Centro de Estudios Superiores Navales*. Title of the Lecture: Proyecto Nacional: Determinación de Intereses, Objetivos y Políticas Nacionales, México, March 23, 1995.

c) Lecture at the Mexican Center del *Institute of Latin American Studies,* University of Texas at Austin.  Title of the lecture: "El Debate sobre la Reforma Institucional en México", October 3, 1995.

d) Lecture at the "Ier. Encuentro Internacional sobre Protección Jurídica de los Derechos Ciudadanos". Title of the lecture: Legislación agraria y Derechos Ciudadanos, La Habana, Cuba, November 9, 1995.

**IV.- Teaching Experience:**

a) In charge of the following courses organized by the *Instituto de Investigaciones Jurídicas* of the UNAM: Constitutional theory, Comparative constitutional law, and comparative government.

b) Visiting professor at the Law School of the University of Texas at Austin. Courses: Introduction to Mexican Law and Latin American law (Survey), 1997-2001.

**V.- Academic awards:**

- C.B. Smith Scholarship, awarded by the *Mexican Center* of the *Institute of Latin American Studies*, University of Texas at Austin, September 23-October 4, 1995.

**VI.- Others:**

- Director of the legal review: *Boletín Mexicano de Derecho Comparado*, published by the Instituto de Investigaciones Jurídicas of the UNAM (since 2000).